UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| SEA LAUNCH COMPANY, L.L.C., *et al.* | ) | Case No. 09-12153 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Related Docket No. 362 |

## FINAL ORDER (1) AUTHORIZING INCURRENCE OF SECURED INDEBTEDNESS, (2) GRANTING SECURITY INTERESTS AND SUPERPRIORITY CLAIMS, (3) APPROVING AGREEMENT RELATING TO THE FOREGOING, AND (4) GRANTING OTHER RELIEF

Preamble

On November 6, 2009, Sea Launch Limited Partnership; Platform LDC; Sea Launch Company, L.L.C.; Platform Limited Partnership; Sea Launch ACS Limited; and Sea Launch ACS Limited Partnership (collectively, the "Debtors") filed an Emergency Motion For Interim And Final Orders (A) Authorizing The Debtors To Obtain Postpetition Secured Financing Pursuant To 11 U.S.C. §§ 364(C)(1), 364(C)(2), 364(C)(3), 364(D)(1) And 364(E) And Schedule Final Hearing (the "Financing Motion").

The Financing Motion explained that the Debtors had an immediate need for $5,000,000 of financing to assure the continuity of their business operations with minimal disruption and to avoid irreparable damage to their businesses. The Financing Motion also requested that the Court hold a preliminary hearing as soon as possible to authorize, on an interim basis, the financing described herein. The Financing Motion seeks ultimate authority to borrow $25,000,000, although the Debtors have currently negotiated a commitment limited to

$12,500,000. The parties have entered into a commitment letter, a term sheet, and loan documents evidencing their agreement regarding the postpetition financing (collectively, the Loan Documents).

On November 10, 2009, this Court held a preliminary hearing on the Financing Motion and entered the Interim Order (1) Authorizing Incurrence of Secured Indebtedness, (2) Granting Security Interests, (3) Approving Agreement Relating to the Foregoing, and (4) Granting Other Relief (the "Interim Order"). Pursuant to the Interim Order and in accordance with the terms of the Loan Documents, the Lender advanced $5,000,0000 (the "Initial Term Loan") to the Debtors.

This Court held a final hearing on the Financing Motion in accordance with the provisions of 11 U.S.C. §§ 102, 105, 361, 362, 363, 364, 503(b), 507(a) and 507(b) (hereinafter, the provisions of 11 U.S.C. § 101 *et seq.* shall be referred to as the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), including, without limitation, Bankruptcy Rules 4001(b)(2), 4001(c)(2), and 4001(d)(3).

Based upon its review of the Financing Motion and its consideration of the testimony presented at the preliminary hearing and the final hearing and of the arguments made by counsel for the Debtors and the Lender and after due deliberation and sufficient cause appearing therefor, pursuant to Bankruptcy Rules 9014 and 7052, this Court hereby makes the Findings of Fact and Conclusions of Law set forth below, all of which shall be deemed incorporated by reference into this Final Order, and issues this Final Order set forth hereafter.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. *Filing of the Petition.* On June 22, 2009, (the "Petition Date"), the Debtors each filed a voluntary petition for relief (each a "Reorganization Case") under the Bankruptcy Code. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors have retained possession of their assets and are authorized to continue the operation and management of their businesses. On July 8, 2009, the Office of the United States Trustee for the District of Delaware formed an official committee of creditors holding unsecured claims against the Debtors (the "Committee").

B. *Core Proceeding.* Consideration of the Financing Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (D), (G), (K), (M) and (O). Based on the evidence presented, the Court finds that Space Launch Services, L.L.C. (the "Lender") is extending credit in good faith. Thus, this Final Order is subject to and the Lender is entitled to the benefits and protections of the provisions of Section 364(e) of the Bankruptcy Code.

C. *The Financing Motion; Notice.* The Financing Motion was filed on November 6, 2009. The Debtors have provided actual notice of the terms of the Financing Motion and the relief requested thereunder by electronic mail (where known), by United States first class mail, postage prepaid, and by overnight delivery to all entities entitled to receive notice under Bankruptcy Rule 4001(b) and (c), including all parties claiming an interest in the collateral or cash collateral affected by the Financing Motion, those parties listed on the Rule 2002 list, the Committee, each member of the Committee, the entity currently operating the Sea Launch Commander and the Odyssey, and the United States Trustee. The Debtors also gave notice of the preliminary hearing and the final hearing to these parties by electronic mail (where known),

3

United States first class mail, postage prepaid, and overnight delivery. Such notice is appropriate and adequate under the circumstances set forth herein and presented to this Court. Consequently, adequate notice and opportunity for a hearing have been given in accordance with the provisions of Sections 102, 105, 361, 362, 363, 364, 503(b), 507(a) and 507(b) of the Bankruptcy Code and Bankruptcy Rules 2002 and 4001. With respect to the final authorization given hereunder pursuant to Bankruptcy Rule 4001(b), (c) and (d), notice was given to all parties above and all other parties entitled to notice, and no further notice relating to this proceeding is necessary or required.

D. <u>Prepetition Indebtedness</u>. The Debtors allege that all of their prepetition indebtedness is unsecured with the exception of cash collateral pledged in favor of Manufacturers Bank in an amount not to exceed $620,000.

E. <u>Debtors' Need for Credit</u>. During the pendency of the Reorganization Cases, the Debtors anticipate that they will need cash advances of up to $25,000,000 (of which $5,000,000 has already been advanced pursuant to the Interim Order) to (i) fund operating expenses and other working capital of the Debtors; (ii) pay transaction fees and expenses incurred in connection with the DIP Facility; and (iii) pay professional fees and expenses as approved by the Bankruptcy Court, <u>provided</u>, <u>however</u>, that the DIP Facility proceeds used for payment of fees and expenses of professionals retained by the Committee in these cases under 11 U.S.C. § 327 or 328 shall not exceed, in the aggregate, $350,000 [handwritten: 50 over 25] per month, subject to further order of this Court as to the reasonableness of such amount. The Debtors ultimately seek the authority to borrow $25,000,000 but have currently negotiated a commitment limited to $12,500,000.

4

F.  **Description of DIP Facility.** The Court finds that, in order to continue the operation of the Debtors' businesses and to preserve the value of the Debtors' assets, the Debtors require the extension of the DIP Facility. The DIP Facility is summarized by the term sheet attached to the Financing Motion as Exhibit A and is contained in the Loan Documents filed as supplemental exhibits prior to the preliminary hearing.

The Debtors shall use funds advanced by the Lender in accordance with a budget for postpetition working capital. The DIP Facility, as described in the Loan Documents, includes all documentation pertaining to it and any amendments or modifications thereto or replacements or substitutions therefor. All amounts loaned to the Debtors pursuant to the DIP Facility, and all costs and expenses incurred by the Lender in connection therewith, including attorneys' fees and expenses, are hereinafter referred to as the "DIP Facility Claims." The DIP Facility Claims will be afforded superpriority status and will be secured by the Collateral (as defined below). The DIP Facility Claims will be governed by the terms of this Final Order.

G.  **No Credit Available On Other Terms.** The Debtors have been unable, in the ordinary course of business or otherwise, to obtain (1) unsecured credit allowable pursuant to Section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to Section 363 or 364(a) or (b) of the Bankruptcy Code in an amount necessary for the maintenance and preservation of their assets and operation of their businesses or (2) secured indebtedness pursuant to Section 364(c) of the Bankruptcy Code on more advantageous terms than those offered by the Lender pursuant to the terms of this Final Order.

H.  **Fair Terms; Reasonably Equivalent Value; Arms'-Length Negotiation.** The Lender is not affiliated with the Debtors or their equity holders and has indicated a

5

willingness to extend credit and other financial accommodations to the Debtors only upon the terms and conditions set forth in this Final Order and the Loan Documents. These terms are fair and are for reasonably equivalent value and fair consideration. The Loan Documents have been negotiated at arms' length, with all parties represented by counsel, and are enforceable in accordance with their terms. The terms and conditions set forth in this Final Order have been entered into, and the DIP Facility is being extended in good faith, as contemplated by Sections 363(m) and 364(e) of the Bankruptcy Code.

I. <u>Good Cause For Entry Of Order</u>. Good cause has been shown for the entry of this Final Order. Among other things, entry of this Final Order will minimize the disruption of the Debtors' existing businesses, will increase the possibility for successful reorganization of the Debtors and is in the best interests of the Debtors, their creditors and other parties in interest.

J. <u>Existing Security Interests</u>. Except as specified below, this Final Order primes all prepetition liens and security interests in the Collateral.

**BASED UPON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, WHICH ARE FULLY INCORPORATED BY REFERENCE INTO THIS FINAL ORDER SET FORTH BELOW,**

IT IS HEREBY ORDERED THAT:

1. <u>Preamble and Findings Incorporated by Reference</u>. The paragraphs contained in the Preamble to this Final Order and the Findings of Fact set forth above are incorporated herein by this reference and the Debtors and the Lender consent to entry of this Final Order.

2. <u>Objections Overruled</u>. All objections to entry of this Final Order are resolved by the terms hereof or, to the extent not resolved, are hereby overruled.

3. <u>Authorization to Borrow</u>. The Financing Motion is hereby granted, *(as noted on the record at the hearing)* and the Debtors are hereby authorized to incur DIP Facility Claims in accordance with the provisions of this Final Order and the Loan Documents, all of which are hereby approved. The Debtors are authorized to spend the funds advanced, but only in strict accordance with the provisions of this Final Order and the Loan Documents and the budget (the "Budget") agreed to by the parties, subject to permitted variances.

4. <u>Additional Authority</u>. The Debtors are authorized, empowered and directed to execute such other documents and agreements and to take all necessary actions to complete and effectuate the financing directed by this Final Order and to pay the fees that are required hereunder.

5. <u>Terms of the DIP Facility</u>.

a. <u>The Budget.</u> The Budget shall be provided by the Debtors on Wednesday of each week (or earlier). The Budget shall provide the Lender with (i) a cash flow forecast showing projected weekly receipts and disbursements for the succeeding thirteen weeks and (ii) a fuel budget. The Budget specifies the Debtors' proposed uses of funds provided pursuant to the DIP Facility, subject to the agreed upon variances set forth in the Loan Documents. Among other things, the Budget includes line items for, and the DIP Facility requires, payment to the Lender of interest on the DIP Facility Claims and payment of other fees and costs incurred by the Lender, including attorneys' fees and expenses, on a monthly basis.

b. *Fees.* Upon entry of the Interim Order, the Debtors paid the Lender $75,000 (the "Work Fee"). In accordance with the Interim Order, upon the occurrence of the Closing Date, the Work Fee was applied to the fees and costs incurred by the Lender, including attorneys' fees and expenses, authorized to be paid by the Interim Order. Additionally, the Debtors paid the Lender a closing fee of $250,000 (the "Closing Fee") from the Initial Term Loan. Neither the Work Fee nor the Closing Fee is refundable under any circumstance.

c. *Right to Match.* The Lender shall have the right, but not the obligation, to provide the Debtors' financing upon emergence from Chapter 11 on terms which, in the aggregate, are not materially less favorable than those offered by any other potential lender in the form of a binding commitment; for avoidance of doubt, this Right to Match shall survive any pre-payment, repayment or termination of the DIP Facility.

d. *Events of Default; Remedies.* If an Event of Default, as defined in the Loan Documents, should occur, the Lender may exercise its remedies without further order or application to this Court, provided that the Lender provide the Debtors, the United States Trustee, and counsel to any official committee appointed in the Reorganization Cases with written notice at least 5 business days in advance, during which time any party can seek a hearing. Unless the Bankruptcy Court determines otherwise within that 5-day period, the automatic stay under Section 362 of the Bankruptcy Code shall be deemed to be automatically modified to permit the Lender to: (i) immediately terminate the DIP Facility; (ii) accelerate the loans and all amounts owed under the Loan Documents; and (iii) exercise all remedies under the Loan Documents or applicable law or in equity.

e. _Termination of Commitment_. The availability of the DIP Facility, and the authorization granted under this Final Order with respect thereto, shall, at the Lender's option, terminate, and the DIP Facility Claims together with any then outstanding interest, fees, costs, expenses or other amounts payable in connection therewith, shall, at the Lender's option, be immediately due and payable in full on the occurrence of an Event of Default. Notwithstanding any termination of availability of the DIP Facility or any amounts becoming due and payable under the DIP Facility, the rights and obligations of the Debtors and the rights, claims, security interests, liens and priorities of the Lender with respect to all transactions which occurred prior to the occurrence of such termination or maturity, including, without limitation, all liens and priority afforded with respect to the DIP Facility Claims and all adequate protection afforded the Lender under this Final Order, shall remain unimpaired and unaffected by any such termination or maturity and shall survive any such termination or maturity.

6. _Security Interests_. The Debtors will grant the following as collateral (the "Collateral") securing all DIP Facility Claims, subject to the Carve-Out:

a. _Liens on Unencumbered Property_. Except as provided in section 6.d. regarding Chapter 5 causes of action, pursuant to section 364(c)(2) of the Bankruptcy Code, first priority liens upon all unencumbered tangible and intangible property of the Debtors' estates and on all cash, investments, inventory, accounts receivable and other receivables whether arising before or after the Petition Date; for avoidance of doubt, liens shall be secured by, among other things, first preferred ship mortgages on the Odyssey and the Sea Launch Commander.

b. _Priming Liens_. Pursuant to section 364(d) of the Bankruptcy Code, priming liens upon all tangible and intangible property of the Debtors' estates that are encumbered, if any (except for the liens of Manufacturers Bank on cash collateral to secure certain letters of credit, in an amount not to exceed $620,000 (the "Manufacturers' Liens")).

c. _Liens on Future Property_. Except as provided in section 6.d. regarding Chapter 5 causes of action, all property and assets of the Debtors and their estates, real and personal, tangible and intangible, whether owned as of the Petition Date or after acquired or arising, and regardless of where located or by whomsoever held, and whether now owned or in which the Debtors have any interest or hereafter acquired or in which the Debtors obtain an interest.

d. _Liens on Causes of Action or In Rem Claims Relating to the Marine Collateral_. First priority liens upon all causes of action brought under Chapter 5 of the Bankruptcy Code that would or do result in a lien upon or an *in rem* claim against the Odyssey or the Sea Launch Commander; _provided_, _however_, that the Collateral shall not include any other causes of action of the Debtors or their estates brought under Chapter 5 of the Bankruptcy Code.

7. _Superpriority of the DIP Facility Claims_. In addition to the liens and security interests granted hereunder, the DIP Facility Claims shall have priority, subject and subordinate to the Carve Out, pursuant to the provisions of Sections 364(c)(1) and 507(b) of the Bankruptcy Code, over all administrative and priority expenses incurred in the Reorganization Cases, including, without limitation, expenses of the kind specified in Section 503(b), 507(a) and 507(b) of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, their creditors other than the Lender, or the successors in interest of the Debtors or their creditors,

including, without limitation, any trustee appointed in the Reorganization Cases, and any trustee in a case under Chapter 7 of the Bankruptcy Code into which the Reorganization Cases may be converted.

The DIP Liens granted pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code are, with the exception of the Carve-Out and the Manufacturers' Liens, first priority and superior to any security, mortgage, collateral interest or lien or claim to the Collateral.

Additionally, the DIP Liens are senior in priority to any and all adequate protection liens of any prepetition secured creditors (excluding the Manufacturers' Liens) and are not subject or subordinate to (a) any lien or security interest that is avoided and preserved for the benefit of any Debtor and its estate, (b) liens purported to arise after the Petition Date, including any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of any Debtor or (c) any intercompany or affiliate liens of any Debtor.

8.  <u>No Section 506(c) Assessment</u>. Except as provided in decretal paragraph 9 hereof, no administrative claims, including fees and expenses of professionals, the Committee or any other committee appointed in the Reorganization Cases, shall be assessed against or attributed to the Lender, the Collateral pursuant to the provisions of Section 506(c) of the Bankruptcy Code, or otherwise, and the Lender has not consented or agreed to permit such amounts to be paid from the Collateral.

9.  <u>Sole Exception to Liens and Superpriority</u>. No costs or expenses of administration or other obligations that have been or may be incurred in the Reorganization

Cases, in any conversion of a Reorganization Case pursuant to Section 1112 of the Bankruptcy Code, or in any other case or proceeding related to the Reorganization Cases, and no claims entitled to priority over general unsecured claims pursuant to any provision of the Bankruptcy Code, are or will be prior to or *pari passu* with the claims of the Lender against the Debtors, or with the security interests and liens of the Lender upon the Collateral, and no such costs, expenses of administration or other obligations shall be imposed against the Lender, its claims in the Reorganization Cases, or the Collateral; provided, however, that notwithstanding the existence of the Lender's liens and superpriority as set forth in this Final Order, after an Event of Default, the Lender will permit the proceeds of the Collateral to be used to pay claims for statutory fees of the United States Trustee (not subject to a cap), and professional fees approved by the Court in a total aggregate amount not to exceed $500,000 (the "Carve-Out"). Prior to an Event of Default, the payment of claims for statutory fees of the Unites States Trustee, and the payment of professional fees as approved by the Court shall not reduce the Carve-Out.

10. No Filing or Recording Necessary. All agreements, security interests, mortgages, ship mortgages, deeds of trust and liens contemplated or granted by this Final Order and the Loan Documents are effective and perfected as of the commencement of the Reorganization Cases without further filing or recording by the Lender in compliance with any state, federal, admiralty or foreign law. The Lender will not be required to file financing statements or other documents in any jurisdiction or take any other actions in order to perfect its security interests and liens granted under or pursuant to this Final Order. If the Lender, in its sole discretion, chooses to file any financing statements, deeds of trust, mortgages, ship mortgages or other documents or notices to otherwise confirm perfection of such security interests and liens,

- 12 -

all such documents shall be deemed to have been filed or recorded immediately upon the filing of the petition commencing the Reorganization Cases. However, the failure of the Debtors to execute any such documentation, or the failure of the Lender otherwise to attach or perfect its security interests in the Collateral under state, federal, admiralty or foreign law, shall in no way affect the validity, perfection or priority of the security interests, mortgages, and liens granted to the Lender pursuant to this Final Order or otherwise.

11. <u>Binding Effect of Orders</u>. Unless otherwise provided herein, the terms and conditions of this Final Order relating to the liens and priorities granted to the Lender herein shall be binding upon the Debtors, their creditors, all other parties in interest and all successors in interest thereof including, without limitation, any Chapter 11 trustee that may be appointed in a Reorganization Case or any trustee in a case under Chapter 7 of the Bankruptcy Code into which any Reorganization Case may be converted. This binding effect is an integral part of this transaction. The grant of the DIP Facility Claims, liens and perfection in favor of the Lender shall survive the entry of any order converting or dismissing any Reorganization Case.

12. <u>Additional Relief</u>. The Lender may at any time file a motion with this Court seeking any such additional adequate protection as it may deem necessary, including, without limitation, modification or termination of this Final Order. Nothing herein shall prevent the Debtors or other parties in interest from opposing such a motion. The Lender shall retain all rights available pursuant to the Bankruptcy Code or any other applicable law.

13. <u>Effect of Future Modification of Order</u>. No subsequent stay, modification, termination, failure to extend the term of or vacation of this Final Order shall affect, limit or modify any superpriority claim or lien granted hereunder by the Debtors to the Lender pursuant

- 13 -

to this Final Order or otherwise, nor shall any such stay, modification, or vacation limit, affect or modify the validity, enforceability or perfection of any security interest, mortgage, lien or priority granted or reaffirmed in connection therewith. All advances made in reliance on this Final Order and the indebtedness evidenced by such advances cannot be subordinated, lose their superpriority status or be deprived of the benefit of the senior and priming liens granted to the Lender by any subsequent order in the Reorganization Cases. The provisions of this Final Order dealing with DIP Facility Claims and liens shall not be modified or superseded by any order confirming a plan of reorganization (including the use of the cram-down provisions of Section 1129(b) of the Bankruptcy Code).

14. <u>No Requirement to Lend</u>. Nothing contained in this Final Order shall require or be deemed to require the Lender to make an additional loan or to extend further debt financing or other financial accommodations to or for the benefit of the Debtors other than the DIP Facility.

15. <u>No Liability; Not Responsible Person</u>. In making decisions to advance funds or extend financial accommodations under this Final Order, in administering the Debtors' use of any such advances or financial accommodations under this Final Order or in taking any other action related to or in connection with any of the foregoing, the Lender shall have no liability to any third party and shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or managing agent with respect to the operation or management of the Debtors.

16. <u>Effect of Dismissal</u>. In the event that any Reorganization Case is dismissed, converted, otherwise superseded or substantively consolidated, neither the entry of

this Final Order nor the dismissal or conversion of any of the Reorganization Cases shall affect the rights of the Lender under this Final Order or the Loan Documents, including the security interests, liens, lien perfection and superpriority granted herein, and all the rights and remedies of the Lender thereunder shall be and remain in full force and effect as if the Reorganization Cases had not been filed or the Reorganization Cases had not been dismissed, converted or superseded.

17. **No Effect On Other Rights**. This Final Order shall not operate to modify, alter, impair, affect, abrogate, amend, restrict or nullify any rights of the Lender with respect to any entity other than the Debtors, nor to release, alter, impair, affect or abrogate any debts, claims, demand, actions and causes of action in law and equity, whether known or unknown, that the Lender may have as to any entity other than the Debtors.

18. **Notice**. Any notice which may be required to be given by the Debtors to the Lender shall be sufficient if notice is given by facsimile transmission, hand delivery, or regular, certified or registered United States mail to:

Space Launch Services, LLC
Attn: Anat Friedman
3106 Beauchamp Street
Houston, Texas 77009
Fax: (713) 861-0637

and

Mr. Tony Davis
Baker Botts L.L.P.
910 Louisiana
Houston, Texas 77002
Fax: (214) 229-2847

and

Mr. Luckey McDowell
Baker Botts L.L.P.
2001 Ross Avenue
Dallas, Texas 75201
Fax: (214) 661-4571

Any notice which may be required to be given by the Lender to the Debtors shall be sufficient if notice is given by facsimile transmission, hand delivery, or regular, certified or registered United States mail to:

Dennis J. Connolly
Matthew W. Levin
Alston & Bird LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Fax: (404) 881-7777

and

Brett A. Carman
Sea Launch
2700 Nimitz Road
Long Beach, CA 90802
Fax: (562) 499-4755

19. <u>Effect of Order</u>. In light of the Findings set forth above, in the event of any appeal of this Final Order, any credit extended hereunder shall be pursuant to Section 364(e) of the Bankruptcy Code, and the Lender shall be granted all rights and remedies thereunder, unless the party to such appeal shall have obtained a stay of this Final Order pursuant to the Bankruptcy Code and the applicable Bankruptcy Rules.

20. <u>Lender Fees and Expenses</u>. Copies of invoices submitted to the Debtors by the professionals for the Lender shall be forwarded by the Debtors to the United States Trustee, counsel for the Committee, and such other parties as the Court may direct. The invoices

shall be sufficiently detailed to enable a determination as to the reasonableness of such fees and expenses.

Dated: Wilmington, Delaware
December 3, 2009

BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE