# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>SEA LAUNCH COMPANY, L.L.C., *et al.*<br><br>Debtor. | Chapter 11<br><br>Case No. 09-12153 (BLS)<br><br>Jointly Administered<br><br>Related Docket No. 655 |

## INTERIM ORDER (1) AUTHORIZING INCURRENCE OF SECURED INDEBTEDNESS, (2) GRANTING SECURITY INTERESTS AND SUPERPRIORITY CLAIMS, (3) APPROVING AGREEMENT RELATING TO THE FOREGOING, AND (4) GRANTING OTHER RELIEF

### Preamble

On April 22, 2010, Sea Launch Limited Partnership; Platform LDC; Sea Launch Company, L.L.C.; Platform Limited Partnership; Sea Launch ACS Limited; and Sea Launch ACS Limited Partnership (collectively, the "Debtors"), filed the Debtors' Third Emergency Motion For Interim And Final Orders (A) Authorizing The Debtors To Obtain Postpetition Secured Financing Pursuant To 11 U.S.C. §§ 364(C)(1), 364(C)(2). 364(C)(3), 364(D)(1) And 364(E) And Schedule Final Hearing (the "Financing Motion").

The Financing Motion explained that the Debtors filed their first motion seeking approval of debtor-in-possession financing (the "First DIP Motion") on November 6, 2009. On November 10, 2009, the Court entered an interim order approving the First DIP Motion and on December 3, 2009, the Court entered a final order approving the First DIP Motion (the "First DIP Order"). Pursuant to the First DIP Order, the Debtors borrowed $12.5 million (the "First

1

DIP Loan") from Space Launch Services, LLC (the "First DIP Lender"), on the terms and conditions of the loan documents approved by the aforementioned orders.

As noted by the Debtors in the First DIP Motion and at the interim and final hearings held to consider same, the amount committed by the First DIP Lender under the First DIP Loan was not projected to be sufficient to provide the Debtors the necessary liquidity to carry them through a plan of reorganization in these cases. As noted by the Debtors, further financing was necessary to see the Debtors through to an exit. Although the orders approving the First DIP Motion approved the Debtors' borrowing up to $25 million from the First DIP Lender, the First DIP Lender only committed to lend the $12.5 million already borrowed.

Accordingly, subsequent to December 3, the Debtors reached an agreement with the First DIP Lender and The Heinlein Prize Trust (the "Trust") to advance an additional $12 million to the Debtors. On February 22, 2010, the Debtors filed the Second Emergency Motion (the "Second DIP Motion") seeking the entry of Interim And Final Orders Authorizing The Debtors To Obtain Postpetition Secured Financing Pursuant To 11 U.S.C. §§ 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and Scheduling A Final Hearing.

On February 24, 2010, the Court held an interim hearing on the Second DIP Motion, and granted interim relief authorizing the Debtors to borrow an additional $3 million from the First DIP Lender on the same terms and conditions as set forth in the First DIP Facility and First DIP Order (the "Additional Borrowing"). On March 17, 2010, the Court held a final hearing on the Second DIP Motion, and entered an order granting final relief on the Second DIP Motion (the "Second DIP Order"), and authorizing the Debtors to borrow an additional $9 million from the Trust and the First DIP Lender on the terms and conditions of the Amended and Restated Debtor in Possession Financing Agreement (the "Amended DIP Facility"), with the Trust committing to

$6 million in additional borrowings, and the First DIP Lender committing to $3 million in additional borrowings.

Although the Trust funded the Debtors' initial $3 million draw on its $6 million commitment, the Trust refused to fund the second draw on its $6 million commitment.

Accordingly, the Debtors seek ultimate authority to borrow $30 million from the Energia Overseas Limited (Russia), a company organized under the laws of the Russian Federation, (the "Third DIP Lender") ($12.5 million to pay off the First DIP Loan, $3 million to pay off the Additional Borrowing, $3 million to pay off the first draw on the Amended DIP Facility, $9.5 million in incremental liquidity, and $2 million is original issue discount), on the terms and conditions as set forth herein.

The Debtors and the Third DIP Lender have negotiated a Debtor-in-Possession Financing Agreement (the "Third DIP Facility")and related loan documents evidencing their agreement regarding this third postpetition financing (collectively, the "Loan Documents").

This Court held a preliminary hearing on the Financing Motion on April 27, 2010, in accordance with the provisions of 11 U.S.C. §§ 102, 105, 361, 362, 363, 364, 503(b), 507(a) and 507(b) (hereinafter, the provisions of 11 U.S.C. § 101 et seq. shall be referred to as the "Bankruptcy Code") and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), including without limitation Bankruptcy Rules 4001(b) (2), 4001(c)(2), and 4001(d)(3).

Based upon its review of the Financing Motion and its consideration of the testimony presented at the preliminary hearing and of the arguments made by counsel for the Debtors and the Third DIP Lender and after due deliberation and sufficient cause appearing therefor, pursuant to Bankruptcy Rules 9014 and 7052, the Court hereby makes the Findings of

DB02:9542552.3　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　068473.1001

Fact and Conclusions of Law set forth below, all of which shall be deemed incorporated by reference into the Interim Order, and issues the Interim Order set forth hereafter.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. <u>Filing of the Petition</u>. On June 22, 2009, (the '"Petition Date"), the Debtors each filed a voluntary petition for relief (each a "Reorganization Case") under the Bankruptcy Code. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtors have retained possession of their assets and are authorized to continue the operation and management of their businesses. On July 8, 2009, the Office of the United States Trustee for the District of Delaware formed an official committee of creditors holding unsecured claims against the Debtors (the "Committee").

B. <u>Core Proceeding</u>. Consideration of the Financing Motion constitutes a core proceeding as defined in 28 U.S.C. §157(b)(2)(A), (D), (G), (K), (M) and (0). Based on the evidence presented, the Court finds that Energia Overseas Limited (Russia), the Third DIP Lender, is extending credit in good faith. Thus, this Interim Order is subject to and the Lender is entitled to the benefits and protections of the provisions of Section 364(e) of the Bankruptcy Code.

C. <u>The Financing Motion: Notice</u>. The Financing Motion was filed on April 22, 2010. The Debtors have provided actual notice of the terms of the Financing Motion and the relief requested thereunder by electronic mail (where known) and by overnight delivery to all entities entitled to receive notice under Bankruptcy Rule 4001(b) and (c), including all parties claiming an interest in the collateral or cash collateral affected by the Financing Motion, those parties listed on the Rule 2002 list, the Committee, each member of the Committee, the entity currently operating the Sea Launch Commander and the Odyssey, and the U.S. Trustee. The Debtors also gave notice of the preliminary hearing to these parties by electronic mail (where

4
DB02:9542552.3                                                                                                    068473.1001

known) and overnight delivery. Such notice is appropriate and adequate under the circumstances set forth herein and presented to this Court. Consequently, adequate notice and opportunity for a hearing have been given in accordance with the provisions of Sections 102, 105, 361, 362, 363, 364, 503(b), 507(a) and 507(b) of the Bankruptcy Code and Bankruptcy Rules 2002 and 4001. With respect to the interim authorization given hereunder pursuant to Bankruptcy Rule 4001(b), (c) and (d), no further notice relating to this proceeding is necessary or required.

D. <u>Prepetition Indebtedness</u>. The Debtors allege that all of its prepetition indebtedness is unsecured with the exception of cash collateral pledged in favor of Manufacturer's Bank in an amount less than $50,000.

E. <u>Debtors' Need for Credit</u>. The Debtors anticipate that they will need $30,000,000 of borrowing authority and net cash advances in the immediate amount of $22,500,000 and of up to $28,000,000 to fund (i) $12,500,000 to pay off the First DIP Loan, (ii) $3,000,000 to pay off the Additional Borrowing, (iii) $3,000,000 to pay off the first draw on the Amended DIP Facility, and (iv) $9,500,000 in incremental liquidity (less any outstanding interest and expenses due the First DIP Lender and the Trust). The borrowing authority will also be required for (x) $2,000,000 in original issue discount, (y) to pay transaction fees and expenses incurred in connection with the Third DIP Facility, and (z) to pay professional fees and expenses as approved by the Bankruptcy Court, <u>provided, however</u>, that the Third DIP Facility proceeds used for payment of fees and expenses of professionals retained by the Committee in these cases under 11 U.S.C. § 327 or 328 shall not exceed, in the aggregate, $350,000 per month. The Debtors ultimately seek the authority to borrow $30,000,000 but have currently negotiated for the possibility of Excess Loans (as Defined in the Third DIP Facility) for the Third DIP Lender

DB02:9542552.3    068473.1001

to be secured by the same collateral in the event the Debtors require additional funding for the period between confirmation of a plan of reorganization and the Effective Date of such plan.

F. <u>Description of Third DIP Facility</u>. The Court finds that, in order to (i) satisfy working capital and operational needs, (ii) maintain their relationships with vendors, suppliers and customers, and (iii) continue to fund payroll and capital expenditures, the Debtors require the extension of the Third DIP Facility. The Third DIP Facility is contained in the Loan Documents filed as Exhibit A to the Financing Motion.

The Debtors shall use funds advanced by the Third DIP Lender as described above. The Third DIP Facility, as described in the Loan Documents, includes all documentation pertaining to it and any amendments or modifications thereto or replacements or substitutions therefor. All amounts loaned to the Debtors pursuant to the Third DIP Facility and all costs and expenses incurred by the Lender in connection therewith, including reasonable attorneys' fees and expenses, are hereinafter referred to as the "DIP Facility Claims." The DIP Facility Claims will be afforded superpriority status and will be secured by the Collateral (as defined below). The DIP Facility Claims will be governed by the terms of this Interim Order.

G. <u>No Credit Available On Other Terms</u>. The Debtors have been unable, in the ordinary course of business or otherwise, to obtain (1) unsecured credit allowable pursuant to Section 503(b)(1) of the Bankruptcy Code as an administrative expense pursuant to Section 363 or 364(a) or (b) of the Bankruptcy Code in an amount necessary for the maintenance and preservation of their assets and operation of their businesses or (2) secured indebtedness pursuant to Section 364(c) of the Bankruptcy Code on more advantageous terms than those offered by the Lender pursuant to the terms of this Interim Order.

H. *Fair Terms: Reasonably Equivalent Value; Arms'-Length Negotiation.* The Third DIP Lender has indicated a willingness to extend credit and other financial accommodations to the Debtors only upon the terms and conditions set forth in this Interim Order. These terms are fair and are for reasonably equivalent value and fair consideration. They have been negotiated at arms' length, with all parties represented by counsel, and are enforceable in accordance with their terms. The terms and conditions set forth in this Interim Order have been entered into, and the Third DIP Facility is being extended in good faith as contemplated by Sections 363(m) and 364(e) of the Bankruptcy Code.

I. *Good Cause For Entry Of Order.* Good cause has been shown for the entry of this Interim Order. Among other things, entry of this Interim Order will minimize the disruption of the Debtors' existing businesses, will increase the possibility for successful reorganization of the Debtors and is in the best interests of the Debtors, their creditors and other parties in interest.

J. *Existing Security Interests.* Except as specified below, this Interim Order primes all prepetition liens and security interests in the Collateral.

**BASED UPON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, WHICH ARE FULLY INCORPORATED BY REFERENCE INTO THE INTERIM ORDER SET FORTH BELOW,**

IT IS HEREBY ORDERED THAT:

1. *Preamble and Findings Incorporated by Reference.* The paragraphs contained in the Preamble to this Interim Order and the Findings of Fact set forth above are incorporated herein by this reference and the Debtors and the Lender consent to entry of this Interim Order.

2. <u>Authorization to Borrow</u>. The Financing Motion is hereby Granted, and Debtors are hereby authorized to incur DIP Facility Claims in accordance with the provisions of this Interim Order and the Loan Documents, all of which are hereby approved. The Debtors are authorized to spend the funds advanced, but only in strict accordance with the provisions of this Interim Order and the Loan Documents, and the budget (the "Budget") agreed to by the parties, subject to permitted variances.

3. <u>Additional Authority</u>. The Debtors are authorized, empowered and directed to execute such other documents and agreements and to take all necessary actions to complete and effectuate the financing directed by this Interim Order and to pay the fees that are required hereunder.

4. <u>Terms of the Third DIP Facility</u>.

a. <u>The Budget</u>. The Budget shall be provided by the Debtors on Wednesday of each week (or earlier). The Budget shall provide the Third DIP Lender with a cash flow forecast showing projected weekly receipts and disbursements for the succeeding thirteen weeks. The Budget specifies the Debtors' proposed uses of funds provided pursuant to the Third DIP Facility, subject to the agreed upon variances set forth in the Loan Documents. Among other things, the Budget includes line items for, and the Third DIP Facility requires, the Debtors to (i) maintain a balance of available cash and cash equivalents of $2.5 million at all times, and (ii) that the payment by the Debtors of professional fees shall be deferred to the extent necessary to assure compliance with the Budget.

b. <u>Fees</u>. Upon entry of this Interim Order, Borrower shall immediately pay Third DIP Lender $75,000 (the "Work Fee"). The Work Fee shall be payable regardless of whether the Closing Date occurs, and shall not be refundable under any

8
DB02:9542552.3                                                                                                                        068473.1001

circumstance. However, upon the occurrence of the Closing Date, the Work Fee shall be applied to the fees and costs incurred by the Third DIP Lender, including attorneys' fees and expenses, authorized to be paid by this Interim Order.

c. <u>Approval of Break Up Fee</u>. In the event that the Third DIP Lender is willing to provide funding in the full amount of $28 million net cash proceeds described in the Loan Documents and the Loan Parties instead choose an alternative financing in lieu of financing described in the Loan Documents, and the Final Order approving the Third DIP Facility is not entered, then upon and only upon closing and funding of such alternative financing approved by the Bankruptcy Court, Loan Parties shall pay Third DIP Lender $~~1,125,000~~ 750,000 (the "Break Up Fee").

d. <u>Credit Bid</u>. The Third DIP Facility provides the Third DIP Lender with the express right to credit bid as part of any sale of assets under section 363(b) or a plan or reorganization. The Third DIP Facility Lender also has the right to convert some or all of the Third DIP Facility Obligations into equity of the reorganized Debtors.

e. <u>Events of Default; Remedies</u>. If an Event of Default, as defined in the Loan Documents, should occur, the Third DIP Lender may exercise its remedies without further order or application to the Court, provided that the Third DIP Lender provide the Debtors, the U.S. Trustee, and counsel to any official committee appointed in the Reorganization Cases with written notice at least 5 business days in advance, during which time any party can seek a hearing. Unless the Bankruptcy Court determines otherwise within that 5-day period then the automatic stay under Section 362 of the Bankruptcy Code shall be deemed to be automatically modified to permit the Third DIP Lender to: (i) immediately terminate the Third DIP Facility; (ii) accelerate the Loans, and all amounts owed under the Loan

Documents; and (iii) exercise all remedies under the Loan Documents or applicable law or in equity.

        f.      Termination of Commitment. The availability of the Third DIP Facility, and the authorization granted under this Interim Order with respect thereto, shall immediately and automatically terminate, and the DIP Facility Claims together with any then outstanding interest, fees, costs, expenses or other amounts payable in connection therewith, shall be immediately due and payable in full on the occurrence of an Event of Default. Notwithstanding any termination of availability of the Third DIP Facility or any amounts becoming due and payable under the Third DIP Facility, the rights and obligations of the Debtors and the rights, claims, security interests, liens and priorities of the Third DIP Lender with respect to all transactions which occurred prior to the occurrence of such termination or maturity, including without limitation all liens and priority afforded with respect to the DIP Facility Claims and all adequate protection afforded the Third DIP Lender under this Interim Order, shall remain unimpaired and unaffected by any such termination or maturity and shall survive any such termination or maturity.

    5.      Security Interests. The Loan Parties will grant the following as collateral (the "Collateral") securing all DIP Facility Claims, subject to the Carve-Out:

        a.      Liens on Unencumbered Property. Except as provided in section 5.c. of this Interim Order, pursuant to section 364(c)(2) of the Bankruptcy Code, first priority liens upon all unencumbered tangible and intangible property of the Loan Parties' estates and on all cash, investments, inventory, accounts receivable and other receivables whether arising before or after the Petition Date; for avoidance of doubt, liens shall be secured by, among other things, first preferred ship mortgages on the Sea Launch Odyssey and the Sea Launch Commander.

b. <u>Priming Liens</u>. Pursuant to section 364(d) of the Bankruptcy Code, priming liens upon all tangible and intangible property of the Loan Parties' estates that are encumbered, if any (except for the liens of Manufacturers Bank on cash collateral to secure certain letters of credit, in an amount not to exceed $50,000 (the "Manufacturers' Liens").

c. <u>Future Property</u>. All property and assets of the Loan Parties and their estates, real and personal, tangible and intangible, other than all chapter 5 causes of action that do not involve the Sea Launch Odyssey or the Sea Launch Commander, whether owned as of the Petition Date or after acquired or arising, and regardless of where located or by whomsoever held, and whether now owned or in which the Loan Parties have any interest or hereafter acquired or in which the Loan Parties obtain an interest.

6. <u>Superpriority of the DIP Facility Claims</u>. In addition to the liens and security interests granted hereunder, the DIP Facility Claims shall have priority, subject and subordinate to the Carve Out, pursuant to the provisions of Sections 364(c)(1) and 507(h) of the Bankruptcy Code, over all administrative and priority expenses incurred in the Reorganization Cases, including, without limitation, expenses of the kind specified in Section 503(b), 507(a) and 507(b) of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors, their creditors other than the Third DIP Lender, or the successors in interest of the Debtors or their creditors, including without limitation any trustee appointed in the Reorganization Case, and any trustee in a case under chapter 7 of the Bankruptcy Code into which the Reorganization Case may be converted.

The DIP Liens granted pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code are, with the exception of the Carve-Out and the Manufacturers' Liens, first

priority and superior to any security, mortgage, collateral interest or lien or claim to the DIP Collateral.

Additionally, the DIP Liens are senior in priority to any and all adequate protection liens of any prepetition secured creditors (excluding the Manufacturers' Liens) and are not subject or subordinate to (a) any lien or security interest that is avoided and preserved for the benefit of any Loan Party and its estate, (b) liens purported to arise after the Petition Date, including any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of any Loan Party, or (c) any intercompany or affiliate liens of any Loan Party.

7. <u>No Section 506(c) Assessment</u>. Subject to entry of the Final Order, except as provided in decretal paragraph 8 hereof, no administrative claims, including fees and expenses of professionals, the Official Committee of Unsecured Creditors or any other committee appointed in the Reorganization Cases, shall be assessed against or attributed to the Third DIP Lender, the Collateral pursuant to the provisions of Section 506(c) of the Bankruptcy Code, or otherwise, and the Third DIP Lender has not consented or agreed to permit such amounts to be paid from the Collateral.

8. <u>Sole Exception to Liens and Superpriority</u>. No costs or expenses of administration or other obligations that have been or may be incurred in the Reorganization Case, in any conversion of the Reorganization Case pursuant to Section 1112 of the Bankruptcy Code, or in any other case or proceeding related to the Reorganization Case and no claims entitled to priority over general unsecured claims pursuant to any provision of the Bankruptcy Code, are or will be prior to or pari passu with the claims of the Third DIP Lender against the Debtors, or with the security interests and liens of the Third DIP Lender upon the Collateral, and

12
DB02:9542552.3                                                                                                                    068473.1001

no such costs, expenses of administration or other obligations shall be imposed against the Third DIP Lender, its claims in the Reorganization Case, or the Collateral; <u>provided, however,</u> that notwithstanding the existence of the Third DIP Lender's liens and superpriority as set forth in this Interim Order, after an Event of Default, the Third DIP Lender will permit the proceeds of the Collateral to be used to pay claims for statutory fees of the United States Trustee (not subject to a cap), and professional fees approved by the Court in a total aggregate amount not to exceed $1,600,000 (the "Carve-Out). Prior to an Event of Default, the payment of claims for statutory fees of the Unites States Trustee and payment of professional fees as approved by the Court shall not reduce the Carve-Out.

9. <u>No Filing or Recording Necessary.</u> All agreements, security interests, mortgages, deeds of trust and liens contemplated or granted by this Interim Order and the Loan Documents are effective and perfected as of the commencement of the Reorganization Case without further filing or recording by the Third DIP Lender in compliance with any state or federal law. The Third DIP Lender will not be required to file financing statements or other documents in any jurisdiction or take any other actions in order to perfect its security interests and liens granted under or pursuant to this Interim Order. If the Third DIP Lender, in its sole discretion, chooses to file any financing statements, deeds of trust, mortgages, ship mortgages or other documents or notices to otherwise confirm perfection of such security interests and liens, all such documents shall be deemed to have been filed or recorded immediately upon the filing of the petition commencing the Reorganization Case. However, the failure of the Debtors to execute any such documentation, or the failure of the Third DIP Lender otherwise to attach or perfect its security interests in the Collateral under state or federal law, shall in no

13

way affect the validity, perfection or priority of the security interests, mortgages, and liens granted to the Third DIP Lender pursuant to this Interim Order or otherwise.

10. <u>Binding Effect of Orders</u>. Unless otherwise provided herein, the terms and conditions of this Interim Order relating to the liens and priorities granted to the Third DIP Lender herein shall be binding upon the Debtors, their creditors, all other parties in interest and all successors in interest thereof including, without limitation, any Chapter 11 trustee that may he appointed in the Reorganization Case or any trustee in a case under Chapter 7 of the Bankruptcy Code into which the Reorganization Case may be converted. This binding effect is an integral part of this transaction. The grant of the DIP Facility Claims, liens and perfection in favor of the Third DIP Lender shall survive the entry of any order converting or dismissing the Reorganization Case.

11. <u>Additional Relief.</u> The Third DIP Lender may at any time file a motion with this Court seeking any such additional adequate protection as it may deem necessary, including, without limitation, modification or termination of this Interim Order. Nothing herein shall prevent the Debtors or other parties in interest from opposing such a motion. The Third DIP Lender shall retain all rights available pursuant to the Bankruptcy Code or any other applicable law.

12. <u>Effect of Future Modification of Order</u>. No subsequent stay, modification, termination. failure to extend the term of or vacation of this Interim Order shall affect, limit or modify any superpriority claim on lien granted hereunder owed by the Debtors to the Third DIP Lender incurred pursuant to this Interim Order or otherwise, nor shall any such stay, modification, or vacation limit, affect or modify the validity, enforceability or perfection of any security interest, mortgage, lien or priority granted or reaffirmed in connection therewith. All

14
DB02:9542552.3  068473.1001

advances made in reliance on this Interim Order and the indebtedness evidenced by such advances cannot be subordinated, lose their superpriority status or be deprived of the benefit of the senior and priming liens granted to the Third DIP Lender by any subsequent order in the Reorganization Case. The provisions of this Interim Order dealing with DIP Facility Claims and liens shall not be modified or superseded by any order confirming a plan of reorganization (including the use of the cram-down provisions of Section 1129(b) of the Bankruptcy Code).

13. <u>No Requirement to Lend</u>. Nothing contained in this Interim Order shall require or be deemed to require the Third DIP Lender to make an additional loan or to extend further debt financing or other financial accommodations to or for the benefit of the Debtors other than the Third DIP Facility.

14. <u>No Liability; Not Responsible Person</u>. In making decisions to advance funds or extend financial accommodations under this Interim Order, in administering the Debtors' use of any such advances or financial accommodations under this Interim Order or in taking any other action related to or in connection with any of the foregoing, the Third DIP Lender shall have no liability to any third party and shall not be deemed to he in control of the operations of the Debtors or to be acting as a "responsible person" or managing agent with respect to the operation or management of the Debtors.

15. <u>Effect of Dismissal</u>. In the event that the Reorganization Case is dismissed, converted, otherwise superseded or substantively consolidated, neither the entry of this Interim Order nor the dismissal or conversion of the Reorganization Case shall affect the rights of the Third DIP Lender under this Interim Order or the Loan Documents, including the security interests, liens, lien perfection and superpriority granted herein, and all the rights and remedies of the Third DIP Lender thereunder shall be and remain in full force and effect as if the

Reorganization Case had not been filed or the Reorganization Case has not been dismissed, converted or superseded.

16. <u>No Effect On Other Rights</u>.  This Interim Order shall not operate to modify, alter, impair, affect, abrogate, amend, restrict or nullify any rights of the Third DIP Lender with respect to any entity other than the Debtors, nor to release, alter, impair, affect or abrogate any debts, claims, demand, actions and causes of action in law and equity, whether known or unknown, that the Third DIP Lender may have as to any entity other than the Debtors.

17. <u>Notice</u>.  Any notice which may be required to be given by the Debtors to the Third DIP Lender shall be sufficient if notice is given by facsimile transmission, hand delivery, or regular, certified or registered United States mail to:

> Lee P. Whidden
> Salans LLP
> 620 Fifth Avenue
> New York, New York 10020-2457
> Fax: (212) 307-3373
>
> LLC«Energia-Overseas»
> 11 Bolhsoy Savvinski Pereulok,
> Moscow, Russia 119435
> Fax: +7 (495) 663 8452

Any notice which may be required to be given by the Third DIP Lender to the Debtors shall be sufficient if notice is given by facsimile transmission, hand delivery, or regular, certified or registered United States mail to:

> Dennis J. Connolly
> Matthew W. Levin
> Alston & Bird LLP
> 1201 West Peachtree Street
> Atlanta, Georgia 30309-3424
> Fax: (404) 881-7777
>
> Brett A. Carman
> Sea Launch
> 2700 Nimitz Road

Long Beach, CA 90802
Fax: (562) 499-4755

18. Effect of Order. In light of the Findings set forth above, in the event of any appeal of this Interim Order, any credit extended hereunder shall be pursuant to Section 364(e) of the Bankruptcy Code, and the Third DIP Lender shall be granted all rights and remedies thereunder, unless the party to such appeal shall have obtained a stay of this Interim Order pursuant to the Bankruptcy Code and the applicable Bankruptcy Rules.

19. Cooperation. The First DIP Lender and the Trust shall, simultaneously with the repayment of the principal and accrued interest on the First DIP Loan, the Additional Borrowing and the Amended DIP Facility, release all liens on and security interests in the Debtors' assets, shall execute all necessary documents to effectuate such releases, and otherwise shall cooperate with the Debtors in the transfer of the financing to the Third DIP Lender (with all reasonable costs and fees associated therewith to be paid by the Debtors). With regard to any fees or expenses asserted by the First DIP Lender or the Trust, the Debtors shall escrow the stated amount of such fees and expenses with their counsel, which escrow amount shall not be subject to the Third DIP Lender's liens, but shall not pay over any such amounts to the First DIP Lender or the Trust until either (a) the Debtors and the Committee have had a reasonable opportunity to review all statements and bills related to such fees and expenses (not to exceed fourteen (14) days from the receipt of such statements or bills) and have reached agreement with the First DIP Lender and the Trust as to the proper amount of such fees and expenses, or (b) to the extent such agreement cannot be reached, upon further order of this Court, after a motion and proper notice filed by either party.

20. Objections to Entry of Final Order. Any party-in-interest shall have until 4:00 p.m., prevailing Eastern time, on May 7, 2010 to file an objection to the entry of this

Interim Order as a Final Order and to simultaneously request a hearing thereon. Any party objecting to the entry of this Interim Order as a Final Order shall file a written objection with the Clerk of the Bankruptcy Court in Wilmington, Delaware, and actually deliver a copy of the objection to Joel A. Waite and Kenneth J. Enos, Young Conaway Stargatt & Taylor, LLP, The Brandywine Building, 1000 West Street, 17th Floor, Wilmington, Delaware 19801-0391; Dennis J. Connolly and Matthew W. Levin, Alston & Bird LLP; 1201 West Peachtree Street, Atlanta, Georgia 30309-3424; Claude D. Montgomery, Salans LLP, Rockefeller Center, 620 Fifth Avenue, New York, NY 10020-2457; and Fredrick B.Rosner, Messana, Rosner & Stern, 1000 North West Street, Suite 1200, Wilmington DE 19801..

21. <u>Final Hearing</u>. If any timely objection is filed to this Interim Order being entered as a Final Order, a final hearing shall be held on May 12, 2010 at 2:00 p.m., in Courtroom #1, at the United States Courthouse, 824 North Market Street, 6th Floor, Wilmington, Delaware. The Debtors are directed to notify each of the parties described in Finding C above of such final hearing.

SIGNED April 27 ,2010

Brendan Shannon
UNITED STATES BANKRUPTCY JUDGE

18
DB02:9542552.3                                                                                                                      068473.1001