**Exhibit A**

**Joint Plan of Reorganization**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| SEA LAUNCH COMPANY, | ) | Case No. 09-12153 (BLS) |
| L.L.C., *et al.*,[1] | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

## <u>DEBTORS' JOINT PLAN OF REORGANIZATION</u>

ALSTON & BIRD LLP
Dennis J. Connolly
Matthew W. Levin
1201 West Peachtree Street, N.E.
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7940
Facsimile: (404) 881-7777

- and -

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Joel A. Waite (No. 2925)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel to the Debtors and Debtors in Possession

Dated:  May 10, 2010

---

[1]    The last four digits of the taxpayer identification numbers for each of the Debtors follow in parenthesis: (i) Sea Launch Company, L.L.C. (1590); (ii) Sea Launch Limited Partnership (Cayman) (8182); (iii) Sea Launch ACS Limited (5999); (iv) Sea Launch ACS Limited Partnership (Isle of Man) (6216); (v) Platform LDC (3177); and (vi) Platform Limited Partnership (3173).  The mailing address for all of the Debtors is 2700 Nimitz Road, Long Beach, CA 90802.

# TABLE OF CONTENTS

Page

ARTICLE I:  DEFINED TERMS AND RULES OF INTERPRETATION ..........................1
  1.1     Administrative Expense Claim ...........................................................1
  1.2     Affiliate Debtor(s) ...........................................................................1
  1.3     Aker ...............................................................................................2
  1.4     Allowed ..........................................................................................2
  1.5     Articles of Incorporation .................................................................2
  1.6     Ballot .............................................................................................2
  1.7     Bankruptcy Code ............................................................................2
  1.8     Bankruptcy Court ...........................................................................2
  1.9     Bankruptcy Rules ...........................................................................2
  1.10    Boeing ...........................................................................................2
  1.11    Business Day ..................................................................................2
  1.12    By-Laws ........................................................................................2
  1.13    Cash ..............................................................................................2
  1.14    Causes of Action ............................................................................2
  1.15    Chapter 11 Cases ...........................................................................3
  1.16    Claim ............................................................................................3
  1.17    Class .............................................................................................3
  1.18    Committee .....................................................................................3
  1.19    Confirmation Date ..........................................................................3
  1.20    Confirmation Hearing .....................................................................3
  1.21    Confirmation Order ........................................................................3
  1.22    Creation Agreement .......................................................................3
  1.23    Creditor Trust ................................................................................3
  1.24    Creditor Trust Actions ....................................................................3
  1.25    Creditor Trust Agreement ................................................................3
  1.26    Creditor Trust Assets .....................................................................4
  1.27    Creditor Trust Equity Interests ........................................................4
  1.28    Creditor Trust Manager ..................................................................4
  1.29    Cure Amount .................................................................................4
  1.30    Current Trade Vendor .....................................................................4
  1.31    Current Trade Vendor List ..............................................................4
  1.32    Current Trade Vendor Unsecured Claim ..........................................4
  1.33    Debtor(s) .......................................................................................4
  1.34    DIP Lender ....................................................................................4
  1.35    DIP Facility Agreement ..................................................................4
  1.36    DIP Facility Claims ........................................................................4
  1.37    Disallowed Claim ..........................................................................4
  1.38    Disbursing Agent ...........................................................................4
  1.39    Disclosure Statement ......................................................................5
  1.40    Disputed Claim .............................................................................5
  1.41    Distribution Record Date ................................................................5
  1.42    DTC ..............................................................................................5
  1.43    Effective Date ................................................................................5
  1.44    Energia ..........................................................................................5

068473.1001

# TABLE OF CONTENTS (cont'd)

| | | |
|---|---|---|
| 1.45 | Energia Overseas | 5 |
| 1.46 | Energia Logistics | 5 |
| 1.47 | Estate(s) | 5 |
| 1.48 | Exhibit | 5 |
| 1.49 | Existing Claim Equity Amount | 5 |
| 1.50 | Exit Financing | 5 |
| 1.51 | Exit Financing Commitment Letter | 5 |
| 1.52 | Exit Financing Credit Agreement | 6 |
| 1.53 | File, Filed or Filing | 6 |
| 1.54 | Final DIP Order | 6 |
| 1.55 | Final Order | 6 |
| 1.56 | General Unsecured Claim | 6 |
| 1.57 | Governmental Unit | 6 |
| 1.58 | Holder | 6 |
| 1.59 | Impaired | 6 |
| 1.60 | Initial Distribution Date | 7 |
| 1.61 | Intercompany Claims | 7 |
| 1.62 | Interest | 7 |
| 1.63 | Interim Compensation Order | 7 |
| 1.64 | Lien | 7 |
| 1.65 | Limited Partner | 7 |
| 1.66 | New Common Stock | 7 |
| 1.67 | New Investment Agreement | 7 |
| 1.68 | New Investment Amount | 7 |
| 1.69 | New Investor | 7 |
| 1.70 | New Investor Equity Amount | 7 |
| 1.71 | Non-Insider General Unsecured Claim | 8 |
| 1.72 | Other Secured Claim | 8 |
| 1.73 | Partner Claim | 8 |
| 1.74 | Partner Currency Control Claim | 8 |
| 1.75 | Pension and Retirement Plans | 8 |
| 1.76 | Petition Date | 8 |
| 1.77 | Plan | 8 |
| 1.78 | Plan Documents | 8 |
| 1.79 | Plan Supplement | 8 |
| 1.80 | Priority Non-Tax Claim | 8 |
| 1.81 | Priority Tax Claim | 9 |
| 1.82 | Pro Rata | 9 |
| 1.83 | Reincorporation Transactions Document | 9 |
| 1.84 | Reinstated or Reinstatement | 9 |
| 1.85 | Released Parties | 9 |
| 1.86 | Reorganized Debtors | 9 |
| 1.87 | Reorganized Sea Launch | 10 |
| 1.88 | Reorganized Sea Launch Shareholders Agreement | 10 |
| 1.89 | Schedules | 10 |

| | | |
|---|---|---|
| 1.90 | Sea Launch | 10 |
| 1.91 | Sea Launch Equity Interests | 10 |
| 1.92 | Section 1446 Claim | 10 |
| 1.93 | Secured Claim | 10 |
| 1.94 | SLEIP | 10 |
| 1.95 | SLLP | 11 |
| 1.96 | SLS DIP Financing Agreement | 11 |
| 1.97 | Subsidiary Interests | 11 |
| 1.98 | Tax Withholding Advances | 11 |
| 1.99 | Unimpaired | 11 |
| 1.100 | Yuzhmash | 11 |
| 1.101 | Yuzhnoye | 11 |
| ARTICLE II: | CLASSIFICATION OF CLAIMS AND INTERESTS | 12 |
| 2.1 | Unclassified Claims | 12 |
| 2.2 | Classes of Claims | 12 |
| 2.3 | Classes of Interests | 13 |
| ARTICLE III: | TREATMENT OF CLAIMS AND INTERESTS | 14 |
| 3.1 | Unclassified Claims | 14 |
| 3.2 | Classes of Claims | 16 |
| 3.3 | Classes of Interests | 17 |
| 3.4 | Special Provision Regarding Unimpaired Claims | 18 |
| 3.5 | Intercompany Claims and Interests | 18 |
| ARTICLE IV: | ACCEPTANCE OR REJECTION OF THE PLAN | 18 |
| 4.1 | Acceptance by an Impaired Class | 18 |
| 4.2 | Presumed Acceptances by Unimpaired Classes | 18 |
| 4.3 | Presumed Rejections by Impaired Classes | 19 |
| 4.4 | Summary of Classes Voting on this Plan | 19 |
| 4.5 | Non-Consensual Confirmation | 19 |
| ARTICLE V: | MEANS FOR IMPLEMENTATION OF THE PLAN | 19 |
| 5.1 | Non-Substantive Consolidation | 19 |
| 5.2 | Reorganized Sea Launch Securities | 19 |
| 5.3 | Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors | 20 |
| 5.4 | Corporate Governance, Directors, Officers and Corporate Action | 21 |
| 5.5 | Cancellation of Liens | 22 |
| 5.6 | Exit Financing | 22 |
| 5.7 | SLEIP | 22 |
| 5.8 | Creditor Trust | 23 |
| 5.9 | Additional Transactions Authorized Under this Plan | 24 |
| ARTICLE VI: | PROVISIONS GOVERNING DISTRIBUTIONS | 24 |
| 6.1 | Distributions for Classes 3, 4, 5, 6 and 7 Claims | 24 |
| 6.2 | Interest on Claims | 24 |
| 6.3 | Distributions by Disbursing Agent | 24 |
| 6.4 | Delivery of Distributions and Undeliverable or Unclaimed Distributions | 24 |
| 6.5 | Record Date for Distributions | 25 |

| | | |
|---|---|---|
| 6.6 | Allocation of Plan Distributions Between Principal and Interest | 26 |
| 6.7 | Means of Cash Payment | 26 |
| 6.8 | Sources of Cash for Plan Distributions | 26 |
| 6.9 | Withholding and Reporting Requirements | 26 |
| 6.10 | Setoffs | 27 |
| 6.11 | Fractional Shares | 27 |
| 6.12 | Exemption from Securities Laws | 27 |
| ARTICLE VII: | TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES AND PENSION AND RETIREMENT PLANS | 27 |
| 7.1 | Assumption of Executory Contracts and Unexpired Leases | 27 |
| 7.2 | Cure of Defaults of Assumed Executory Contracts and Unexpired Leases | 27 |
| 7.3 | Post-Petition Contracts and Leases | 28 |
| 7.4 | Retiree Benefits, and Pension and Retirement Plans | 28 |
| 7.5 | Compensation and Benefit Programs | 28 |
| ARTICLE VIII: | PROVISIONS FOR RESOLVING DISPUTED CLAIMS AND DISPUTED INTERESTS | 28 |
| 8.1 | Objections to and Estimation of Claims | 28 |
| 8.2 | Objections to Claims in Classes 5 and 7 | 29 |
| 8.3 | No Distributions Pending Allowance | 29 |
| 8.4 | Distributions on Account of Disputed Claims Once They Are Allowed | 29 |
| 8.5 | Reinstated Claims | 29 |
| ARTICLE IX: | CONFIRMATION AND CONSUMMATION OF THE PLAN | 29 |
| 9.1 | Conditions to Confirmation | 29 |
| 9.2 | Conditions to Effective Date | 30 |
| 9.3 | Waiver of Conditions | 31 |
| 9.4 | Effect of Non-Occurrence of Conditions to Effective Date | 31 |
| ARTICLE X: | EFFECT OF PLAN CONFIRMATION | 32 |
| 10.1 | Binding Effect | 32 |
| 10.2 | Exculpation and Releases | 32 |
| 10.3 | Injunction | 34 |
| 10.4 | Term of Bankruptcy Injunction or Stays | 35 |
| 10.5 | Exception to Releases | 35 |
| ARTICLE XI: | RETENTION OF JURISDICTION | 35 |
| ARTICLE XII: | MISCELLANEOUS PROVISIONS | 37 |
| 12.1 | Surrender of Instruments | 37 |
| 12.2 | Post-Confirmation Date Retention of Professionals | 38 |
| 12.3 | Bar Date for Certain Administrative Expense Claims | 38 |
| 12.4 | Effectuating Documents and Further Transactions | 38 |
| 12.5 | Corporate Action | 38 |
| 12.6 | Exemption from Transfer Taxes | 38 |
| 12.7 | Payment of Statutory Fees | 39 |
| 12.8 | Amendment or Modification of this Plan | 39 |
| 12.9 | Severability of Plan Provisions | 39 |
| 12.10 | Successors and Assigns | 39 |
| 12.11 | Revocation, Withdrawal or Non-Consummation of the Plan | 39 |

# TABLE OF CONTENTS (cont'd)

| | | |
|---|---|---|
| 12.12 | Notice | 40 |
| 12.13 | Governing Law | 41 |
| 12.14 | Tax Reporting and Compliance | 41 |
| 12.15 | Exhibits | 41 |
| 12.16 | Filing of Additional Documents | 41 |
| 12.17 | Reservation of Rights | 41 |

YCST01:9639150.1     068473.1001

# INTRODUCTION

Sea Launch Company, L.L.C., a Delaware limited liability company, Sea Launch Limited Partnership, a Cayman Islands exempted limited partnership, and its direct and indirect subsidiaries, Sea Launch ACS Limited, an Isle of Man exempted company, Sea Launch ACS Limited Partnership, an Isle of Man exempted limited partnership, Platform LDC, a Cayman Islands exempted limited duration company, and Platform Limited Partnership, a Cayman Islands exempted limited partnership (each a "Debtor", and collectively, the "Debtors"), propose the following joint plan of reorganization for the resolution of the outstanding claims against and interests in the Debtors. Reference is made to the Disclosure Statement (as defined herein), distributed contemporaneously herewith, for a discussion of the Debtors' history, business, properties and operations, projections for those operations, risk factors, a summary and analysis of this Plan (as defined herein), and certain related matters including, among other things, the securities to be issued under this Plan. Subject to certain restrictions and requirements set forth herein and in 11 U.S.C. § 1127 and Fed. R. Bankr. P. 3019, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its substantial consummation in accordance with the terms hereof, the Confirmation Order (as defined herein), and the Bankruptcy Code (as defined herein).

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

A. <u>Defined Terms</u>. As used herein, capitalized terms shall have the meanings set forth below. Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1 <u>Administrative Expense Claim</u> means a Claim against any Debtor for costs and expenses of administration of the Chapter 11 Cases (including, without limitation, Claims arising under Sections 328, 330, 363, 364(c)(1), 365, 503(b), and 507(a)(2) and 1114(e) of the Bankruptcy Code) including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' Estates and operating the businesses of the Debtors; (b) all compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses Allowed by the Bankruptcy Court under Sections 328, 330 or 503(b) of the Bankruptcy Code; (c) any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, during the Chapter 11 Cases; (d) any payment to be made under this Plan or Order of this Court to cure a default on an assumed executory contract or unexpired lease; and (e) Claims for out-of-pocket expenses incurred by members of the Committee (excluding any fees or expenses for legal or financial advisors except as otherwise provided herein). All fees and charges assessed against the Debtors' Estates under Section 1930, Chapter 123, of Title 28 of the United States Code are excluded from the definition of Administrative Expense Claim and shall be paid in accordance with Section 12.7 of the Plan.

1.2 <u>Affiliate Debtor(s)</u> means, individually or collectively, a Debtor or Debtors other than Sea Launch, as applicable.

1.3 <u>Aker</u> means Aker Maritime Finance AS, a Norwegian joint stock company.

1.4 <u>Allowed</u> means, with respect to a Claim or Interest against any Debtor, or any portion thereof, in any Class or category specified, (a) a Claim or Interest which has been listed by the Debtors in their Schedules, as may be amended by the Debtors from time to time, in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary assertion has been filed, (b) a Claim or Interest as to which no objection or request for estimation has been filed or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder of such Claim or Interest; or (c) a Claim or Interest that is expressly allowed (i) by a Final Order, or (ii) pursuant to the terms of this Plan; provided, however, that Claims or Interests allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" Claims or Interests hereunder.

1.5 <u>Articles of Incorporation</u> means the amended and restated articles of incorporation of Reorganized Sea Launch, in substantially the form to be included in the Plan Supplement.

1.6 <u>Ballot</u> means the forms distributed to each holder of impaired Claims and Interests entitled to vote on the Plan for the purposes of accepting or rejecting this Plan, as approved by the Bankruptcy Court.

1.7 <u>Bankruptcy Code</u> means Title 11 of the United States Code, as now in effect or hereafter amended, as applicable to the Chapter 11 Cases.

1.8 <u>Bankruptcy Court</u> means the United States Bankruptcy Court for the District of Delaware or any other court with jurisdiction over the Chapter 11 Cases.

1.9 <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of Title 28 of the United States Code, as now in effect or hereafter amended and any Local Rules of the Bankruptcy Court.

1.10 <u>Boeing</u> means, collectively, Boeing Commercial Space Company, a Delaware corporation, and The Boeing Company.

1.11 <u>Business Day</u> means any day other than a Saturday, a Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.12 <u>By-Laws</u> means the by-laws of Reorganized Sea Launch, in substantially the form to be included in the Plan Supplement.

1.13 <u>Cash</u> means legal tender of the United States of America.

1.14 <u>Causes of Action</u> means all Claims, rights, causes of action, defenses, demands, damages, suits or proceedings of any kind or nature, whether under contract or tort, in law or in equity or otherwise, whether known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto, including causes of action arising

under Chapter 5 of the Bankruptcy Code or similar state statutes, that any Debtor or Estate may hold against any person or entity as of the Effective Date.

1.15    Chapter 11 Cases means the voluntary cases commenced on June 22, 2009 by the Debtors in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

1.16    Claim means a "claim," as defined in Section 101(5) of the Bankruptcy Code.

1.17    Class means each category of Holders of Claims or Interests established under Article II of this Plan pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.18    Committee means the Official Committee of Unsecured Creditors appointed and acting in the Chapter 11 Cases, including all individual members thereof, and all professionals retained by the Committee pursuant to order of the Bankruptcy Court.

1.19    Confirmation Date means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order.

1.20    Confirmation Hearing means the hearing held by the Bankruptcy Court on confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

1.21    Confirmation Order means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

1.22    Creation Agreement means that certain Agreement for Creation of Sea Launch Companies dated May 3, 1995 as amended.

1.23    Creditor Trust means the Sea Launch Creditor Trust, a limited liability company (or such other corporate form as shall be agreed to by the Debtors and the Committee) to be established no later than the Effective Date for the purposes of holding the Existing Claim Equity Amount, and pursuing, litigating, collecting on, liquidating and/or settling the Creditor Trust Actions, as established pursuant to Section 5.8 of this Plan.

1.24    Creditor Trust Actions means (a) all claims arising prepetition that the Debtors may hold against any party, (b) all claims arising under Sections 544, 547, 548, 549 or 552 of the Bankruptcy Code that the Debtors may hold against any party, except that the New Investor shall have right to exclude any claims described above from the definition of Creditor Trust Actions, but, notwithstanding anything set forth above, the term Creditor Trust Actions specifically excludes any claims the Debtors and the Reorganized Debtors may hold against non-Debtor counterparties to executory contracts and/or leases that are being assumed under the Plan.

1.25    Creditor Trust Agreement means that certain limited liability company operating agreement (or such other organizational document(s), as applicable) of the Creditor Trust, to be Filed in draft form with the Plan Supplement, pursuant to which, among other things, the Creditor Trust Actions shall be pursued and liquidated and the proceeds thereof distributed in accordance with the terms of this Plan and the Creditor Trust Agreement, which Creditor Trust Agreement shall be satisfactory to the Committee in its reasonable discretion.

1.26    <u>Creditor Trust Assets</u> means the Creditor Trust Actions and pursuant to the terms of the New Investor Agreement (i) any New Common Stock issued to Creditor Trust and (ii) any cash deposited with the Creditor Trust.

1.27    <u>Creditor Trust Equity Interests</u> means the membership or other equity interests in the Creditor Trust to be issued to Holders of Allowed Claims in Classes 4, 5, 6 and 7 as provided in this Plan and by the Creditor Trust Agreement.

1.28    <u>Creditor Trust Manager</u> means the manager of the Creditor Trust to be appointed in the manner provided in the Creditor Trust Agreement.

1.29    <u>Cure Amount</u> means the dollar amount required under Section 365 of the Bankruptcy Code to cure a Debtor's defaults, if any, under an executory contract or unexpired lease and to compensate the non-debtor party or parties to such contract or lease for any actual pecuniary loss to such party resulting from such default, at the time such contract or lease is assumed by that Debtor.

1.30    <u>Current Trade Vendor</u> means a trade vendor (a) with whom the Debtors are currently engaged in a trade relationship, or (b) with whom the Debtors have engaged in a trade relationship within the past three (3) years, and with whom, subject to the approval of the New Investor, the Debtors anticipate engaging in a trade relationship in the future, as listed in the Current Trade Vendor List.

1.31    <u>Current Trade Vendor List</u> means a list of Current Trade Vendors to be filed with the Plan Supplement.

1.32    <u>Current Trade Vendor Unsecured Claim</u> means a General Unsecured Claim held by a Current Trade Vendor.

1.33    <u>Debtor(s)</u> shall have the meaning set forth in the introduction to this Plan.

1.34    <u>DIP Lender</u> means Energia Overseas acting by agreement as the Debtors' DIP Lender.

1.35    <u>DIP Facility Agreement</u> means that certain Debtor in Possession Financing Agreement, by and among the DIP Lender and the Debtors, dated as of April 30, 2010, together with all related documents and instruments delivered pursuant to or in connection therewith, as may be amended from time to time (or any other Debtor in Possession financing agreement that replaces such facility and is in effect as of the Confirmation Date).

1.36    <u>DIP Facility Claims</u> means all Claims held by the DIP Lender pursuant to the DIP Facility Agreement and the Final DIP Order.

1.37    <u>Disallowed Claim</u> means all or such part of a Claim that is disallowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction.

1.38    <u>Disbursing Agent</u> means any entity designated by the Debtors as such, in its capacity as a disbursing agent under Section 6.3 hereof.

    

1.39    Disclosure Statement means that certain disclosure statement relating to this Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

1.40    Disputed Claim means any Claim against any Debtor, including any portion thereof (a) that is neither an Allowed Claim nor a Disallowed Claim or (b) for which a written request for payment has been made, to the extent the Debtors or any party in interest has interposed a timely objection or request for estimation, which objection or request for estimation has not been withdrawn or determined by a Final Order.

1.41    Distribution Record Date means, with respect to all Classes, the Effective Date or such other date as may be designated in the Confirmation Order.

1.42    DTC means The Depository Trust Company.

1.43    Effective Date means a Business Day on or after the Confirmation Date specified by the Debtors on which (i) no stay of the Confirmation Order is in effect, and (ii) the conditions to effectiveness of this Plan specified in Article IX hereof have been satisfied or waived in accordance with the terms hereof.

1.44    Energia means S.P. Korolev Rocket & Space Corporation, Energia, a Russian Federation joint stock company, and any of its affiliates as defined in the Creation Agreement, excluding Energia Overseas and Energia Logistics.

1.45    Energia Overseas means Energia Overseas Limited Russia and its subsidiary Energia Overseas LLC (Del).

1.46    Energia Logistics means Energia Logistics Limited Russia and Energia Logistics Ltd. (US).

1.47    Estate(s) means, individually, the estate of Sea Launch, SLLP or any of the Affiliate Debtors and, collectively, the estates of the Debtors created under Section 541 of the Bankruptcy Code.

1.48    Exhibit means an exhibit to this Plan or the Disclosure Statement, filed herewith, with the Disclosure Statement or with the Plan Supplement.

1.49    Existing Claim Equity Amount means fifteen percent (15%) of the New Common Stock in Reorganized Sea Launch.

1.50    Exit Financing means the investment or financing facility arising in connection with the Exit Financing Commitment Letter to be entered into by the Reorganized Debtors on the Effective Date, in such amount and on such terms as are satisfactory to the Debtors.

1.51    Exit Financing Commitment Letter means the Exit Financing Commitment Letter from Energia Overseas dated March 29, 2010, as modified by Sea Launch Board Resolution No. 2010-04-1-103 dated April, 2010.

- 5 -

1.52    Exit Financing Credit Agreement means the financing agreement relating to the Exit Financing, and all agreements (including security agreements and pledge agreements), documents and instruments delivered in connection therewith, which shall be in form and substance satisfactory to the Debtors.

1.53    File, Filed or Filing means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

1.54    Final DIP Order means the Final Order (1) Authorizing Incurrence of Secured Indebtedness, (2) Granting Security Interests and Superpriority Claims, (3) Approving Agreement related to the Foregoing, and (4) Granting Other Relief, as entered by the Bankruptcy Court on May 12, 2010, and as amended, modified or supplemented by the Bankruptcy Court from time to time.

1.55    Final Order means an order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) entered by the clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases (or on the docket of any other court of competent jurisdiction), which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for a new trial, reargument or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order not to be a Final Order.

1.56    General Unsecured Claim means any Claim against the Debtors that is not an Administrative Expense Claim, a DIP Facility Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Partner Currency Control Claim or an Other Secured Claim, and shall include, without limitation, all Claims that are not Administrative Expense Claims or Partner Currency Control Claims held by Aker, Boeing, Energia, Yuzhmash and Yuzhnoye, but shall not include Claims that are disallowed or released, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of this Plan or otherwise.

1.57    Governmental Unit means the United States, any State thereof, including, but not limited to, the State of California, any commonwealth, district, territory, municipality, foreign state, department, agency or instrumentality of a State, a commonwealth, district or territory or municipality of a foreign state or other foreign or domestic government.

1.58    Holder means an entity holding a Claim or Interest.

1.59    Impaired means, with respect to any Class of Claims or Interests, "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

YCST01:9639150.1                                                      068473.1001

1.60    Initial Distribution Date means a date selected by the Reorganized Debtors that is not later than ninety (90) days after the Effective Date.

1.61    Intercompany Claims means all prepetition Claims against any of the Debtors held by a Debtor.

1.62    Interest means, without limitation, any equity security in a Debtor that is of a kind specified in Section 101(16) of the Bankruptcy Code and any options, warrants, puts, calls, subscriptions or other similar rights or other agreements, commitments, or outstanding securities obligating the Debtor to issue, transfer, purchase, redeem, or sell any shares of capital stock or other securities, any claims arising out of any appraisal or dissenter's rights, any claims arising from rescission of a purchase, sale or other acquisition of any common stock or other equity security (or any right, claim, or interest in and to any common stock or equity security) of the Debtor, and any claims for damages or any other relief arising from any such purchase, sale, or other acquisition of such common stock or other equity security.

1.63    Interim Compensation Order means the Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professional, entered by the Bankruptcy Court on July 15, 2009.

1.64    Lien means, with respect to any interest in property, any mortgage, lien, pledge, charge, security interest, easement or encumbrance of any kind whatsoever affecting such interest in property to secure payment of a debt or performance of an obligation.

1.65    Limited Partner means those entities who were limited partners of SLLP or any other limited partnership agreement of the Debtors.

1.66    New Common Stock means the shares of common stock, par value $0.01 per share, of Reorganized Sea Launch, authorized and issued hereunder to be (i) delivered to New Investor and to the Creditor Trust for the benefit of Holders of certain Claims under the Plan or (ii) authorized for the purposes specified herein.

1.67    New Investment Agreement means that certain Investment Agreement between Energia Overseas and the Debtors and any related documents provided for in such agreement implementing the Exit Financing Commitment Letter all of which are to be Filed not less than five (5) business days prior to the objection and voting deadline on the Plan.

1.68    New Investment Amount means one hundred and forty million dollars ($140 million), to be invested by the New Investor in exchange for the New Investor Equity Amount, less the conversion, if requested by the New Investor, of some or all of the outstanding amounts due to the New Investor under the DIP Facility Agreement (if the New Investor is also the DIP Lender).

1.69    New Investor means Energia Overseas.

1.70    New Investor Equity Amount means eighty-five percent (85%) of the New Common Stock in Reorganized Sea Launch.

1.71    Non-Insider General Unsecured Claim means any General Unsecured Claim, other than an Administrative Expense Claim, a DIP Facility Claim, a Current Trade Vendor Unsecured Claim or a Partner Claim.

1.72    Other Secured Claim means any Secured Claim, other than an Administrative Expense Claim or a DIP Facility Claim.

1.73    Partner Claim means any General Unsecured Claim held by Aker, Boeing, Energia, Yuzhmash or Yuzhnoye.

1.74    Partner Currency Control Claim means any claim, including but not limited to, any eligible account receivable claim, arising from or relating to the export of hardware and/or services to the United States by a Limited Partner to the extent such claim is or was subject to national legislation or regulations restricting currency control issues.

1.75    Pension and Retirement Plans means the Debtors' defined contribution plan, or any similar pension or retirement plan related to the employees of the Debtors.

1.76    Petition Date means June 22, 2009, the date on which the Debtors commenced their Chapter 11 Cases.

1.77    Plan means this Chapter 11 plan of reorganization, including the Exhibits and all supplements, appendices and schedules thereto, either in its present form or as the same may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.78    Plan Documents means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on or about the Effective Date, including, but not limited to, the Articles of Incorporation, the By-Laws, the term sheet for the Exit Financing Credit Agreement, the Reorganized Sea Launch Shareholders Agreement, the Reincorporation Transactions Document, the Current Trade Vendor List, a list of directors and officers of Reorganized Sea Launch and the Reorganized Debtors, the Creditor Trust Agreement, the Exit Financing Commitment Letter, Sea Launch Board Resolution No. 2010-04-1-103 dated April, 2010, and any other documents relevant to the implementation of this Plan. Each of the Plan Documents shall be filed in draft form in the Plan Supplement.

1.79    Plan Supplement means the supplement to this Plan containing the Plan Documents, to be filed with the Bankruptcy Court not later than three (3) Business Days prior to the objection deadline set with respect to the motion to approve the Disclosure Statement, except for the list of directors and officers of Reorganized Sea Launch and the Reorganized Debtors, which shall be filed with the Bankruptcy Court not later than three (3) Business Days prior to the Confirmation Hearing.

1.80    Priority Non-Tax Claim means any Claim against any Debtor other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in Section 507(a) of the Bankruptcy Code.

1.81    Priority Tax Claim means any Claim against any Debtor of a Governmental Unit of the kind entitled to priority in payment as specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.82    Pro Rata means, with respect to a Claim or Interest, that proportion that a Claim or Interest in a particular Class bears to the aggregate amount of all Claims or Interests in such Class (other than any Claims or Interests held by the Debtors) except in cases where Pro Rata is used in reference to multiple Classes in which case, Pro Rata means the proportion that a Claim or Interest in a particular Class bears to the aggregate amount of all Claims in such multiple Classes.

1.83    Reincorporation Transactions Document means the document outlining the transactions to be implemented for purposes of reincorporating Reorganized Sea Launch and certain of the other Affiliate Debtors as Delaware corporations or limited liability companies, in substantially the form to be included in the Plan Supplement.

1.84    Reinstated or Reinstatement means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired, or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default, (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to Section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim (other than the debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable or contractual rights to which such Claim entitles the Holder of such Claim. The Debtors reserve their legal, equitable and contractual rights and defenses to dispute the liability and/or the amount of any Reinstated Claim.

1.85    Released Parties means (i) the Debtors, (ii) the Debtors' present and former Board representatives, (iii) the present and former officers and employees of the Debtors who were serving in such capacity on or after the Petition Date, (iv) the Chief Restructuring Officer of the Debtors and his employer, Buccino & Associates, Inc., (v) Energia, (vi) the New Investor, and (vii) any attorneys, financial advisors, investment bankers, accountants, consultants, or other professionals of the parties described in clauses (i) through (v) hereof; provided, however, that such attorneys and professional advisors shall only include those that provided services related to the Debtors, the Chapter 11 Cases, the Plan, and the transactions contemplated by this Plan.

1.86    Reorganized Debtors means the reorganized Debtors or any successors thereto by merger, consolidation or otherwise, on or after the Effective Date, after giving effect to the restructuring transactions occurring on or before the Effective Date in accordance with this Plan.

- 9 -

1.87    Reorganized Sea Launch means reorganized Sea Launch and reorganized SLLP, collectively, or any successors thereto by merger, consolidation or otherwise, on or after the Effective Date, after giving effect to the restructuring transactions contemplated by the New Investment Agreement occurring on or before the Effective Date in accordance with this Plan.

1.88    Reorganized Sea Launch Shareholders Agreement means that certain shareholders agreement to be entered into (or deemed to be entered into) by Reorganized Sea Launch and the Holders of New Common Stock on the Effective Date, substantially in the substantially in the form filed with the Plan Supplement.

1.89    Schedules means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors pursuant to Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

1.90    Sea Launch means Sea Launch Company, L.L.C., a Delaware limited liability company, and a debtor in possession in these Chapter 11 Cases pending in the Bankruptcy Court.

1.91    Sea Launch Equity Interests means any Interests, other than those held by any Debtor in any other Debtor, of any of the Debtors represented by any issued and outstanding shares of common stock, preferred stock, membership interests, partnership interests, capital stock or other ownership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest or to convert into any such interest.

1.92    Section 1446 Claim means any claim arising under Section 1446 of the Internal Revenue Code or any applicable State law by virtue of any release, settlement, forgiveness or discharge under, in connection with, or by virtue of the pendency of these Chapter 11 Cases or any orders entered by the Bankruptcy Court herein against or in respect of the Debtors or any Released Party, regardless of whether such Section 1446 Claim was contingent, unmatured, disputed, unliquidated, or unasserted as of the Petition Date.

1.93    Secured Claim means, pursuant to Section 506 of the Bankruptcy Code, that portion of a Claim against any Debtor that is reflected in the Schedules or a proof of claim as a Secured Claim which is (a) secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of a Debtor in and to property of the relevant Estate, to the extent of the value of the Holder's interest in such property as of the relevant determination date or (b) Allowed as such pursuant to the terms of this Plan (subject to the occurrence of the Effective Date).   The defined term Secured Claim includes any Claim against any Debtor that is subject to a permissible setoff under Section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.94    SLEIP means the Sea Launch Emergence Incentive Plan, approved by the Bankruptcy Court by orders entered on January 4, 2010 and March 2, 2010.

1.95    SLLP means Sea Launch Limited Partnership, a Cayman Islands exempted limited partnership, and a debtor in possession in these Chapter 11 Cases pending in the Bankruptcy Court.

1.96    SLS DIP Financing Agreement means the Debtor-in-Possession Financing Agreement dated November 11, 2009 between Space Launch Services LLC and the Debtors, as amended and restated as of March 17, 2010, together with all related documents and instruments delivered pursuant to or in connection therewith.

1.97    Subsidiary Interests means, collectively, all of the issued and outstanding shares of stock, membership interests or partnership interests of any of the Debtors, existing prior to the Effective Date, which stock and interests are owned, directly or indirectly, by Sea Launch or SLLP, or by one of the Affiliate Debtors.

1.98    Tax Withholding Advances means any postpetition and pre-Effective Date payments to any Governmental Unit on account of state, federal or foreign tax withholding obligations of any Limited Partner or other person holding an Interest in one of the Debtors.

1.99    Unimpaired means, with respect to a Claim or Interest, that such Claim or Interest is not Impaired within the meaning of Section 1124 of the Bankruptcy Code as a result of being either (a) Reinstated or (b) paid in full and in Cash on or prior to the Effective Date pursuant to the terms of this Plan or any order of the Bankruptcy Court.

1.100   Yuzhmash means PO Yuzhnoye Mashinostroitelny Zavod, a Ukranian organization.

1.101   Yuzhnoye means KB Yuzhnoye, a Ukranian organization.

B.    Rules of Interpretation.  For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document, schedule or exhibit Filed or to be Filed means such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim or Interest includes that entity's successors and assigns; (e) the words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (g) subject to the provisions of any contract, certificates or articles of incorporation, by-laws, instruments, releases, or other agreements or documents entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and Bankruptcy Rules; (h) the rules of construction set forth in Section 102 of the Bankruptcy Code

YCST01:9639150.1                                                              068473.1001

will apply; and (i) in computing any period of time prescribed or allowed by this Plan, the provision of Bankruptcy Rule 9006(a), as then in effect, will apply.

C.  Exhibits and Plan Supplement.  All Exhibits as well as the Plan Supplement, are incorporated into and are a part of this Plan as if set forth in full herein, and, to the extent not annexed hereto, such Exhibits and Plan Supplement shall be timely Filed in accordance with this Plan.  Holders of Claims and Interests may obtain a copy of the Filed Exhibits and Plan Supplement upon written request to the Debtors.  Upon their Filing, the Exhibits and Plan Supplement may be inspected in the office of the clerk of the Bankruptcy Court or its designee during normal business hours.  The documents contained in the Exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

All Claims and Interests, except Administrative Expense Claims, DIP Facility Claims and Priority Tax Claims, are placed in the Classes set forth below.  In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, DIP Facility Claims and Priority Tax Claims, as described below, have not been classified.

This Plan constitutes a single plan of reorganization for all Debtors. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest qualifies within the description of such Class and is in a different Class to the extent that it qualifies within the description of such different Class, but the same portion of a Claim may not be in more than one Class. A Claim or Interest is also placed in a particular Class for all purposes, including voting, confirmation and distribution under this Plan and under Sections 1122 and 1123(a)(1) of the Bankruptcy Code. However, a Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to this Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and such Claim or Interest has not been paid, released or otherwise settled prior to the Effective Date.

2.1  Unclassified Claims.  The following Claims are Unimpaired under this Plan.

(a)  Administrative Expense Claims.

(b)  DIP Facility Claims.

(c)  Priority Tax Claims.

2.2  Classes of Claims.

(a)  *Class 1: Priority Non-Tax Claims*.  Class 1 consists of all Priority Non-Tax Claims against each applicable Debtor.  Claims in Class 1 are Unimpaired.  Holders of Claims in Class 1 will be deemed to accept the Plan and are not entitled to vote to accept or reject the Plan.

- 12 -

(b)     *Class 2:  Other Secured Claims*.  Class 2 consists of all Other Secured Claims against each applicable Debtor.  Claims in Class 2 are Unimpaired. Holders of Claims in Class 2 will be deemed to accept the Plan and are not entitled to vote to accept or reject the Plan.

(c)     *Class 3:  Current Trade Vendor Unsecured Claims*.  Class 3 consists of all Current Trade Vendor Unsecured Claims against any Debtor.  Claims in Class 3 are Impaired.  Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

(d)     *Class 4:  Non-Insider General Unsecured Claims*.  Class 4 consists of all Non-Insider General Unsecured Claims against any Debtor.  Claims in Class 4 are Impaired.  Holders of Claims in Class 4 are entitled to vote to accept or reject the Plan.  Class 4 is a substantively consolidated Class for purposes of distribution, whereby the members of Class 4 shall share in their recovery under and in accordance with Article III of this Plan regardless of the Debtor against which they hold a Claim.

(e)     *Class 5:  Aker and Boeing Claims*.  Class 5 consists of all Partner Claims held by Aker and Boeing against any Debtor.  Claims in Class 5 are Impaired.  Holders of Claims in Class 5 are entitled to vote to accept or reject the Plan.  Class 5 is a substantively consolidated Class for purposes of distribution, whereby the members of Class 5 shall share in their recovery under and in accordance with Article III of this Plan regardless of the Debtor against which they hold a Claim.

(f)     *Class 6:  Energia*.  Class 6 consists of all Partner Claims held by Energia against each applicable Debtor.  Claims in Class 6 are Impaired.  Holders of Claims in Class 6 are entitled to vote to accept or reject the Plan.  Class 6 is a substantively consolidated Class for purposes of distribution, whereby the members of Class 6 shall share in their recovery under and in accordance with Article III of this Plan regardless of the Debtor against which they hold a Claim.

(g)     *Class 7:  Yuzhmash and Yuzhnoye Claims*.  Class 7 consists of all Partner Claims held by Yuzhmash and Yuzhnoye against each applicable Debtor. Claims in Class 7 are Impaired.  Holders of Claims in Class 7 are entitled to vote to accept or reject the Plan.  Class 7 is a substantively consolidated Class for purposes of distribution, whereby the members of Class 7 shall share in their recovery under and in accordance with Article III of this Plan regardless of the Debtor against which they hold a Claim.

2.3     Classes of Interests.

(a)     *Class 8:  Sea Launch Equity Interests*.  Class 8 consists of all Interests directly arising from, under, or relating in any way to, the Sea Launch Equity Interests held by any Holder other than the Debtors, and all Claims

arising out of or relating thereto. Interests in Class 8 are Impaired. As Holders of Interests in Class 8 will not receive or retain any property under the Plan, Holders of Interests in Class 8 will be deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

(b)   *Class 9: Subsidiary Interests*.  Class 9 consists of all Interests directly arising from, under, or relating in any way to, the Subsidiary Interests held by any Holder that is a Debtor, and all Claims arising out of or relating thereto. Interests in Class 9 are Unimpaired. Holders of Interests in Class 9 will be deemed to accept the Plan and are not entitled to vote to accept or reject the Plan.

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS

3.1   Unclassified Claims.

(a)   *Administrative Expense Claims*.  Unless otherwise agreed by the Holder of an Administrative Expense Claim, in full satisfaction, settlement, release, and discharge of and in exchange for each Administrative Expense Claim, each Holder of an Allowed Administrative Expense Claim will receive payment in full and in Cash of any unpaid portion of such Allowed Administrative Expense Claim as follows:

(i)   in the case of professional advisors, subject to the provisions of Sections 328, 330, 331 and 503(b) of the Bankruptcy Code and the Interim Compensation Order, as soon as practicable after final Bankruptcy Court approval thereof,

(ii)   with respect to each other Allowed Administrative Expense Claim, (x) payment in the ordinary course of business as such claims become due; provided, however, that Administrative Expense Claims not yet due or that represent obligations incurred by the Debtors in the ordinary course of business during these Chapter 11 Cases, or assumed by the Debtors during these Chapter 11 Cases, shall be paid or performed when due in the ordinary course of business and in accordance with the terms and conditions of the particular agreements governing such obligations, (y) such other date as may be agreed upon between the Holder of such Administrative Expense Claim and the Debtors, or (z) as provided for in a Final Order.

(b)   *DIP Facility Claims*.  In full satisfaction, settlement, release, and discharge of and in exchange for each DIP Facility Claim, on the Effective Date, all Allowed DIP Facility Claims shall, at the election of the DIP Lender, either (a) be paid in full and in Cash from the proceeds of the Exit

Financing, or (b) be converted into New Common Stock to the extent requested by the DIP Lender in accordance with the DIP Facility Agreement, and, in each case, all commitments under the DIP Facility Agreement shall be canceled. Notwithstanding anything to the contrary herein, the liens and security interests securing the DIP Facility Claims shall continue in full force and effect until such time as the Allowed DIP Facility Claims have been paid in full and in Cash or converted into New Common Stock, after which such liens and security interests shall be deemed canceled.

(c)   *Priority Tax Claims*.

(i)   In full satisfaction, settlement, release, and discharge of and in exchange for each Priority Tax Claim, in the ordinary course of business as such claims become due, each Holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement and release of and in exchange for such Priority Tax Claim, at the election of the Debtors: (i) Cash equal to the amount of such Priority Tax Claim; (ii) such other treatment as to which the Debtors or the Reorganized Debtors and the Holder of such Priority Tax Claims shall have agreed upon in writing; or (iii) such other treatment as will cause such Claims not to be Impaired, including, but not limited to, payment as set forth in Section 1129(a)(9)(C) of the Bankruptcy Code; provided, however, that any Priority Tax Claim not due and owing on the Effective Date will be paid when such Claim becomes due and owing.

(ii)  Section 1446 Claims

To the extent that any Governmental Unit asserts a Section 1446 Claim, such Section 1446 Claim shall be addressed and treated as a Priority Tax Claim and shall be treated as follows:

(a)   pursuant to 11 U.S.C. § 502(c), the aggregate amount of such claims shall not exceed, and shall be estimated for purposes of distribution, voting and all other purposes under the Plan, the amount of $250,000;

(b)   at the option of the Reorganized Debtors, such amount referred to in Section 3.1(c)(ii)(a) of this Plan shall either be held in reserve in the Creditor Trust for and on behalf of such Governmental Unit(s) or shall be paid by the Reorganized Debtors pursuant to the provisions of Section 3.1(c)(i) above, provided, however, that pending the adjudication of the issue of whether such Governmental Unit filed a timely proof of claim under 11 U.S.C. § 502(b)(9), and, in the event the Court determines that no

Section 1446 Claim was timely filed, said liability shall be discharged and forever barred;

(c)    any such Governmental Unit asserting a Section 1446 Claim shall be enjoined from enforcing or making any claim for any penalty, interest or attorney's fees in respect of such withholding liability arising on or before the Effective Date of the Plan; and

(d)    the order on confirmation of the Plan shall enjoin, on a permanent basis, any action on the part of any such Governmental Unit from and against the collection of such Claim other than against the Reorganized Debtors or the successor to the Estate for this purpose, the Creditor Trust, as appropriate. Any such Governmental Unit shall be limited in its rights to seek Bankruptcy Code § 502(j) relief and shall be required to seek such relief in respect of any such Section 1446 Claim estimated under Bankruptcy Code § 502(c) no later than 20 days after the entry of the Confirmation Order.

3.2    <u>Classes of Claims</u>. Unless the Holder of a Claim and the applicable Debtors agree to a different treatment, each Holder of a Claim shall receive as follows:

(a)    *Class 1: Priority Non-Tax Claims*. In full satisfaction, settlement, release, and discharge of and in exchange for each Priority Non-Tax Claim, in the ordinary course of business as such claims become due, or, if due now, on the Effective Date, each Holder of an Allowed Priority Non-Tax Claim shall receive in full satisfaction, settlement and release of and in exchange for such Priority Non-Tax Claim, at the election of the Debtors: (i) Cash equal to the amount of such Priority Non-Tax Claim; (ii) such other treatment as to which the Debtors or the Reorganized Debtors and the Holder of such Priority Tax Claims shall have agreed upon in writing; or (iii) such other treatment as will cause such Claims not to be Impaired; provided, however, that any Priority Non-Tax Claim not due and owing on the Effective Date will be paid when such Claim becomes due and owing.

(b)    *Class 2: Other Secured Claims*. Each Holder of an Other Secured Claim, if any, shall have its Claim Reinstated.

(c)    *Class 3: Current Trade Vendor Unsecured Claims*. On the Effective Date, or as soon as practicable after the Effective Date, in full satisfaction, settlement, release, and discharge of and in exchange for each Current Trade Vendor Unsecured Claim, if any, each Holder of an Allowed Current Trade Vendor Unsecured Claim, if any, shall be paid seventeen and a half percent (17.5%) of such Allowed Current Trade Vendor Unsecured Claim in Cash on the Effective Date from the proceeds of the

Exit Financing or otherwise (to the extent unpaid prior to the Effective Date).

(d) *Class 4: Non-Insider General Unsecured Claims*. Unless the Holders of Allowed Partner Claims and the Committee agree to a different treatment, on the Effective Date, or as soon as practicable after the Effective Date, in full satisfaction, settlement, release, and discharge of and in exchange for all Allowed Non-Insider General Unsecured Claim, if any, each Holder of an Allowed Non-Insider General Unsecured Claim shall receive a Pro Rata share of the Creditor Trust Equity Interests.

(e) *Class 5: Aker and Boeing Claims*. Unless Aker, Boeing and the Committee agree to a different treatment, on the Effective Date, or as soon as practicable after the Effective Date, in full satisfaction, settlement, release, and discharge of and in exchange for all Allowed Partner Claims held by Aker and Boeing, if any, Aker and Boeing shall receive, on account of their respective Allowed Partner Claims, a Pro Rata share of the Creditor Trust Equity Interests.

(f) *Class 6: Energia Claims*. Unless Energia agrees to a different treatment, on the Effective Date, or as soon as practicable after the Effective Date, in full satisfaction, settlement, release, and discharge of and in exchange for each Allowed Partner Currency Control Claim held by Energia, Energia shall receive $28,800,000 in Preferred Shares of Reorganized Sea Launch, and in exchange for all Allowed Partner Claims held by Energia that are not Allowed Partner Currency Control Claims, if any, Energia shall receive, on account of its respective Allowed Partner Claims, a Pro Rata share of the Creditor Trust Equity Interests.

(g) *Class 7: Yuzhmash and Yuzhnoye Claims*. Unless Yuzhmash and Yuzhnoye (with the approval of the New Investor) agree to a different treatment, on the Effective Date, or as soon as practicable after the Effective Date, in full satisfaction, settlement, release, and discharge of and in exchange for each Allowed Partner Claim, excluding Allowed Partner Currency Control Claims, held by Yuzhmash and Yuzhnoye, if any, Yuzhmash and Yuzhnoye shall receive a Pro Rata share of the Creditor Trust Equity Interests; and, to the extent agreed by the New Investor and the Bankruptcy Court approves the modification and assumption of executory contracts to which Yuzhmash and Yuzhnoye are parties along with the assignment of such executory contracts to Energia Logistics, such other consideration to address the Allowed Partner Currency Control Claims held by Holders in Class 7 as may be provided in such assumed and assigned executory contracts.

3.3 Classes of Interests. Unless the Holder of an Interest and the Debtors (with the approval of the Committee) agree to a different treatment, on the Effective Date, or as soon as practicable after the Effective Date, in full satisfaction, settlement, release, and discharge of and

in exchange for each Interest, each Holder of an Interest that is not a Debtor shall receive as follows:

(a) *Class 8: Sea Launch Equity Interests*. Each non-Debtor Holder of a Sea Launch Equity Interest shall have its Sea Launch Equity Interests cancelled, annulled and extinguished on the Effective Date and shall neither receive nor retain any property on account of such Sea Launch Equity Interests.

(b) *Class 9: Subsidiary Interests*. Each holder of an Allowed Class 9 Subsidiary Interest shall retain such Subsidiary Interest, provided, however, that with respect to Class 9 Subsidiary Interests, on or after the Effective Date, the Subsidiary Interests in those Debtors shall be cancelled, with the consent of the holders thereof, if there is a dissolution of those Debtors; if, after the Effective Date, those Debtors are instead merged with other Debtors or other corporate transactions take place under and in accordance with applicable state law to dispose of those Debtors, then the Class 9 Subsidiary Interests shall be disposed of as part of such transactions.

3.4    Special Provision Regarding Unimpaired Claims. Except as otherwise explicitly provided in this Plan, nothing shall affect, diminish or impair the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

3.5    Intercompany Claims and Interests. Notwithstanding anything to the contrary contained in this Plan, Intercompany Claims held by one Debtor against another Debtor and Subsidiary Interests shall be Unimpaired and shall remain in full force and effect on and after the Effective Date.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

4.1    Acceptance by an Impaired Class. In accordance with Section 1126(c) of the Bankruptcy Code and except as provided in Section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted this Plan if this Plan is accepted by the Holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Claims of such Class that have timely and properly voted to accept or reject this Plan.

4.2    Presumed Acceptances by Unimpaired Classes. Classes 1, 2 and 9 are Unimpaired by this Plan. Under Section 1126(f) of the Bankruptcy Code, Holders of such Claims are conclusively presumed to accept this Plan, and thus the votes of the Holders of such Claims will not be solicited.

YCST01:9639150.1                                      068473.1001

4.3    Presumed Rejections by Impaired Classes.  Class 8 is Impaired by this Plan and will not receive or retain any property under the Plan.  Under Section 1126(f) of the Bankruptcy Code, Holders of such Interests are conclusively presumed to reject this Plan, and thus the votes of the Holders of such Interests will not be solicited.

4.4    Summary of Classes Voting on this Plan.  As a result of the provisions of Sections 3.1, 3.2 and 3.3 of this Plan, only the votes of Holders of Claims in Classes 3, 4, 5, 6 and 7 will be solicited with respect to this Plan.

4.5    Non-Consensual Confirmation.  If any Impaired Class fails to accept this Plan by the requisite statutory majorities, the Debtors reserve the right (i) to confirm this Plan by a "cram-down" of such non-accepting Class pursuant to Section 1129(b) of the Bankruptcy Code and (ii) to propose any modifications to this Plan and to confirm this Plan as modified, without re-solicitation, to the extent permitted by the Bankruptcy Code.

## ARTICLE V

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1    Non-Substantive Consolidation.  Except as provided in Sections 2.2(d), (e), (f) and (g), and 3.2(d), (e), (f) and (g), the Plan is a joint plan that does not provide for substantive consolidation of the Debtors' Estates, and, on the Effective Date, the Debtors' Estates shall not be deemed to be substantively consolidated for purposes hereof.  Except as specifically set forth herein, nothing in this Plan or the Disclosure Statement shall constitute or be deemed to constitute an admission that any one of the Debtors is subject to or liable for any claim against any other Debtor.

5.2    Reorganized Sea Launch Securities.

(a)    Issuance of New Common Stock.  On the Effective Date, Reorganized Sea Launch shall issue an aggregate of one million (1,000,000) shares of New Common Stock.   The Existing Creditor Equity Amount shall be distributed to the Creditor Trust, and, unless agreed otherwise, each Holder of an Allowed Claim in Classes 4, 5, 6 and 7 will receive, in consideration of the satisfaction of such Claim, its Pro Rata share of the Creditor Trust Equity Interests.  The New Investor, in consideration of the New Investment Amount, shall receive the Investor Equity Amount of the New Common Stock.  The New Common Stock shall not be registered under the Securities Act of 1933, as amended, and shall not be listed for public trading on any securities exchange.  Distribution of such New Common Stock shall be made by delivery of one or more certificates representing such shares as described herein or made by means of book-entry exchange through the facilities of DTC in accordance with the customary practices of DTC, as and to the extent practicable, as provided in Section 6.5 herein.  The Articles of Incorporation will set forth the rights and preferences under the New Common Stock.  On the Effective Date, except as otherwise provided for herein, all Sea Launch Equity

YCST01:9639150.1                                                                      068473.1001

Interests shall be cancelled, and the obligations of the Debtors under any stockholder agreements, registration rights agreements, repurchase agreements and repurchase arrangements, or other instruments or documents evidencing or creating any obligations of the Debtor with respect to such Sea Launch Equity Interests, shall be rejected and discharged; provided, however, that notwithstanding the foregoing, such rejection and discharge of the Debtors' obligations pursuant to this subsection shall not affect or impair the existence, validity and enforceability of any such stockholders agreement, registration rights agreement, repurchase agreement and repurchase arrangement, or other such instrument or document, or any rights, claims, or defenses thereunder, with respect to and among non-Debtor entities. As of the Effective Date, all Sea Launch Equity Interests that have been authorized to be issued but that have not been issued shall be deemed cancelled and extinguished without any further action of any party.

(b)     <u>Reorganized Sea Launch Shareholders Agreement</u>. On the Effective Date, Reorganized Sea Launch and the Creditor Trust shall enter into (or be deemed to enter into as provided below) the Reorganized Sea Launch Shareholders Agreement. The Reorganized Sea Launch Shareholders Agreement shall be binding on all parties regardless of whether such parties execute the Reorganized Sea Launch Shareholders Agreement. Registration rights, if any, including any registration rights agreement, "tag along" or "bring along" agreements, will be included in the Plan Supplement and shall be in form and substance acceptable to the Committee.

5.3     <u>Continued Corporate Existence and Vesting of Assets in the Reorganized Debtors</u>. On the Effective Date, to the extent required by the New Investment Agreement, the Reorganized Debtors shall continue to exist as separate corporate entities or partnerships in accordance with the applicable law in the respective jurisdictions in which they are incorporated or organized and pursuant to their respective certificates, articles of incorporation and by-laws or partnership agreements in effect prior to the Effective Date, except to the extent such certificates, articles of incorporation and by-laws or partnership agreements are to be amended or extinguished pursuant to the terms of this Plan and the New Investment Agreement. Notwithstanding anything to the contrary in this Plan, the Reinstated Claims against a particular Debtor or Reorganized Debtor shall remain the obligations solely of such Debtor or Reorganized Debtor following the Effective Date and shall not become obligations of any other Debtor or Reorganized Debtor by virtue of this Plan, the Chapter 11 Cases, or otherwise. Except as otherwise provided in this Plan, on and after the Effective Date, all property of the Estates of the Debtors, including all Causes of Action (other than the Creditor Trust Actions) and any property acquired by the Debtors or the Reorganized Debtors under or in connection with this Plan, shall vest in the Reorganized Debtors free and clear of all Claims, liens, charges, other encumbrances and Interests. On and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property and compromise or settle any Claims without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by

this Plan or the Confirmation Order. Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Effective Date for professionals' fees, disbursements, expenses or related support services without application to the Bankruptcy Court.

5.4 <u>Corporate Governance, Directors, Officers and Corporate Action.</u>

(a) <u>Certificates or Articles of Incorporation and By-Laws.</u> On the Effective Date, the revised Articles of Incorporation and By-Laws of Reorganized Sea Launch, as included in the Plan Supplement, shall go into effect and shall (i) include, among other things, pursuant to Section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by Section 1123(a)(6) of the Bankruptcy Code; and (ii) authorize the issuance of the New Common Stock. On or prior to the Effective Date, Sea Launch shall make such filings in the State of Delaware and such other jurisdictions as shall be necessary or desirable to provide for the effectiveness on the Effective Date of the revised Articles of Incorporation and By-Laws. In addition, on or about the Effective Date, the certificates, articles of incorporation and by-laws or partnership agreements of the Affiliate Debtors shall be amended as necessary to satisfy the provisions of this Plan and the Bankruptcy Code. After the Effective Date, the Reorganized Debtors may amend and restate their certificates, articles of incorporation and by-laws or partnership agreements as permitted by applicable law.

(b) <u>Directors and Officers of the Reorganized Debtors.</u> Subject to any requirement of Bankruptcy Court approval pursuant to Section 1129(a)(5) of the Bankruptcy Code, on the Effective Date, the existing initial directors shall be designated by the New Investor and the Holders of the Allowed Claims in Classes 4, 5, 6 and 7 to be disclosed in the Plan Supplement. Each such director and officer shall serve from and after the Effective Date pursuant to the terms of the Articles of Incorporation, the other constituent documents of the Reorganized Debtors, and applicable law. Thereafter, the Articles of Incorporation, By-Laws, and Reorganized Sea Launch Shareholders Agreement shall govern the designation of directors. In addition, the boards of directors of the other Reorganized Debtors shall be comprised of members of the board of directors of Reorganized Sea Launch, or such other persons as are designated by the board of directors of Reorganized Sea Launch. Pursuant to Section 1129(a)(5), the Debtors will disclose, as part of the Plan Supplement, but which shall be filed within three (3) Business Days of the Confirmation Hearing, the identity and affiliations of any person proposed to serve on the initial board of directors of Reorganized Sea Launch, and to the extent such person is an insider other than by virtue of being a director, the nature of any compensation for such person. Each member of the current board of directors of each of the Debtors will be deemed to have resigned on the Effective Date.

- 21 -

(c)    <u>Corporate Action</u>. On the Effective Date, the adoption of the revised Articles of Incorporation or similar constituent documents, the adoption of the revised By-Laws, the selection of directors and officers for Reorganized Sea Launch and the other Reorganized Debtors, and all other actions contemplated by this Plan and the New Investment Agreement, including all actions required to be taken by the board of directors of the Debtors or the Reorganized Debtors (or their partners) shall be authorized and approved in all respects, or shall have otherwise occurred (subject to the provisions of this Plan). All matters provided for in this Plan and the New Investment Agreement involving the corporate or partnership structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with this Plan, shall be deemed to have timely occurred in accordance with applicable law and shall be in effect, without any requirement of further action by the security holders or directors of the Debtors or the Reorganized Debtors. On the Effective Date, the appropriate officers of Reorganized Sea Launch and/or the other Reorganized Debtors and members of the boards of directors of Reorganized Sea Launch and/or the other Reorganized Debtors are authorized and directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by this Plan and the New Investment Agreement in the name of and on behalf of Reorganized Sea Launch and/or the other Reorganized Debtors.

5.5    <u>Cancellation of Liens</u>. Except as otherwise provided herein, on the Effective Date, any Lien securing any Secured Claim (other than a Lien securing a Secured Claim that is Reinstated pursuant to Section 3.2) hereof shall be deemed released and the Holder of such Secured Claim shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral) held by such Holder and to take such actions as may be requested by the Debtors (or the Reorganized Debtors, as the case may be) to evidence the release of such Lien, including the execution, delivery, and filing or recording of such releases as may be requested by the Debtors (or the Reorganized Debtors, as the case may be).

5.6    <u>Exit Financing</u>. On the Effective Date, without any requirement of further action by security holders or directors of the Debtors or the Reorganized Debtors, the Reorganized Debtors shall be authorized and directed to enter into the Exit Financing Credit Agreement, as well as any notes, documents or agreements in connection therewith, including, without limitation, any documents required in connection with the creation or perfection of Liens securing the obligations under the Exit Financing.

5.7    <u>SLEIP</u>. Following the Effective Date, Reorganized Sea Launch and, if necessary, the Creditor Trust, will be deemed to have adopted all obligations owing under the SLEIP, and shall perform such obligations when and as due.

5.8    Creditor Trust.

   (a)    Formation and Funding.  On the Effective Date, the Reorganized Debtors
          shall (i) take all steps necessary or appropriate to form, create and
          establish the Creditor Trust and (ii) transfer, deliver, and assign to the
          Creditor Trust the Creditor Trust Assets.  Also on the Effective Date, the
          Reorganized Debtors shall cause the transfer of all cash identified in the
          New Investment Agreement as a Creditor Trust Asset to the Creditor
          Trust.  Immediately upon its formation, the Creditor Trust shall issue the
          Creditor Trust Equity Interests as provided in this Plan.

   (b)    Purposes and Powers of the Creditor Trust.  The Creditor Trust will be
          organized for the purposes of holding the Existing Claim Equity Amount
          for the benefit of the Holders of the Creditor Trust Equity Interest and
          liquidating the Creditor Trust Actions with no objective or authority to
          continue or engage in the conduct of a trade or business.  In particular, the
          Creditor Trust shall:  (i) collect and reduce the Creditor Trust Actions to
          cash; (ii) make distributions to holders of the Creditor Trust Equity
          Interests; and (iii) take such steps as are reasonably necessary to
          accomplish such purposes, all as more fully provided in, and subject to the
          terms and provisions of, the Creditor Trust Agreement.   The Creditor
          Trust shall be a party to the Shareholder Agreement required by the New
          Investment Agreement and the Exit Financing Commitment Letter.

   (c)    Management of the Creditor Trust.  Pursuant and subject to the Creditor
          Trust Agreement, the affairs of the Creditor Trust shall be managed by a
          single Creditor Trust Manager who shall be designated as provided in the
          Creditor Trust Agreement.  The Creditor Trust Manager shall be subject to
          removal and replacement as and to the extent provided in the Creditor
          Trust Agreement.  Pursuant to the Creditor Trust Agreement, decisions
          regarding the administration of the Creditor Trust and the prosecution and
          settlement of the Creditor Trust Actions exclusively shall be made by the
          Creditor Trust Manager.

   (d)    Hiring of Employees and Retention of Professionals.  As provided in the
          Creditor Trust Agreement, the Creditor Trust Manager shall be authorized
          to hire employees and retain and engage such professionals as may be
          necessary to carry out the purposes and powers of the Creditor Trust.

   (e)    Transfers of Creditor Trust Equity Interests.  Transfers of the Creditor
          Trust Equity Interests (including any restrictions or prohibitions of the
          same) shall be governed by the Creditor Trust Agreement.

   (f)    Proceeds of Creditor Trust Actions.   Proceeds received through the
          prosecution and/or settlement of the Creditor Trust Actions, net of
          professional fees, costs and expenses incurred by the Creditor Trust, shall

YCST01:9639150.1                                                              068473.1001

be distributed to the holders of Creditor Trust Equity Interests, as and to the extent provided in the Creditor Trust Agreement.

(g)     <u>Dissolution</u>. Pursuant to the Creditor Trust Agreement, the Creditor Trust shall dissolve after all existing Creditor Trust Actions have been resolved and all proceeds therefrom have been distributed, and after monetization of the Existing Claim Equity Amount, unless otherwise agreed by the holders of a majority of the Creditor Trust Equity Interests.

5.9     <u>Additional Transactions Authorized Under this Plan</u>. On or prior to the Effective Date, the Debtors shall be authorized to take any such actions as may be necessary or appropriate to Reinstate Claims or render Claims not Impaired, as provided for under this Plan.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

6.1     <u>Distributions for Classes 3, 4, 5, 6 and 7 Claims</u>. Unless the Holder of a Class 3, 4, 5, 6 or 7 Claim agrees to a different distribution date or except as otherwise provided herein or as ordered by the Bankruptcy Court, distributions to be made on account of Claims in Classes 3, 4, 5, 6 and 7 shall be made on the Initial Distribution Date and shall continue thereafter on such subsequent distribution dates as the Distribution Agent determines to be appropriate in its discretion. Notwithstanding the date on which any distribution of Creditor Trust Equity Interests is actually made to a Holder of a Claim in Class 4, 5, 6 and 7 as of the date of the distribution such Holder shall be deemed to have the rights of a holder of such securities distributed as of the Effective Date. Any payment or distribution required to be made under this Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

6.2     <u>Interest on Claims</u>. Except as otherwise specifically provided for in this Plan, the Confirmation Order or other order of the Bankruptcy Court (including, without limitation, the Final DIP Order), or required by applicable bankruptcy or non-bankruptcy law, post-petition interest shall not accrue or be paid on any Claims (other than Secured Claims), and no Holder of a Claim (other than the Holder of a Secured Claim) shall be entitled to interest accruing on or after the Petition Date on any Claim.

6.3     <u>Distributions by Disbursing Agent</u>. Other than as specifically set forth in this Plan, the Disbursing Agent shall make all distributions required to be made under this Plan. Reorganized Sea Launch and/or the other Reorganized Debtors may act as Disbursing Agent or may employ or contract with other entities to assist in or make the distributions required by this Plan.

6.4     <u>Delivery of Distributions and Undeliverable or Unclaimed Distributions</u>. The following terms shall govern the delivery of distributions and undeliverable or unclaimed distributions with respect to Claims.

(a)     *<u>Delivery of Distributions in General</u>*. Subject to Bankruptcy Rule 9010, all distributions to Holders of Claims in Classes 3, 4, 5 and 7 shall be

made at the addresses set forth in the Debtors' books and records unless such addresses are superseded by proofs of claim or transfers of claim filed pursuant to Bankruptcy Rule 3001.

(b) *Undeliverable and Unclaimed Distributions*.

(i) Holding and Investment of Undeliverable and Unclaimed Distributions. If the distribution to any Holder of a Claim in Class 3, 4, 5, 6 or 7 is returned to Reorganized Sea Launch, the other Reorganized Debtors or the Disbursing Agent as undeliverable or is otherwise unclaimed, no further distributions shall be made to such Holder unless and until the Reorganized Debtors or the Disbursing Agent is notified in writing of such Holder's then current address.

(ii) Failure to Claim Undeliverable Distributions. Any Holder of a Claim in Class 3, 4, 5, 6 or 7 that does not assert a claim pursuant to this Plan for an undeliverable or unclaimed distribution within one (1) year after the Effective Date shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed distribution against the Debtors or their Estates or the Reorganized Debtors or their property. In such cases, any Cash for distribution on account of such claims for undeliverable or unclaimed distributions shall become the property of the Reorganized Debtors free of any restrictions thereon and notwithstanding any federal or state escheat laws to the contrary. Any Creditor Trust Equity Interests held for distribution on account of such Claim shall be canceled and of no further force or effect. Nothing contained in this Plan shall require any Disbursing Agent, including, but not limited to, the Reorganized Debtors, to attempt to locate any Holder of an Allowed Claim.

6.5 Record Date for Distributions. The record date for distributions under this Plan shall be the Distribution Record Date.

(a) The Reorganized Debtors and the Disbursing Agent will have no obligation to recognize the transfer of, or the sale of any participation in, any Claim in Class 3, 4, 5, 6 or 7 that occurs after the close of business on the Distribution Record Date, and will be entitled for all purposes herein to recognize and distribute only to those Holders of Claims in Classes 3, 4, 5, 6 and 7 that are Holders of such Claims, or participants therein, as of the close of business on the Distribution Record Date. The Reorganized Debtors and the Disbursing Agent shall be entitled to recognize and deal for all purposes under this Plan with only those record holders stated on

the official claims register as of the close of business on the Distribution Record Date.

(b)     Distributions of Creditor Trust Equity Interests to Holders of Claims in Classes 4, 5, 6 and 7 may in the discretion of the Disbursing Agent be made by means of book-entry exchange through the facilities of DTC in accordance with the customary practices of DTC, as and to the extent practicable.

6.6     <u>Allocation of Plan Distributions Between Principal and Interest</u>. Except as otherwise expressly provided in this Plan, to the extent that any Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for all income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent that the consideration exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

6.7     <u>Means of Cash Payment</u>. Payments of Cash made pursuant to this Plan shall be in U.S. dollars and shall be made, at the option and in the sole discretion of Reorganized Sea Launch or the other Reorganized Debtors, by (a) checks drawn on or (b) wire transfer from a bank selected by Reorganized Sea Launch or the other Reorganized Debtors. Cash payments to foreign creditors may be made, at the option of Reorganized Sea Launch or the other Reorganized Debtors, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

6.8     <u>Sources of Cash for Plan Distributions</u>. Except as otherwise provided in this Plan or the Confirmation Order, all Cash necessary for the Reorganized Debtors to make payments pursuant to this Plan may be obtained from existing Cash balances, revenue generated from the operations of the Debtors and the Reorganized Debtors, from the New Investment Amount or from the proceeds of the Exit Financing. The Reorganized Debtors may also make such payments using Cash received from their subsidiaries through the Reorganized Debtors' consolidated cash management systems.

6.9     <u>Withholding and Reporting Requirements</u>. In connection with this Plan and all distributions thereunder, Reorganized Sea Launch and the other Reorganized Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Reorganized Debtors shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements. All persons holding Claims shall be required to provide any information necessary to effect information reporting and the withholding of such taxes. Notwithstanding any other provision of this Plan, (a) each Holder of a Claim in Class 3, 4, 5, 6 or 7 that is to receive a distribution on or after the Effective Date pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such distribution and (b) no distribution of any Cash or securities shall be made to or on behalf of such Holder pursuant to this Plan unless and until (i) such Holder has made arrangements satisfactory to the Reorganized Debtors for the payment and satisfaction of such tax obligations, and/or (ii)

- 26 -

the Holder has made satisfactory arrangements for reimbursement of any Tax Withholding Advance.

6.10 <u>Setoffs</u>. Reorganized Sea Launch and the Reorganized Debtors may, pursuant to Section 553 of the Bankruptcy Code or applicable nonbankruptcy laws, but shall not be required to, set off against any Claim, the payments or other distributions to be made pursuant to this Plan in respect of such Claim, or claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the Holder of such Claim; provided, however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claim that the Debtors or the Reorganized Debtors may have against such Holder.

6.11 <u>Fractional Shares</u>. No fractional shares of New Common Stock shall be distributed. When a fractional share would otherwise be called for, the actual issuance shall reflect a rounding up (in the case of more than .50) of such fraction to the nearest whole share of New Common Stock or a rounding down of such fraction (in the case of .50 or less than .50) to the nearest whole share of New Common Stock. The total number of shares of New Common Stock to be distributed pursuant to the Plan shall be adjusted as necessary to account for the rounding provided for herein.

6.12 <u>Exemption from Securities Law</u>. The issuance of the New Common Stock pursuant to the terms of this Plan shall be exempt from any federal and state securities laws registration requirements to the fullest extent permitted by Section 1145 of the Bankruptcy Code.

## ARTICLE VII

## TREATMENT OF EXECUTORY CONTRACTS, UNEXPIRED LEASES AND PENSION AND RETIREMENT PLANS

7.1 <u>Assumption of Executory Contracts and Unexpired Leases</u>. On the Effective Date, all executory contracts or unexpired leases of the Debtors will be deemed assumed in accordance with, and subject to, the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code and, to the extent provided in the New Investment Agreement, assigned to Energia Logistics, unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors pursuant to an order entered by the Bankruptcy Court, (ii) previously expired or terminated pursuant to its own terms, or (iii) is the subject of a pending motion to assume or reject. Entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumptions pursuant to Sections 365(a) and 1123 of the Bankruptcy Code. Each executory contract and unexpired lease assumed pursuant to this Article VII shall revest in and be fully enforceable by the respective Reorganized Debtor in accordance with its terms, except as modified by the provisions of this Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable federal law.

7.2 <u>Cure of Defaults of Assumed Executory Contracts and Unexpired Leases</u>. Any monetary amounts by which each executory contract and unexpired lease to be assumed is in default shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such other terms as the parties to each

- 27 -

such executory contract or unexpired lease may otherwise agree, consistent with the terms of the New Investment Agreement. In the event of a dispute regarding (a) the amount of any cure payments, (b) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (c) any other matter pertaining to assumption, the cure payments required by Section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption. Pending the Bankruptcy Court's ruling on such motion, the executory contract or unexpired lease at issue shall be deemed assumed by the Debtors unless otherwise ordered by the Bankruptcy Court.

7.3  <u>Post-Petition Contracts and Leases</u>.  All contracts, agreements and leases that were entered into by the Debtors or assumed by the Debtors after the Petition Date shall be deemed assigned by the Debtors to the Reorganized Debtors or to an affiliate of the New Investor in accordance with the terms of the New Investment Agreement on the Effective Date.

7.4  <u>Retiree Benefits, and Pension and Retirement Plans</u>.  In furtherance of, and without in any way limiting Section 7.5 of the Plan, from and after the Effective Date, the Debtors shall assume the obligation and shall continue to make the payment of all retiree benefits (if any), as that term is defined in Section 1114 of the Bankruptcy Code, at the level established pursuant to Section 1114(e)(1)(B) or (g), at any time prior to the Confirmation Date, for the duration of the period (if any) that the Debtors are obligated to provide such benefits. Notwithstanding anything in this Plan to the contrary, the Pension and Retirement Plans shall become obligations of the Reorganized Debtors and shall otherwise be unaffected by confirmation of this Plan, and any Claims arising under the Pension and Retirement Plans shall not be discharged or released or otherwise affected by this Plan or by these proceedings.

7.5  <u>Compensation and Benefit Programs</u>.  Except as otherwise expressly provided in Article VII or any other provisions of this Plan including the New Investment Agreement (and except as may otherwise be agreed between an employee and the Board of Directors of the Reorganized Debtors), the Reorganized Debtors shall continue to perform their obligations under all compensation and benefit plans, policies and programs of the Debtors applicable to their current and former employees (but excluding any employment or severance contracts). Except as expressly set forth in the New Investment Agreement, nothing herein shall restrict the rights of the board of directors of the Reorganized Debtors to change or modify any such policy, plan or program in accordance with its terms, except as set forth in the SLEIP.

## ARTICLE VIII

## PROVISIONS FOR RESOLVING DISPUTED CLAIMS AND DISPUTED INTERESTS

8.1  <u>Objections to and Estimation of Claims</u>.  Except as set forth in Section 8.2 of the Plan, only the Debtors or the Reorganized Debtors may object to the allowance of any Claim, including, without limitation, any Administrative Expense Claim. After the Effective Date, the Reorganized Debtors shall be accorded the power and authority to allow or settle and compromise any Claim without notice to any other party, or approval of, or notice to the Bankruptcy Court. In addition, the Debtors or the Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to

Section 502(c) of the Bankruptcy Code regardless of whether the Debtors or Reorganized Debtors have previously objected to such Claim.

8.2     Objections to Claims in Classes 5 and 7.  Only the Creditor Trust may object to the allowance of any Claim in Classes 5 and 7.  After the Effective Date, the Creditor Trust shall be accorded the power and authority to allow or settle and compromise any Claim in Classes 5 and 7 without notice to any other party, or approval of, or notice to the Bankruptcy Court.

8.3     No Distributions Pending Allowance.  Notwithstanding any other provision in this Plan, no payments or distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

8.4     Distributions on Account of Disputed Claims Once They Are Allowed.  To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the distribution (if any) to which such Holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim.

8.5     Reinstated Claims.  Notwithstanding anything contained herein to the contrary, nothing shall affect, diminish or impair the Debtors' or the Reorganized Debtors' rights and defenses, both legal and equitable, with respect to any Reinstated Claim, including, but not limited to, legal and equitable defenses to setoffs or recoupments against Reinstated Claims.

## ARTICLE IX
## CONFIRMATION AND CONSUMMATION OF THE PLAN

9.1     Conditions to Confirmation.  The Plan shall not be confirmed unless and until the following conditions shall have been satisfied or waived in accordance with Section 9.3 of this Plan:

(a)     The most current version of the Plan Supplement and the Plan Documents shall have been Filed.

(b)     The board of directors shall have adopted such resolutions and taken any other actions necessary so that the Plan and the transactions contemplated hereunder may be consummated.

(c)     The Bankruptcy Court shall have estimated the total amount of all Section 1446 Claims at no more than $250,000.

(d)     That the form of the Confirmation Order to be entered by the Bankruptcy Court, which shall include an express finding of good faith on the part of the Debtors and the New Investor, shall be acceptable to the New Investor in form and substance.

YCST01:9639150.1                                    068473.1001

9.2    Conditions to Effective Date.   The Plan shall not become effective and the Effective Date shall not occur unless and until the following conditions shall have been satisfied or waived in accordance with Section 9.3 of this Plan:

(a)    The Confirmation Order confirming this Plan shall have been entered by the Bankruptcy Court and shall not have been stayed.

(b)    The final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein (including the Plan Documents) shall have been Filed without prejudice to the Reorganized Debtors' rights under the Plan to alter, amend, or modify certain of the schedules, documents, and exhibits contained in the Plan Supplement in accordance with the terms hereof.

(c)    All other documents and agreements necessary to implement this Plan on the Effective Date, including, but not limited to the Plan Supplement and the Plan Documents, shall have been duly and validly executed and delivered by all parties thereto

(d)    All other actions, documents, and agreements determined by the Debtors to be necessary to implement the Plan shall have been effected or executed.

(e)    The Exit Financing Credit Agreement and the New Investment Agreement and all related documents provided for therein or contemplated thereby shall have been duly and validly executed and delivered by all parties thereto, all conditions precedent thereto shall have occurred or shall have been satisfied or waived in the manner provided therein.

(f)    The entire proceeds of the New Investment Amount shall be made available to the Reorganized Debtors to fund distributions under the Plan.

(g)    All of the Conditions Preceding the Effective Date set forth in the Exit Financing Commitment Letter shall have occurred or have been waived by the New Investor.

(h)    All DIP Facility Claims shall have been paid in full and in Cash or converted to New Common Stock at the election of the DIP Lender, or the Debtors shall have provided reasonably satisfactory evidence that such Claims shall be paid from the proceeds of the Exit Financing.

(i)    Prior to or at the Hearing on the Disclosure Statement, the Bankruptcy Court shall have entered an order that the "Right to Match" provision of, SLS DIP Financing Agreement has been fully offered by the Debtors and shall be of no further force and effect, and such order shall not have been stayed.

YCST01:9639150.1                                                      068473.1001

(j)    All corporate actions required to be taken by Article VII of this Plan shall have been taken.

(k)    Any material alteration to, or interpretation of, any term or provision of this Plan by the Bankruptcy Court shall have been acceptable to the Debtors and the New Investor.

(l)    The Articles of Incorporation and By-Laws and the amended certificates, articles of incorporation or partnership agreements of the Debtors, as necessary, shall have been adopted and filed with the applicable authorities of the relevant jurisdictions of incorporation or organization and shall have become effective in accordance with the corporate laws of such jurisdictions.

(m)    All authorizations, consents, certifications, approvals, rulings, no-action letters, opinions or other documents or actions required by any law, regulation or order to be received or to occur in order to implement this Plan on the Effective Date shall have been obtained or shall have occurred unless failure to do so will not have a material adverse effect on Reorganized Sea Launch.

(n)    All conditions set forth in the New Investment Agreement shall have been satisfied or waived in the manner provided therein.

(o)    All conditions to Confirmation have been satisfied and remain true, unless expressly waived by the Debtors and the New Investor.

9.3    <u>Waiver of Conditions</u>.  Except to the extent that the consent of the New Investor may be required, each of the conditions set forth in Section 9.1 and 9.2 of this Plan, with the exception of those conditions set forth in subsection (j), may be waived in whole or in part by the Debtors, without any notice to the Bankruptcy Court or parties in interest and without the need for a hearing.

9.4    <u>Effect of Non-Occurrence of Conditions to Effective Date</u>.  If each of the conditions specified in Section 9.1 and Section 9.2 has not been satisfied or waived in the manner provided in Section 9.3, then upon motion to the Bankruptcy Court and entry of an appropriate Order: (i) the Confirmation Order shall be vacated and of no further force or effect; (ii) no distributions under the Plan shall be made; (iii) the Debtors and all Holders of Claims and Interests in the Debtors shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred; and (iv) all of the Debtors' obligations with respect to the Claims and Interests shall remain unaffected by the Plan and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors, and the Plan shall be deemed withdrawn.  Upon such occurrence, the Debtors shall file a written notification with the Bankruptcy Court and serve it upon such parties as the Bankruptcy Court may direct.

# ARTICLE X

# EFFECT OF PLAN CONFIRMATION

10.1 <u>Binding Effect</u>. Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any Holder of a Claim against, or Interest in, the Debtors and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under this Plan and whether or not such Holder has accepted this Plan.

10.2 <u>Exculpation and Releases</u>.

(a) <u>Exculpation</u>. From and after the Effective Date, the Released Parties shall neither have nor incur any liability to, or be subject to any right of action by, any Holder of a Claim or Interest, or any other party in interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, formulating, negotiating or implementing this Plan, the solicitation of acceptances of this Plan, the pursuit of approval of the Disclosure Statement and confirmation of this Plan, the confirmation of this Plan, the Plan Documents, the consummation of this Plan or the administration of this Plan or the property to be distributed under this Plan, or the restructuring transactions contemplated hereunder; provided, however, that the foregoing provision shall not apply to an act or omission that is determined by a Final Order of the Bankruptcy Court to have constituted willful misconduct or gross negligence. Any of the Released Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under the Plan.

(b) <u>Releases by the Debtors</u>. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors and Reorganized Debtors in their individual capacities and as debtors-in-possession on behalf of each of the Debtors' Estates will be deemed to release and forever waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise against the Released Parties, that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors, the Chapter 11 Cases, this Plan or the Disclosure Statement, or any document or agreement related thereto; provided, however, that the foregoing provision shall not apply to an act or omission that is determined by a Final Order of the

Bankruptcy Court to have constituted willful misconduct or gross negligence.

(c) <u>Releases by Holders of Claims and Interests</u>. As of the Effective Date, to the fullest extent permitted by law, each Holder of a Claim or Interest that does not otherwise elect in accordance with voting on this Plan, shall in consideration for the obligations of the Debtors and the Reorganized Debtors under this Plan and the Cash, the securities, including the Call Option under the Exit Financing Commitment Letter and New Investment Agreement, contracts, instruments, releases and other agreements or documents to be delivered in connection with this Plan, be deemed to have forever released, waived and discharged all claims, demands, debts, rights, causes of action or liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, relating to the Debtors, the Reorganized Debtors, the Chapter 11 Cases, this Plan or the Disclosure Statement, the Plan Documents, or the restructuring transactions contemplated thereby, existing as of the Effective Date or thereafter that are based in whole or part on any act, omission, transaction event, or other occurrence taking place on or prior to the Effective Date, against the Released Parties. Any Holder of a Claim or Interest who does not elect to offer the Releases described in this paragraph shall not be entitled to any direct or indirect benefits from the Call Option under the Exit Financing Commitment Letter and New Investment Agreement.

(d) <u>Injunction Related to Exculpation and Releases</u>. All Persons that have held, hold or may hold any liabilities released or exculpated pursuant to this Section 10.2 will be permanently enjoined from taking any of the following actions against any Released Party or its property on account of such released liabilities: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien; (iv) except as provided herein, asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due a Released Party; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.

(e) <u>Survival of Indemnification Obligations</u>. The obligations of the Debtors to indemnify any past and present directors, officers, agents, employees and representatives, pursuant to certificates or articles of incorporation, by-laws, contracts and/or applicable statutes, in respect of all actions, suits and proceedings against any of such officers, directors, agents, employees and representatives, based upon any act or omission related to service with

or for or on behalf of the Debtors, shall not be discharged or Impaired by, and shall survive, confirmation or consummation of this Plan and shall be assumed by the other Reorganized Debtors.

(f)    <u>Discharge of Claims and Termination of Interests</u>.  Except as otherwise provided herein or in the Confirmation Order, all consideration distributed under this Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and Interests (other than Unimpaired Claims under this Plan) of any nature whatsoever against the Debtors or any of their Estates, assets, properties or interest in property, and regardless of whether any property shall have been distributed or retained pursuant to this Plan on account of such Claims and Interests. Upon the Effective Date, the Debtors shall be deemed discharged and released under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims and Interests (other than Unimpaired Claims), including, but not limited to, demands and liabilities that arose before the Effective Date, and all debts of the kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, and the Sea Launch Equity Interests.

(g)    <u>Preservation of Rights of Action and Settlement of Causes of Action</u>. Except as otherwise provided in this Plan, the Confirmation Order, or in any document, instrument, release or other agreement entered into in connection with this Plan, in accordance with Section 1123(b) of the Bankruptcy Code, the Debtors and their Estates shall retain the Causes of Action.  The Reorganized Debtors, as the successors in interest to the Debtors and the Estates, may enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all of the Causes of Action.

10.3    <u>Injunction</u>.

(a)    Except as otherwise provided in this Plan or the Confirmation Order, from and after the Effective Date all Persons who have held, hold or may hold Claims (other than Unimpaired Claims under this Plan) against or Interests in the Debtors, are (i) permanently enjoined from taking any of the following actions against the Estate(s), or any of their property, on account of any such Claims or Interests and (ii) permanently enjoined from taking any of the following actions against any of the Debtors, the Reorganized Debtors or their property on account of such Claims or Interests: (A) commencing or continuing, in any manner or in any place, any action, or other proceeding; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting or enforcing any lien or encumbrance; (D) asserting any right of setoff, subrogation or recoupment of any kind and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan; <u>provided</u>, <u>however</u>, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of this Plan.

- 34 -

(b)     By accepting distributions pursuant to this Plan, each Holder of an Allowed Claim will be deemed to have specifically consented to the injunctions set forth in this Section 10.3.

10.4    Term of Bankruptcy Injunction or Stays.  All injunctions or stays provided for in the Chapter 11 Cases under Section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

10.5    Exception to Releases.  Nothing in the Plan, including, but not limited to, Sections 10.2 and 10.3 of the Plan, Confirmation Order, or any other document in connection with such documents shall release or  discharge the claims, if any, of The Boeing Company, Boeing Commercial Space Company, Kvaerner Sea Launch Limited, Kvaerner Sea Launch U.S., Inc., Aker Maritime Finance AS, Kvaerner AS, Aker ASA, S.P. Korolev Rocket and Space Corporation Energia, KB Yuzhnoye, and PO Yuzhny Mashinostroitelny Zavod Production Association, against entities other than the Debtors; provided, however, that nothing contained in this Section 10.5 shall constitute an acknowledgement by any party of any right or fact with respect to any claims.

# ARTICLE XI

# RETENTION OF JURISDICTION

Pursuant to Sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)     allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim or Priority Tax Claim and the resolution of any objections to the allowance or priority of Claims or Interests;

(b)     grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan for periods ending on or before the Effective Date;

(c)     resolve any matters related to the assumption or assumption and assignment of any executory contract or unexpired lease to which any Debtor is a party or with respect to which any Debtor or Reorganized Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(d)     ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of this Plan;

(e)     decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(f)     enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases and other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

(g)     resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any contract, instrument, release or other agreement or document that is executed or created pursuant to this Plan, except to the extent expressly provided otherwise in such agreement or document, or any entity's rights arising from or obligations incurred in connection with this Plan or such documents, except to the extent expressly provided otherwise in such agreement or document;

(h)     approve any modification of this Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code or approve any modification of the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan;

(i)     hear and determine all applications for compensation and reimbursement of expenses of Professionals under this Plan or under Sections 338, 330, 331, 363, and 503(b) of the Bankruptcy Code, which shall be payable by the Debtors only upon allowance thereof pursuant to the order of the Bankruptcy Court;

(j)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of this Plan or the Confirmation Order;

(k)     hear and determine causes of action by or on behalf of the Debtors or the Reorganized Debtors arising prior to the Effective Date;

(l)     hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

- 36 -

(m)    enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked or vacated, or if distributions pursuant to this Plan are enjoined or stayed;

(n)    determine any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, or other agreement, or document created in connection with this Plan, the Disclosure Statement or the Confirmation Order;

(o)    enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

(p)    hear and determine all matters related to (i) the property of the Estates from and after the Confirmation Date and (ii) the activities of the Reorganized Debtors;

(q)    hear and determine disputes with respect to compensation of the Reorganized Debtors' professional advisors;

(r)    hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under the Bankruptcy Code; and

(s)    enter an order closing the Chapter 11 Cases.

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

12.1 <u>Surrender of Instruments</u>. As a condition to participation under this Plan the Holder of a note, debenture or other evidence of indebtedness of the Debtors that desires to receive the property to be distributed on account of a Class 3, 4, 5, 6 or 7 Claim based on such note, debenture or other evidence of indebtedness shall surrender such note, debenture or other evidence of indebtedness to the Debtors, or their designee (unless such Holder's Claim will be Reinstated by this Plan, in which case such surrender shall not be required), and shall execute and deliver such other documents as are necessary to effectuate this Plan; provided, however, that if a claimant is a Holder of a note, debenture or other evidence of indebtedness for which no physical certificate was issued to the Holder but which instead is held in book-entry form pursuant to a global security held by DTC or other securities depositary or custodian thereof, then such Holder shall be deemed to have surrendered such Holder's note, debenture or other evidence of indebtedness upon surrender to Sea Launch of such global security by DTC or such other securities depositary or custodian thereof. Except as otherwise provided in this section, if no surrender of a note, debenture or other evidence of indebtedness occurs and a claimant does not provide an affidavit and indemnification agreement, in form and substance satisfactory to the

YCST01:9639150.1    068473.1001

Debtors, that such note, debenture or other evidence of indebtedness was lost, then no distribution may be made to any claimant whose Claim is based on such note, debenture or other evidence of indebtedness thereof. The Debtors shall make subsequent distributions only to the persons who surrender the securities for exchange (or their assignees) and the record holders of such securities shall be those holders of record as of the Effective Date.

12.2  Post-Confirmation Date Retention of Professionals. Upon the Effective Date, any requirement that professionals employed by the Reorganized Debtors comply with Sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and the Reorganized Debtors will be authorized to employ and compensate professionals in the ordinary course of business and without the need for Bankruptcy Court approval.

12.3  Bar Date for Certain Administrative Expense Claims. All applications for final allowance of fees and expenses of professional persons employed by the Debtors or any statutory committee appointed in the Chapter 11 Cases, pursuant to orders entered by the Bankruptcy Court and on account of services rendered prior to the Effective Date, shall be filed with the Bankruptcy Court and served upon the Reorganized Debtors' counsel and counsel to the Committee at the addresses set forth in Section 12.12 of this Plan no later than forty-five (45) days after the Effective Date. Any such claim that is not filed within this time period shall be discharged and forever barred. Objections to any application for allowance of Administrative Expense Claims described in this Section 12.3 must be filed within thirty (30) days after the filing thereof, as may be extended by the Bankruptcy Court upon request of the Reorganized Debtors.

12.4  Effectuating Documents and Further Transactions. Each of the Debtors and the Reorganized Debtors is authorized to execute, deliver, file or record the Plan Documents and such other contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of this Plan and any notes or securities issued pursuant to this Plan.

12.5  Corporate Action. Prior to, on, or after the Effective Date (as appropriate), all matters expressly provided for under this Plan that would otherwise require approval of the shareholders or directors of one (1) or more of the Debtors or the Reorganized Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate) pursuant to the applicable general corporation law of the states or foreign jurisdictions in which the Debtors or the Reorganized Debtors are incorporated without any requirement of further action by the shareholders or directors of the Debtors or the Reorganized Debtors, including all actions required to be taken by the board of directors of the Debtors or the Reorganized Debtors, as applicable, in Section 5.4(c) and Article VII of this Plan.

12.6  Exemption from Transfer Taxes. Pursuant to Section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer or exchange of notes or equity securities under this Plan; (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest; (c) the making or assignment of any lease or sublease; or (d) the making or delivery of any deed or other instrument of transfer under this Plan, including, without limitation, merger agreements,

- 38 -

agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, and transfers of tangible property, will not be subject to any stamp tax or other similar tax.

12.7  Payment of Statutory Fees.  All fees payable pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date.

12.8  Amendment or Modification of this Plan.  Subject to Section 1127 of the Bankruptcy Code and, to the extent applicable, Sections 1122, 1123 and 1125 of the Bankruptcy Code, the Debtors may alter, amend or modify this Plan, the Plan Supplement or the Plan Documents at any time prior to or after the Confirmation Date but prior to the substantial consummation of this Plan.  A Holder of a Claim that has accepted this Plan shall be deemed to have accepted this Plan, the Plan Supplement, and the Plan Documents, in each case, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such Holder.

12.9  Severability of Plan Provisions.  If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, Impaired or invalidated by such holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

12.10  Successors and Assigns.  This Plan shall be binding upon and inure to the benefit of the Debtors, and their respective successors and assigns, including, without limitation, the Reorganized Debtors.  The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

12.11  Revocation, Withdrawal or Non-Consummation of the Plan.  Except to the extent otherwise provided in the Exit Financing Commitment Letter and the New Investment Agreement, the Debtors reserve the right to revoke or withdraw this Plan as to any or all of the Debtors prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtors revoke or withdraw this Plan as to any or all of the Debtors or if confirmation or consummation of this Plan as to any or all of the Debtors does not occur, then, with respect to such Debtors, (a) this Plan shall be null and void in all respects, (b) any settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtors or any other Person, (ii) prejudice in any

manner the rights of such Debtors or any other Person or (iii) constitute an admission of any sort by the Debtors or any other Person.

12.12 Notice. All notices, requests and demands to or upon the Debtors or the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Sea Launch Company, L.L.C.
> 2700 Nimitz Road
> Long Beach, CA 90802
> Facsimile: (562) 499-4755
> Attn: Brett Carman

> *with a copy to:*

> Dennis J. Connolly
> Matthew W. Levin
> Alston & Bird LLP
> 1201 West Peachtree Street
> Atlanta, GA 30309-3424
> Atlanta, Georgia 30309-3424
> Facsimile: (404) 881-7777

> Counsel to Debtors and Debtors in Possession

> and if to the Committee, to:

> Tyson Lomazow
> Milbank, Tweed, Hadley & McCloy LLP
> 1 Chase Manhattan Plaza
> New York, NY 10005-1413
> Facsimile: (212) 822-5367
> New York, New York 10005-1413

> Counsel to the Committee

> and if to the New Investor, to:

> Claude D. Montgomery
> Lee P. Whidden
> SALANS LLP
> Rockefeller Center
> 620 Fifth Avenue
> New York, New York 10020-2457
> Facsimile: (212) 632-5555

Counsel to Energia Overseas

12.13 <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan or the Plan Documents provide otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction.

12.14 <u>Tax Reporting and Compliance</u>.  The Reorganized Debtors are hereby authorized, on behalf of each of the Debtors, to request an expedited determination under Section 505 of the Bankruptcy Code of the tax liability of the Debtors for all taxable periods ending after the Petition Date through, and including, the Effective Date.

12.15 <u>Exhibits</u>.  All Exhibits to this Plan and the Plan Documents are hereby incorporated herein and made a part of this Plan as if set forth in full herein.

12.16 <u>Filing of Additional Documents</u>.  On or before substantial consummation of this Plan, the Reorganized Debtors and the Debtors shall File such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

12.17 <u>Reservation of Rights</u>.  Except as expressly set forth herein, this Plan shall have no force and effect unless the Bankruptcy Court has entered the Confirmation Order.  The filing of this Plan, any statement or provision contained in this Plan, or the taking of any action by the Debtors with respect to this Plan shall not be and shall not be deemed to be an admission or waiver of any rights of the Debtors with respect to the Holders of Claims and Interests.

YCST01:9639150.1                    068473.1001

Dated: Long Beach, California          Respectfully submitted,
      May 10, 2010

SEA LAUNCH COMPANY, L.L.C.
SEA LAUNCH LIMITED PARTNERSHIP
(for themselves and on behalf of the Affiliate Debtors, as
Debtors and Debtors-in-Possession)

By: _____

Kjell Karlsen
President and General Manager


ALSTON & BIRD LLP
Dennis J. Connolly
Matthew W. Levin
1201 West Peachtree Street, N.E.
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7940
Facsimile: (404) 881-7777

- and -

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Joel A. Waite (No. 2925)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Counsel to the Debtors and Debtors in Possession

**Exhibit B**

**Pro Forma Balance Sheet**

**TO BE FILED**

**Exhibit C**

**Liquidation Analysis**

**TO BE FILED**