UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| SEA LAUNCH COMPANY, L.L.C., *et al.*,[1] | ) | Case No. 09-12153 (BLS) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | Hearing Date: July 12, 2010 at 2:00 p.m. (ET) |
| | ) | Objection Deadline: June 28, 2010 at 4:00 p.m. (ET) |

## MOTION FOR THE ENTRY OF AN ORDER ESTIMATING, FOR THE PURPOSES OF DISTRIBUTION AND FOR ALL OTHER PURPOSES, THE PUTATIVE CLAIMS OF THE INTERNAL REVENUE SERVICE AND THE CALIFORNIA FRANCHISE BOARD IN RESPECT OF CERTAIN POTENTIAL LIABILITY FOR WITHHOLDING TAXES UNDER 26 U.S.C. § 1446

Sea Launch Company, LLC ("**Sea Launch Company**") and its affiliates, Sea Launch Limited Partnership, a Cayman Islands partnership ("**Sea Launch LP**"); Sea Launch ACS Limited, an Isle of Man company ("**Sea Launch ACS**"); Sea Launch ACS Limited Partnership, an Isle of Man company ("**Sea Launch ACS LP**"); Platform LDC, a Cayman Islands company ("**Platform LDC**"); and Platform Limited Partnership, a Cayman Islands limited partnership ("**Platform LP**" and collectively, with Sea Launch Company, Sea Launch LP, Sea Launch ACS, Sea Launch ACS LP, and Platform LDC, the "**Debtors**") file this Motion (the "**Motion**") seeking the entry of an order, substantially in the form attached hereto as Exhibit A, pursuant to Section 502(c) of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), to estimate the claims, if any, of the Internal Revenue Service (the "**IRS**") and the California Franchise Board at no more than $250,000.00, in the aggregate, for the purposes of allowance

---

[1] The last four digits of the taxpayer identification numbers for each of the Debtors follow in parenthesis: (i) Sea Launch Company, L.L.C. (1590); (ii) Sea Launch Limited Partnership (Cayman) (8182); (iii) Sea Launch ACS Limited (5999); (iv) Sea Launch ACS Limited Partnership (Isle of Man) (6216); (v) Platform LDC (3177); and (vi) Platform Limited Partnership (3173). The mailing address for all of the Debtors is 2700 Nimitz Road, Long Beach, CA 90802.

and distribution as priority tax claims in light of the failure of the governmental entities to file a claim in respect of any such putative Section 1446 liability. In support of this Motion, the Debtors respectfully show as follows:

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested herein is Sections 502(b)(9) and 502(c) of the Bankruptcy Code.

## II. BACKGROUND

2. On June 22, 2009 (the "**Petition Date**"), the Debtors each filed a voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. No trustee or examiner has been appointed in the Debtors' Chapter 11 cases. On July 8, 2009, the United States Trustee appointed the official committee of creditors holding unsecured claims against the Debtors (the "**Committee**") in these cases.

4. The factual background regarding the Debtors, including their business operations, their capital and debt structure, and the events leading to the filing of these bankruptcy cases, is set forth in detail in the Declaration of Brett A. Carman in Support of Chapter 11 Petitions and First Day Pleadings (Docket No. 4), which the Debtors fully incorporate herein by reference.

YCST01:9794363.1   068473.1001

A. **Factual and Background Specific to the Relief Requested**

5. Subject to certain exceptions, a debtor realizes income (referred to herein as "**Cancellation of Debt**" or "**COD**" income) upon the discharge or cancellation of its outstanding indebtedness in an amount equal to the excess (if any) of: (i) the amount of the indebtedness discharged over (ii) the total consideration given in satisfaction of the indebtedness including cash, the issue price of any new indebtedness, and the fair market value of any other consideration, including new common stock.

6. One of the exceptions to this general rule provides that COD income is excluded from gross income with respect to a taxpayer that has been granted a discharge in a Title 11 case, including a discharge pursuant to a plan approved by the court (the "**Bankruptcy Exception**"). In that instance, the amount excluded from gross income is applied to reduce the tax attributes in the following order: (a) net operating losses and net operating loss carryovers ("**NOLs**"); (b) general business credits; (c) minimum tax credits; (d) capital loss carryovers; (e) basis of property of the taxpayer; (f) passive activity loss or credit carryovers; and (g) foreign tax credit carryovers. Tax attributes generally are reduced by one dollar for each dollar excluded from gross income, except that tax credits are reduced by one-third of the amount excluded from gross income. Notwithstanding the general order of attribute reduction, the Internal Revenue Code (the "**Tax Code**") provides a debtor with an election to reduce its tax basis in depreciable assets prior to reducing NOLs. The reduction in tax attributes generally takes place after the federal income tax is determined for the tax year in which the debt discharge occurs.

7. Because Sea Launch LP is a partnership for Federal income tax purposes, these rules will apply at the partner level only. Consequently, Sea Launch LP cannot exclude COD income even though it is a debtor in a Title 11 case.

- 3 -

YCST01:9794363.1    068473.1001

8. The Debtors anticipate that a significant amount of their indebtedness will be discharged in the bankruptcy proceeding. For Federal and State of California income tax purposes, COD income may be treated as taxable income. Accordingly, during the Debtors' 2010 tax year, the Debtors anticipate that they will realize a substantial amount of COD income.

9. In general, the Debtors are required to pay a Federal withholding tax under Section 1446 of the Internal Revenue Code if they have any "effectively connected income" attributable to a U.S. trade or business that is allocable to a foreign partner. The Debtors believe that a minor portion of the COD income to be realized may be characterized as "effectively connected income" within the meaning of Section 1446(c) of the Tax Code. The State of California has withholding tax obligation rules similar to the Federal rules, and, as a result, the Debtors may also be liable for State of California withholding tax obligations.

10. Although Section 108 of the Tax Code allows taxpayers in certain situations to exclude COD income from taxable income, those rules generally apply in the case of a partnership only at the partner level (and not at the partnership level). The Debtors have not determined whether its partners can exclude their allocable shares of COD income under Section 108. However, pursuant to Section 1446 of the Tax Code, the Debtors may be liable for withholding tax obligations at the partnership level regardless of the ultimate income tax treatment of the partners.

11. A partnership is legally obligated to withhold the Section 1446 tax if such Section is applicable. Each foreign partner is then allowed a credit for the partner's share of the withholding tax paid by a partnership under Section 1446 on its Federal corporate income tax return and, if appropriate, receives a refund. As with the Federal income tax, any California tax

YCST01:9794363.1     068473.1001

withheld on behalf of a partner is creditable on the partner's California corporate income tax return.

12. Since its inception, the Debtors have reported losses for tax purposes. Each partner's allocable share of the Federal and State of California income tax losses have been reported to it on annual Forms K-1, entitled "Partner's Share of Income, Credits, Deductions and Other Items". The Debtors do not have knowledge of the Federal and State of California income tax positions of its foreign partners (nor its domestic partners). However, it is anticipated that the tax losses allocable to the foreign partners have given rise to "net operating loss carryovers" for Federal and State of California income tax purposes. Federal tax regulations permit foreign partners to certify their net operating loss carryovers to the Debtors, who can rely on such certifications to offset such partner's allocable share of U.S. effectively connected taxable income from the partnership. In that case, the Debtors may reduce or eliminate their obligation to withhold under Section 1446. The State of California effectively adopts the same regime and uses the Federal rules and forms in computing the required State of California withholding.

### B. Plan Provisions

13. To address the contingent claims of the IRS and the California Franchise Board in respect of the argument that the Debtors are responsible to withhold, on behalf of their foreign partners, sums due in the approximate amount of $250,000.00 in the aggregate, the plan of reorganization proposed by the Debtors (the "**Plan**") shall provide that the claims of the U.S. and the California Franchise Board will be addressed as follows:

> To the extent that any Governmental Unit asserts a claim for withholding tax under Section 1446 or an analogous state regime (a "**Section 1446 Claim**"), such Section 1446 Claim shall be addressed and treated as a Priority Tax Claim and shall be treated as follows:
>
> (a) pursuant to 11 U.S.C. § 502(c), the aggregate amount of such claims shall

- 5 -

YCST01:9794363.1        068473.1001

not exceed, and shall be estimated for purposes of distribution, voting and all other purposes under the Plan, the amount of $250,000;

(b) at the option of the Reorganized Debtors, such amount referred to in Section 3.1(c)(ii)(a) of this Plan shall either be held in reserve in the Creditor Trust for and on behalf of such Governmental Unit(s) or shall be paid by the Reorganized Debtors pursuant to the provisions of Section 3.1(c)(i) [of the Plan], provided, however, that pending the adjudication of the issue of whether such Governmental Unit filed a timely proof of claim under 11 U.S.C. § 502(b)(9), and, in the event the Court determines that no Section 1446 Claim was timely filed, said liability shall be discharged and forever barred;

(c) any such Governmental Unit asserting a Section 1446 Claim shall be enjoined from enforcing or making any claim for any penalty, interest or attorney's fees in respect of such withholding liability arising on or before the Effective Date of the Plan; and

(d) the order on confirmation of the Plan shall enjoin, on a permanent basis, any action on the part of any such Governmental Unit from and against the collection of such Claim other than against the Reorganized Debtors or the successor to the Estate for this purpose, the Creditor Trust, as appropriate. Any such Governmental Unit shall be limited in its rights to seek Bankruptcy Code § 502(j) relief and shall be required to seek such relief in respect of any such Section 1446 Claim estimated under Bankruptcy Code § 502(c) no later than 20 days after the entry of the Confirmation Order.

14. The Plan will treat any putative or contingent claim of the United States or the State of California as a prepetition unsecured claim under Section 101(5) of the Bankruptcy Code. *See In re Roth American*, 975 F.2d 949 (3d Cir. 1992); *Pension Ben. Guar. Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.)*, 126 F.3d 811 (6th Cir. 1992); *see infra* ¶ 16. Neither the United States nor the State California has filed a proof of claim in respect of the contingent claims and, as a result, the Debtors' position is that the claims will be barred and discharged under the provisions of Section 1141 of the Bankruptcy Code. *See* 11 U.S.C. § 502(b)(9).

## IV. BASIS FOR THE RELIEF REQUESTED

### A. The Court has the Power under Section 502(c)(2) to Estimate the Putative Claims of the IRS and the California Franchise Board for Allowance and Distribution Purposes.

15. Section 502(c) of the Code authorizes the Court to estimate claims under a number of circumstances. First, the claim may be estimated if liquidation of the claim would unduly delay the administration of the case. Moreover, Section 502(c) permits the estimation of not only contingent or unliquidated claims, but also disputed claims. *See In re Wallace's Bookstores, Inc.*, 317 B.R. 720, 724-25 (Bankr. E.D. Ky. 2004). Moreover, other than in respect of personal injury or wrongful death claims, which are excluded from the estimation process pursuant to 28 U.S.C. § 157(b)(2)(B), the allowance or estimation process is a core proceeding and authorizes the Court to make such determinations for the purposes of distribution in bankruptcy cases. *Id.* at 725; *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1011-12 (4th Cir. 1986); *In re Thomson McKinnon Securities, Inc.*, 191 B.R. 976, 979 (Bankr. S.D.N.Y. 1966); *In re Trident Shipworks, Inc.*, 247 B.R. 513, 514 (Bankr. M.D. Fla. 2000); *In re C.F. Smith & Assoc., Inc.*, 235 B.R. 153, 160 (Bankr. D. Mass. 1999). While there are some cases recognizing that the claim as estimated may be subject to adjustment under or reconsideration under Section 502(j), for cause, the Plan addresses the mechanism for this reconsideration and, as a result, the putative claims of the IRS and the California Franchise Board are adequately addressed and may be estimated for allowance and distribution purposes under Section 502(c).

16. Courts recognize that claims may be estimated as of the petition date even if such claim is contingent as of that date, *see Addison v. Langston (In re Brints Cotton Marketing, Inc.)*, 737 F.2d 1338, 1342 (5th Cir. 1984), and have uniformly denied postpetition administrative treatment to claims predicated on prepetition events, despite the fact that the contingency giving

rise to the timing of payment occurs postpetition, *see Pension Ben. Guar. Corp. v. Skeen (In re Bayly Corp.)*, 163 F.3d 1205, 1208-09 (10th Cir. 1998); *Towers v. United States (In re Pacific-Atlantic Trading Co.)*, 160 B.R. 136, 139 (N.D. Ca. 1993) (denying administrative expense priority for corporate income taxes where taxable activity occurred prior to the appointment of the trustee and was connected with the debtor company and not with the bankruptcy estate), *aff'd in part, rev'd in part on other grounds*, 64 F.3d 1292 (9th Cir. 1995); *Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 104 (2d Cir. 1986). *Accord Pension Ben. Guar. Corp. v. Oneida, Ltd.*, 562 F.3d 154, 157 (2d Cir. 2009) (distinguishing the debtor's obligation to pay a termination premium on a pension plan terminated postpetition from a prepetition obligation subject to a contingency, noting "[n]o matter how broadly the term 'claim' is construed, it cannot extend to a right to payment that does not yet exist under federal law."). Without question, the Section 1446 Claim, if indeed it is a claim as opposed to simply an obligation to "withhold" funds for and on behalf of the foreign partners of the Debtors, arose and was incurred by virtue of the losses that occurred well prior to the Petition Date.

17. The Debtors have undertaken an analysis of the potential liability for withholding on behalf of the foreign partners assuming the COD income arises on or before the effective date of the Plan (the "**KPMG Analysis**"). The evidence will show that the exposure for withholding liability does not exceed $250,000.00, in the aggregate, based on the certain allocation assumptions and the economic activity of the Debtors prior to the Petition Date. The income allocable or attributable to operations in the United States (so called "effectively connected income") must be distinguished from the income allocable or attributable to operations outside of the United States ("non-effectively connected income"). The KPMG Analysis allocates COD income in the same manner the prior net operating losses of Sea Launch were allocated

(approximately 90% allocated to non-effectively connected income). This allocation is based in part on an opinion of Alston & Bird LLP that it is more likely than not that COD income arising from the discharge of indebtedness is attributable to the same source as the related prior deductions for interest on the discharged indebtedness and for depreciation and other expenses funded by the discharged indebtedness.

18. Based on the KPMG Analysis (which relies, in part on the opinion of Alston & Bird LLP), and for the foregoing reasons, this Court has the jurisdictional and evidentiary basis to estimate the claims, for distribution purposes, at no more than $250,000.00, as provided for by the Plan.

### B. Section 502(b)(9) Supports the Requested Relief.

19. In addition, and in the alternative, Section 502(b)(9) of the Bankruptcy Code supports the requested relief. Section 502(b)(9) was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Under Section 502(b)(9), late filed claims may be disallowed except that a claim of a governmental unit shall timely be filed if it is filed before 180 days after order for relief or at such later time as the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") may provide. In this case, the October 6, 2009 order establishing bar dates (the "**Bar Date Order**," Docket No. 301) set November 20, 2009 as the general bar date for the filing of prepetition claims and December 21, 2009, as the bar date by which governmental units were required to file claims, which was the first business day following the 180th day after the petition date of June 22, 2009. Accordingly, any claims filed by a Governmental Unit (as defined in the Bar Date Order and the Plan) after December 21, 2009, including claims filed by the IRS and the California Franchise Board, are late and, as a result, may not be allowed absent a demonstration of excusable neglect as

articulated by the Supreme Court of the United States in *Pioneer Investment Services Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (taking into account all relevant circumstances surrounding the party's failure to timely file a claim including the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay including whether it was within the reasonable control of the creditor, and whether the creditor acted in good faith); *see generally, Kilbarr Corp. v. Gen. Srvs. Admin. Office of Fed. Supply and Serv. (In re Remington Rand corp.)*, 836 F.2d 825 (3d Cir. 1988); *see also, In the Matter of Connecticut Motor Lines, Inc.*, 336 F.2d 96, 107 (3d Cir. 1964) (holding that the bar date for filing proofs of claim was equally applicable to the U.S. government and that "[i]ts inability or failure to file [a] proof of claim naturally results in a distribution of assets elsewhere.").[2]

20. Neither the IRS nor the California Franchise Board filed a claim based on the putative Section 1446 liability,[3] even though such claims arose prepetition and were contingent as of the Petition Date (as set forth in more detail above). The Court may well find that there is no withholding tax liability under Section 1446 by virtue of these facts in that the taxing authorities simply failed to timely file claims. Nevertheless, in addition to the potential for complete disallowance of any Section 1446 claims, the KPMG Analysis supports the estimation,

---

[2] The IRS and the California Franchise Board were properly served with the Bar Date Notice (as defined in and approved by the Bar Date Order), and the IRS, which is on the Master Service List and receives notice of virtually all pleadings filed in the Debtors' bankruptcy cases, was additionally served with the Bar Date Order. Specifically, copies of the Bar Date Notice and Proof of Claim forms were mailed via first class mail on October 12, 2009, to the California Franchise Tax Board and the IRS (at three (3) separate addresses). *See* Affidavit of Mailing, Docket No. 339 at pp. 28, 32, and 33. The Bar Date Notice and Proof of Claim forms were also served on the California State Board of Equalization, the Office of the Attorney General, and the United States Attorney (at two (2) separate addresses). *Id.* at pp. 34, 36. The relevant portions of the Affidavit of Mailing are attached hereto as Exhibit B.

[3] It is noteworthy that the California Franchise Board filed three (3) proofs of claim in the Debtors' bankruptcy cases, Claim Nos. 116, 118, and 124, including a claim against Sea Launch LP (Claim No. 118), but failed to make any claims for withholding liability or otherwise indicate that such contingent or unliquidated liabilities may exist. The Claims filed by the California Franchise Board are attached hereto as Exhibit C.

for the purposes of distribution and plan confirmation, of amounts that may be payable to the IRS and the California Franchise Board at no more than $250,000.00, in the aggregate.

21. To the extent that the IRS or the California Franchise Board is able to demonstrate cause for the late filing of any claims in respect of withholding liabilities, the Debtors shall provide payment for the claims, if allowed, pursuant to the terms of the Plan, which caps withholding liabilities at $250,000 for distributional purposes under Section 502(c) of the Bankruptcy Code. Pursuant to the Plan, if and to the extent that the Debtors receive a discharge pursuant to Sections 524 and 1141(d) of the Bankruptcy Code, the Debtors shall have no further liability for such claims other than as set forth in the Plan.

22. Based on the KPMG Analysis, the likelihood that any claims filed in respect of withholding tax liability may be disallowed pursuant to 502(b)(9), and for the foregoing reasons, the Debtor requests that this Court estimate the claims of the IRS and the California Franchise Board, for distribution purposes, at no more than $250,000.00, as provided for by the Plan.

### V. NOTICE

23. The Debtors have served notice of this Motion on (a) the Office of the United States Trustee for the District of Delaware; (b) the Committee; (c) the IRS; (d) the California Franchise Board; and (e) all parties that have requested notice pursuant to Local Rule 2002-1(b). The Debtors submit that no other or further notice need be provided.

WHEREFORE, the Debtors respectfully request that the Court (i) enter the proposed order attached hereto as <u>Exhibit A</u> granting the relief requested herein; and (ii) grant such other and further relief as it deems just and proper.

DATED: June 14, 2010

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *signature*

Joel A. Waite (No. 2925)
Kenneth J. Enos (No. 4544)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19801-0391
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

-and-

Dennis J. Connolly
Matthew W. Levin
Sage M. Sigler
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

Attorneys for the Debtors