## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Chapter 11 |
| | ) |
| SEA LAUNCH COMPANY, L.L.C., *et al.*,[1] | ) Case No. 09-12153 (BLS) |
| | ) |
| Debtors. | ) Jointly Administered |
| | ) |
| | ) **Ref. Doc. No. 795** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING THE DEBTORS' SECOND AMENDED PLAN OF REORGANIZATION

This case is before the Court on a request for confirmation of the Second Amended Plan of Reorganization Proposed by Sea Launch Limited Partnership, a Cayman Islands exempted limited partnership ("Sea Launch LP"); its General Partner, Sea Launch Company, L.L.C. ("Sea Launch Company"); and its direct and indirect subsidiaries, Sea Launch ACS Limited, an Isle of Man exempted company ("Sea Launch ACS"); Sea Launch ACS Limited Partnership, an Isle of Man exempted limited partnership ("Sea Launch ACS LP"); Platform LDC, a Cayman Islands exempted limited duration company ("Platform LDC"); and Platform Limited Partnership, a Cayman Islands exempted limited partnership ("Platform LP" and collectively, with Sea Launch Company, Sea Launch LP, Sea Launch ACS, Sea Launch ACS LP, and Platform LDC (collectively, the "Debtors"). After notice, a hearing was held on confirmation on July 27, 2010.

### Procedural Background

a.      On June 22, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition in this Court for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-

---

[1]      The last four digits of the taxpayer identification numbers for each of the Debtors follow in parenthesis: (i) Sea Launch Company, L.L.C. (1590); (ii) Sea Launch Limited Partnership (Cayman) (8182); (iii) Sea Launch ACS Limited (5999); (iv) Sea Launch ACS Limited Partnership (Isle of Man) (6216); (v) Platform LDC (3177); and (vi) Platform Limited Partnership (3173).  The mailing address for all of the Debtors is 2700 Nimitz Road, Long Beach, CA 90802.

1532 (the "Bankruptcy Code"), and continued to manage their business as debtors in possession pursuant to Section 1107 of the Bankruptcy Code;

b        On May 10, 2010, the Debtors filed their Plan of Reorganization and the related Disclosure Statement for the Debtors' Plan of Reorganization [Docket Nos. 690, 691];

c.        On June 18, 2010, the Debtors filed their First Amended Plan of Reorganization and its related disclosure statement [Docket Nos. 787 and 788], as subsequently amended by the Debtors' Second Amended Plan of Reorganization filed on June 21, 2010, (together with the Plan Supplement, the other exhibits thereto and all other documents and actions necessary to carry out, consummate, finalize and effectuate the Plan, the "Plan")[2] and related disclosure statement (the "Disclosure Statement") [Docket Nos. 795 and 796];

d.        On June 21, 2010, following a hearing on the adequacy of the Disclosure Statement, the Court entered its Order (I) Approving Disclosure Statement; (II) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan, Including (A) Approving Form and Manner of Solicitation Procedures, (B) Approving Form and Notice of Confirmation Hearing, (C) Establishing Record Date, (D) Approving Procedures for Distribution of Solicitation Packages, (E) Approving Forms of Ballots, (F) Establishing Deadline for Receipt of Ballots, and (G) Approving Procedures for Vote Tabulations; (III) Establishing Deadline and Procedures for Filing Objections to (A) Confirmation of the Plan, and (B) Proposed Cure Amounts Related to any Contracts and Leases Potentially Assumed under the Plan; and (IV) Granting Related Relief [Docket No. 793] (the "Solicitation Order");

e.        Pursuant to the Solicitation Order, the Court (i) established July 20, 2010, at 4:00 p.m. ET as the deadline for submitting Ballots accepting or rejecting the Plan (the "Voting

---

[2]        Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

- 2 -

Deadline") and for filing objections to confirmation of the Plan (the "Objection Deadline") and (ii) scheduled a hearing to consider confirmation of the Plan commencing on July 27, 2010, at 1:00 p.m. (EDT) (the "Confirmation Hearing");

f.      On July 7, 2010, the Debtors filed their Notice of (I) Possible Assumption of Executory Contracts, (II) Fixing of Cure Amounts in Connection Therewith, and (III) Deadline to Object Thereto [Docket No. 836], as supplemented on July 22, 2010 by the Debtors' Supplemental Notice of (I) Possible Assumption of Executory Contracts, (II) Fixing of Cure Amounts in Connection Therewith, and (III) Deadline to Object Thereto [Docket No. 882] (together, the "Notice of Assumption");

g.      On July 13, 2010, the Debtors filed the Plan Supplement, including the Articles of Incorporation Before Share Capital Increase (Exhibit 1(a) to the Plan Supplement), the Articles of Incorporation After Share Capital Increase (Exhibit 1(b) to the Plan Supplement), the Exit Financing Credit Agreement (Exhibit 2 to the Plan Supplement), The Reorganized Sea Launch Shareholders Agreement (Exhibit 3 to the Plan Supplement), the Corporate Reorganization Transaction Steps (Exhibit 4 to the Plan Supplement), the Current Trade Vendor List (Exhibit 5 to the Plan Supplement), the Creditor Trust Agreement (Exhibit 6 to the Plan Supplement), the Exit Financing Commitment Letter Sea Launch Board (Exhibit 7 to the Plan Supplement), the Resolution No. 2010-04-1-103 dated April, 2010 (Exhibit 8 to the Plan Supplement), and the List of Directors & Officers for Sea Launch and the Reorganized Debtors (Exhibit 9 to the Plan Supplement, as revised on July 19, 2010 [Docket No. 865]) [Docket No. 857];

h.      On July 16, 2010, the Debtors filed, the New Investment Agreement in connection with the Plan [Docket No. 862];

- 3 -

i.    On July 19, 2010, this Court entered an order approving the stipulation between the Debtors and Yuzhny PA Mashinostroiteny Zavod ("Yuzhmash") to allow Yuzhmash's claim against the Debtors for Plan voting purposes in the amount of $76,000,000 pursuant to Rule 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") [Docket No. 867]; and on July 16, 2010, the Debtors, the Boeing Company ("Boeing") and Boeing Commercial Space Company ("BCSC") and Aker Maritime Finance AS, Kvaerner Sea Launch Ltd., Kvaerner Sea Launch Inc., and Kvaerner AS (collectively, "Aker"), entered into a Stipulation allowing Boeing's and BCSC's claims against the Debtors for Plan voting purposes in the amount of $52,000,000, and allowing Aker's claims against the Debtors for Plan voting purposes in the amount of $5,000,000 pursuant to Bankruptcy Rule 3018.

j.    On July 19, 2010, an objection to confirmation (the "Lloyd's Objection") was filed by certain underwriters at Lloyd's London [Docket No. 864]; on July 20, 2010, objections to confirmation were filed by Yuzhmash (the "Yuzhmash Objection") [Docket No. 870] and the United States of America (the "IRS Objection") [Docket No. 874]; and reservations of rights with respect to confirmation were filed by O3b USA, LLC (the "O3b Reservation") [Docket No. 869] and the Official Committee of Unsecured Creditors (the "Committee Reservation") [Docket No. 875]; and on July 21, 2010, objections to confirmation were filed by Boeing and BCSC (the "Boeing Objection") [Docket No. 876] and Aker (the "Aker Objection") [Docket No. 877]; and on July 21, 2010, an objection to the cure amount stated in the Notice of Assumption was filed by Yuzhnoye State Design Office ("Yuzhnoye") (the "Yuzhnoye Objection") [Docket No. 878] (the foregoing objections being sometimes collectively referred to as the "Objections");

k.    On July 21, 2010, the Debtors filed their Motion for an Order Pursuant to 11 U.S.C. §§ 105(a) and 363(b)(1) Authorizing Payment of the Break Up Fee and Expense

- 4 -

Reimbursement Under the Exit Financing Commitment Letter (the "<u>Expense Reimbursement Motion</u>") [Docket No. 880], and the motion to shorten notice with respect to the hearing thereon, seeking an order authorizing payment of the break up fee of $3.1 million contemplated by Section 9.1 (the "<u>Break Up Fee</u>") of the Exit Financing Commitment Letter (the "<u>Commitment Letter</u>"), dated March 29, 2010, as revised on June 27, 2010, between Sea Launch LP and Energia Overseas Limited Russia, a Russian Federation limited liability company and a joint venture entity (together with its subsidiary Energia Overseas LLC, a Delaware limited liability company, "<u>Energia Overseas</u>" or the "<u>New Investor</u>"), and authorizing payment of expenses, not to exceed $1.3 million, contemplated by Section 10.1 (the "<u>Expense Reimbursement</u>") of the Commitment Letter;

l.      On July 22, 2010, the Debtors filed the Declaration of Stephenie Kjontvedt of Epiq Bankruptcy Solutions, LLC Certifying Voting On, And Tabulation of, Ballots Accepting and Rejecting the Debtors' Second Amended Joint Plan of Reorganization (the "<u>Voting Declaration</u>") [Docket No. 884], and on July 23, 2010, the Debtors filed their Memorandum of Law in Support of Confirmation of the Debtors Second Amended Plan of Reorganization (the "<u>Confirmation Brief</u>") [Docket No. 891], both in support of confirmation of the Plan;

m.      On July 27, 2010, the Court entered an Order approving the Boeing Aker UCC Settlement Agreement.

n.      The Court having heard the statements of counsel and evidentiary proffers of testimony by Bemnet Kibreab, Jefferies & Company, and Christopher Picone, Sea Launch CRO, in respect of confirmation of the Plan.

NOW THEREFORE, based upon the Court's review of the Plan, the Disclosure Statement, the Plan Supplement and other documents filed in connection with the Plan, the

YCST01:9978930.1          068473.1001

Confirmation Brief, the Voting Declaration, and the Objections, and upon (i) all of the evidence proffered or adduced and arguments of counsel made at the Confirmation Hearing and (ii) the entire record of these Bankruptcy Cases, and after due deliberation thereon, discussions made on the record at the Confirmation Hearing and good cause appearing therefore, this Court hereby makes and issues the following Findings of Fact, Conclusions of Law and Orders:[3]

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A.  <u>Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2) and 1334(a))</u>.  On the Petition Date, the Debtors commenced the Bankruptcy Cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Debtors were qualified and are qualified to be debtors under Section 109 of the Bankruptcy Code.  Each of the Debtors is authorized to and has been operating as debtor-in-possession since the commencement of the reorganization cases.  No Trustee or examiner has been hereto for appointed in any of the cases.  Venue was proper as of the Petition Date and continues to be proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This Court has jurisdiction over these Bankruptcy Cases pursuant to 28 U.S.C. §§ 157 and 1334.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  The Court has the power to authorize and direct each of the actions contemplated by the Plan including, but not limited to, consummation of transactions required by the New Investment Agreement.

B.  <u>Findings Regarding the Debtors</u>.  Each of the Debtors has been duly incorporated or formed under the laws of jurisdiction in which they were organized.  Sea Launch LLC is in

---

[3]      This order (the "<u>Confirmation Order</u>") constitutes this Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure (the "<u>Federal Rules</u>"), as made applicable herein by Bankruptcy Rules 7052 and 9014.  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

good standing in the Commonwealth of Delaware. Each of the Debtors is in good standing in its jurisdiction of organization and is registered and/or authorized to do business as a foreign corporation, partnership or limited liability company in the jurisdictions in which such authorization is necessary for the implementation, effectuation and consummation of this Plan. As debtors-in-possession, the management and members of each general partner of the Debtors for itself and one Debtor limited partnership, including but not limited to their boards of directors and officers are and were duly authorized and empowered to take any and all such actions contemplated by and giving rise to the Plan and the New Investment Agreement. Each action, agreement and transaction contemplated by the Plan, the New Investment Agreement and this Confirmation Order, and all related actions, agreements and transactions necessary to implement, effectuate and confirm the Plan are authorized and lawful under the formation documents of each Debtor.

The Debtors, without further action by the shareholders of the Debtors including, but not limited to, the owners of the Sea Launch Equity Interests, acting by and through their officers or managers, are duly authorized and empowered to take any and all such actions as any of these may determine are necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order. Each Debtor has duly authorized, or is empowered to duly authorize, each of the acts, documents, agreements and transactions contemplated in the Plan and this Confirmation Order (the "Plan Documents") to implement, effect and consummate the Plan.

C.    Judicial Notice. The Court takes judicial notice of the docket in these Bankruptcy Cases maintained by the clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, all prior hearing transcripts and evidence and argument

- 7 -

made, proffered or adduced at the hearings held before the Court during the pendency of these Bankruptcy Cases.

D.    <u>Burden of Proof</u>. The Debtors, as proponents of the Plan, have met their burden of proving the elements of Sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, as further found and determined herein.

E.    <u>Transmittal of Solicitation Materials</u>. To obtain requisite acceptance of the Plan, on or about June 28, 2010, the Debtors completed solicitation of acceptances and rejections of the Plan by distributing, through Epiq Bankruptcy Solutions, LLC (the "<u>Voting Agent</u>"), the Plan, Disclosure Statement, and related materials as required by the Solicitation Order. As evidenced by the Affidavit of Christine Azzaro, filed with this Court on July 1, 2010 (the "<u>Solicitation Mailing Affidavit</u>") [Docket No. 818], and as required by the Solicitation Order, the Debtors transmitted:  (i) written notice (the "<u>Confirmation Hearing Notice</u>") of (a) the Court's approval of the Disclosure Statement, (b) the deadline for voting on the Plan, (c) the date of the Confirmation Hearing, and (d) the deadline and procedures for filing objections to confirmation of the Plan; (ii) a CD-ROM containing PDF copies of the Plan and the Disclosure Statement; (iii) Ballots, as appropriate, and a Ballot return envelope (postage prepaid) (collectively, the "<u>Solicitation Package</u>") to the Holders of Class 3—Current Trade Vendor Unsecured Claims, Class 4—Customer or Trade Vendor Unsecured Claims, Class 5—Aker and Boeing Claims, Class 6— S.P. Korolev Rocket & Space Corporation, Energia ("<u>RSC Energia</u>") Claims, and Class 7—Yuzhmash and Yuzhnoye Claims (collectively, the "<u>Voting Parties</u>"). Further, the Debtors transmitted a Confirmation Hearing Notice to each of the known counterparties to the Assumed Executory Contracts. Additionally, the Debtors transmitted a notice, which set forth, among other things:  (i) the non-voting classes under the Plan; (ii) a summary of the treatment of

- 8 -

Claims and Interests under the Plan; (iii) the date and time of the Confirmation Hearing; and (iv) the deadline and procedures for filing objections to the Plan (the "Non-Voting Creditor or Interest Holder Notice") to the Holders of Administrative Expense Claims, DIP Facility Claims, Priority Tax Claims, Class 1—Priority Non-Tax Claims, Class 2—Other Secured Claims, Class 8—Sea Launch Equity Interests, and Class 9—Subsidiary Interests (collectively, the "Non-Voting Parties").

F.      Good Faith Solicitation; No Requirement for Resolicitation. Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with Sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Solicitation Order, and all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations. Accordingly, the Court finds no need to resolicit any votes.

G.      Adequacy of Notice. Notice of the Confirmation Hearing, including all deadlines in the Solicitation Order, was given in compliance with the Bankruptcy Rules and the Solicitation Order and the materials served in conjunction therewith were good and sufficient notice in accordance with Bankruptcy Rules 2002(b) and 3020(b)(2). Votes for acceptance or rejection of the Plan were solicited by the Debtors in good faith, after transmittal of a disclosure statement containing adequate information, and otherwise in compliance with Bankruptcy Code Sections 1125 and 1126 and Bankruptcy Rules 3017 and 3018. The Plan Supplement, and all amendments, modifications, and supplements thereto, were transmitted and served in compliance with the Bankruptcy Rules. All parties in interest had the opportunity to appear and be heard at the Confirmation Hearing and no other or further notice is required.

- 9 -

H.  <u>Bar Date</u>. On October 6, 2009, the Court entered an order (the "<u>Bar Date Order</u>") [Docket No. 301] establishing November 20, 2009, as the general deadline to file proofs of claim for prepetition claims against the Debtors (the "<u>General Bar Date</u>") and December 21, 2009, as the bar date for governmental Units (the "<u>Governmental Unit Bar Date</u>").

I.  <u>Impaired Classes Voting to Accept the Plan</u>. As evidenced by the Voting Declaration, Class 3—Current Trade Vendor Unsecured Claims, Class 4—Customer or Trade Vendor Unsecured Claims, Class 5—Aker and Boeing Claims,[4] Class 6—RSC Energia Claims, Class 7—Yuzhmash and Yuzhnoye Claims[5] are each impaired and have each voted to accept the Plan pursuant to the requirements of Sections 1124 and 1126 of the Bankruptcy Code. Thus, at least one Impaired class of Claims has voted to accept the Plan.

J.  <u>Classes Deemed To Accept the Plan</u>. Class 1—Priority Claims, Class 2—Other Secured Claims, and Class 9—Subsidiary Interests are not impaired under the Plan and are deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

K.  <u>Classes Deemed to Reject the Plan</u>. Class 8—Sea Launch Equity Interests are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code because

---

[4]    Based on the Global Settlement Agreement and Release to be entered into by and among the Debtors, the Committee, each of the members of the Committee, Boeing, BCSC, and Aker (the "<u>Boeing Aker UCC Settlement Agreement</u>"), which Settlement was approved by this Court on the record at the Confirmation Hearing, Boeing and Aker agreed to change their votes on the Plan from rejecting to accepting votes, which changes were stated on the record at the Confirmation Hearing. Considering Boeing's and Aker's changed votes, Class 5 is an accepting Class with 100% in amount and 100% in number having voted to accept the Plan. *See Debtors' Motion for an Order Approving the Settlement and Compromise of Certain Claims Between (i) the Debtors (ii) the Official Committee of Unsecured Creditors (iii) the Members of the Official Committee of Unsecured Creditors, (iv) the Boeing Company, (v) Boeing Commercial Space Company, and (vi) Aker Maritime Finance AS* [Docket No. 894].

[5]    Based on an agreement between Yuzhmash, the Debtors and the New Investor, as set forth in further detail in Paragraph 47 of this Order, which will result in the assumption of the modified Yuzhmash BOAs and the modified treatment of Yuzhmash under the Plan, which BOA assumption and Plan modification were approved by this Court on the record at the Confirmation Hearing and as stated herein. As a result of such agreements, Yuzhmash agreed to change its vote on the Plan from rejecting to accepting, which change was stated on the record at the Confirmation Hearing. Considering Yuzhmash's changed vote, Class 7 is an accepting Class with the requisite amount of claims and number of voting claims having voted to accept the Plan.

YCST01:9978930.1        068473.1001

the Holders of Class 8 Interests will not receive or retain any distribution or property under the Plan on account of such Interests.

L.    <u>Preservation of Causes of Action</u>.  Pursuant to the Plan and Disclosure Statement, the Debtors have provided due and sufficient notice that the Plan preserves all Causes of Action, including actions under Chapter 5 of the Bankruptcy Code, except as otherwise set forth in the Plan, the Plan Supplement, and any settlement agreements approved by this Court or this Confirmation Order.

M.    <u>Rule 9019(a) Settlement</u>.  Except as otherwise provided in the Plan and this Confirmation Order, the Plan is a settlement between and among the Debtors and their creditors and equity holders of all claims and litigation against the Debtors, pending or threatened, or that were or could have been commenced against the Debtors prior to the date of entry of this Confirmation Order (other than the Reorganized Debtors' ability to prosecute objections to Claims and other retained Causes of Action to the extent preserved by the Plan).  Such settlement, as reflected in the relative distributions and recoveries or other benefits provided to holders of Claims or Interests under the Plan, (i) will save the Debtors and their Estates the costs and expenses of prosecuting various disputes, the outcome of which is likely to consume substantial resources of the Debtors' Estates and require substantial time to adjudicate, and (ii) has facilitated the creation and implementation of the Plan and benefits of the Debtors' Estates and creditors.  Accordingly, such settlement is fair and reasonable.

N.    <u>Releases, Exculpations and Injunctions</u>.  Pursuant to Section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a), the settlements, compromises, releases, discharges, exculpations and injunctions set forth in Sections 10.2 and 10.3 of the Plan and herein, and implemented by this Confirmation Order, are fair, equitable, reasonable and in the

- 11 -

best interests of the Debtors, the Reorganized Debtors and their Estates, creditors and equity holders. The releases of non-Debtors under the Plan are fair to holders of Claims and are necessary to the proposed reorganization, thereby satisfying the requirements of *In re Continental Airlines, Inc.*, 203 F.3d 203, 214 (3d Cir. 2000) and *In re Zenith Electronics Corp.*, 241 B.R. 92, 110-11 (Bankr. D. Del. 1999). The record of the Confirmation Hearing and these Bankruptcy Cases is sufficient to support the releases, exculpations, and injunctions provided for in Article X of the Plan and herein.

O.     Assumption and Rejection of Executory Contracts and Unexpired Leases. Article VII of the Plan governing the assumption and rejection of executory contracts and unexpired leases satisfies the requirements of all applicable provisions of Section 365 of the Bankruptcy Code. The assumption or rejection of any executory contract or unexpired lease pursuant to Article VII of the Plan, the Notice of Assumption and this Confirmation Order shall be legal, valid, and binding upon the applicable Debtor or Reorganized Debtor and all parties to such executory contract or unexpired lease to the same extent as if such assumption or rejection had been effectuated pursuant to an order of the Court entered before the confirmation of the Plan.

P.     Assumption and Assignment of Certain Indemnity Agreements. Sea Launch Limited Partnership, is a party to certain prepetition and postpetition indemnity agreements with The Standard Steamship Owners' Protection and Indemnity Association (Bermuda) Limited (the "Club"): The P&I Defence Rules and Correspondents 2008/2009 (the "2008 Policy"), The P&I Defence Rules and Correspondents 2009/2010 (the "2009 Policy"), and The P&I Defence Rules and Correspondents 2010/2011 (the "2010 Policy"). Sea Launch Limited Partnership and the Club are also parties to similar indemnity agreements for the years 2004 through 2007. Sea

- 12 -

Launch ACS Limited and Platform Limited Partnership are additional insured parties under the Policies and assumption and assignment of such Agreements is hereby approved.

Q.     New Investment Agreement.  The Debtors and Energia Overseas and their respective professionals have negotiated in good faith and at arms-length the New Investment Agreement, pursuant to which Energia Overseas has agreed to provide one hundred and fifty-five million dollars ($155,000,000),[6] to be invested in exchange for ninety-five percent (95%) of the New Common Stock in Reorganized Sea Launch, less the conversion, as requested by Energia Overseas, of some or all of the outstanding amounts due to Energia Overseas under the DIP Facility Agreement.  The New Investment Agreement forms an integral component of the Plan, represents a fair and reasonable exercise of the Debtors' and Reorganized Debtors' business judgment and is vital to the effectuation and implementation of the Plan.  The final execution of the New Investment Agreement, in substantially the form filed with the Bankruptcy Court, and the effectuation of the same are approved by this Confirmation Order.

R.     Exit Financing.  On the Effective Date, the Reorganized Debtors shall enter into the Exit Financing Credit Agreement, as guarantors of the $200,000,000 provided thereunder by Energia Overseas to Energia Logistics Ltd.   The Exit Financing Credit Agreement was negotiated between the Debtors, Energia Overseas and Energia Logistics Ltd., and was negotiated in good faith and at arm's length.  The Exit Financing Credit Agreement forms an integral component of the Plan, represents a fair and reasonable exercise of the Debtors' and Reorganized Debtors' business judgment and is vital to the effectuation and implementation of the Debtors' Plan.  The terms of the Plan and the Exit Financing Credit Agreement are in the best

---

[6]     If Class 4 had not accepted the Plan, Energia Overseas would have provided one hundred and forty million dollars ($140,000,000), and received eighty-five percent (85%) of the New Common Stock in Reorganized Sea Launch.

- 13 -

interests of the Reorganized Debtors, the Debtors and their Estates, creditors and other parties in interest.  All of the liens and security interests to be created under the Exit Financing Credit Agreement are hereby approved.  The New Investor has made the necessary filings to establish itself as a Delaware Limited Liability Company and, along with the Reorganized Debtors, is authorized to make all flings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of state, provincial, federal or other law (whether domestic or foreign) that would be applicable in the absence of this Confirmation Order and no further order or authorization shall be required. The Reorganized Debtors shall cooperate to make all other filings and recordings that otherwise would be necessary under applicable law and to give notice of such liens and security interests to third parties of the Reorganized Debtors, the Debtors and their Estates, creditors and other parties in interest.

S.    Exemption from Securities Laws.  Pursuant to Section 1125(e) of the Bankruptcy Code, the Debtors' transmittal of the Plan solicitation materials as set forth herein, their solicitation of acceptances of the Plan, and the Reorganized Debtors' issuance and distribution of the New Common Stock, the Preferred Stock and the Creditor Trust Equity Interests pursuant to the Plan, are not and will not be governed by or subject to any otherwise applicable law, rule, or regulation governing the solicitation or acceptance of a plan of reorganization or the offer, issuance, sale, or purchase of securities.

Energia Overseas and the Creditor Trust are successors to the Debtors under the Plan for purposes of Section 1145 of the Bankruptcy Code and, accordingly, pursuant to, and to the fullest extent permitted under, Section 1145 of the Bankruptcy Code, Section 4(2) of the Securities Act of 1933, and any other applicable state or federal securities law, the offer,

- 14 -

issuance, distribution, conversion, transfer or exchange of the New Common Stock, the Preferred Stock and the Creditor Trust Equity Interests (to the extent such interests are a security) are exempted from the registration requirements of the Securities Act of 1933, any similar state securities or "blue sky" laws and any other applicable law requiring registration prior to the offering, issuance distribution or sale of securities to the extent otherwise appropriate.

In addition, under Section 1145 of the Bankruptcy Code, any securities contemplated by the Plan, including the New Common Stock, the Preferred Stock and the Creditor Trust Equity Interests, will be freely tradable by the recipients thereof, subject to (i) the provisions of Section 1145(b) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(a)(11) of the Securities Act of 1933, and compliance with any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such securities or instruments; and (ii) the restrictions, if any, on the transferability of such securities and instruments under the Plan and the Plan Documents, including but not limited to the Shareholders' Agreement.

T.    <u>Plan's Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>. The Plan complies with the applicable provisions of the Bankruptcy Code, including, without limitation, Sections 1122 and 1123, thereby satisfying Section 1129(a)(1) of the Bankruptcy Code.

(i)    *Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))*. In addition to Administrative Claims and Priority Tax Claims, which are not and do not need to be classified, the Plan designates separate Classes of Claims and interests for and against the Debtors. The Claims and interests placed in each Class are substantially similar to other Claims and Interests, as the case may be, in each such Class. Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and

YCST01:9978930.1        068473.1001

such Classes do not unfairly discriminate between holders of Claims and Interests or the holders of such Claims and Interests have consented to such classification.  Thus, the Plan satisfies Sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(ii)    *Specify Unimpaired Classes (11 U.S.C. § 1123(a)(2)).*  Article II of the Plan specifies that Class 1—Priority Claims, Class 2—Other Secured Claims, and Class 9—Subsidiary Interests are not impaired in that the legal, equitable or contractual rights of Holders of Claims or Interests in these Classes are not altered under the Plan, which satisfies Section 1123(a)(2) of the Bankruptcy Code.

(iii)    *Specify Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).*  Article II of the Plan designates Class 3—Current Trade Vendor Unsecured Claims, Class 4—Customer or Trade Vendor Unsecured Claims, Class 5—Aker and Boeing Claims, Class 6—RSC Energia Claims, Class 7—Yuzhmash and Yuzhnoye Claims, and Class 8—Sea Launch Equity Interests as impaired under the Plan and Article III of the Plan specifies the treatment of Claims and Interests in those Classes, which satisfies Section 1123(a)(3) of the Bankruptcy Code.

(iv)    *No Discrimination (11 U.S.C. § 1123(a)(4)).*  Article III of the Plan provides for the same treatment by the Debtors for each Claim or Interest in each respective Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment of such Claim or Interest, which satisfies Section 1123(a)(4) of the Bankruptcy Code.

(v)    *Implementation of the Plan (11 U.S.C. § 1123(a)(5)).*  Article V of the Plan contains numerous provisions to adequately facilitate implementation of the Plan, including, without limitation, provisions for the following:  (i) the continued corporate existence of the Debtors; (ii) the cancellation of the Sea Launch Equity Interests on or before the Effective Date; (iii) the vesting of assets in Reorganized Sea Launch and certain of the Reorganized Debtors free

- 16 -

and clear of all Claims, Liens, charges other encumbrances and interests on or before the Effective Date; (iv) the transfer of Reorganized Sea Launch from the State of Delaware to Berne, Canton of Berne in Switzerland; (v) the approval that Reorganized Sea Launch shall become a Swiss corporation (*Aktiengesellschaft* or "AG") and that the name of Reorganized Sea Launch shall be "Sea Launch AG" and its corporate purpose shall be that set forth in the Articles of Incorporation; (vi) the adoption and the filing of Articles of Incorporation; (vii) the entry into the New Investor Agreement; (viii) the entry by the New Investor, RSC Energia, Reorganized Sea Launch and the Creditor Trust into the Shareholder Agreement; (ix) the formation of a Creditor Trust and the entry into a Creditor Trust Agreement, including the appointment of a Creditor Trust Manager, who shall act as the intermediate shareholder for the Creditor Trust and to vote on its behalf; (x) the appointment of directors and officers of the Reorganized Debtors; (xi) the issuance and distribution of the New Common Stock to the New Investor and the Creditor Trust; (xii) the issuance of the Preferred Stock to RSC Energia and the funding of the Creditor Trust; (xiii) the cancelation and release of all Liens, and the further requirement that all Holder of Liens take all actions requested by the Debtors or the Reorganized Debtors to evidence their release; (xiv) entry by the Reorganized Debtors into the Exit Financing Credit Agreement and all related notes, guarantees, documents and agreements in connection therewith; (xv) the adoption by the Reorganized Debtors of any obligations owing under the SLEIP; (xvi) the termination of the Debtors' current boards of directors and the designation of the initial directors of the Reorganized Debtors; and (xvii) authorization to take all necessary corporate actions. The Plan provides adequate and proper means for its implementation, which satisfies Section 1123(a)(5) of the Bankruptcy Code.

- 17 -

(vi)    *Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))*.  The Articles of

Incorporation for the Reorganized Debtors, attached to the Plan Supplement as Exhibits 1(a) and

1(b), initially prohibit the issuance of nonvoting equity securities and otherwise comply with the

requirements of Section 1123(a)(6) of the Bankruptcy Code.

(vii)    *Selection of Officers, Directors and the Trustee (11 U.S.C. § 1123(a)(7))*.

Pursuant to Section 5.4(b) of the Plan and as set forth in the List of Directors and Officers for

Sea Launch and the Reorganized Debtors attached to the Plan Supplement as Exhibit 9, as

revised on July 19, 2010, eight (8) individuals have been identified to serve on the board of

directors of Reorganized Sea Launch and eight (8) executive officers have been designated.  As

required by Section 1123(a)(7) of the Bankruptcy Code, the Debtors and the New Investor have

selected the directors and officers in a manner consistent with the interests of creditors and

equity security holders and with public policy.  Section 5.8(c) the Plan and the Creditor Trust

Agreement provide for the selection of the Creditor Trust Manager.  The selection of the initial

directors and officers of the Reorganized Debtors and the Creditor Trust Manager, and the

procedures for the selection of their successors, are consistent with the interests of Holders of

Claims and Interests and public policy.

(viii)    *Additional Provisions of the Plan (11 U.S.C. § 1123(b))*.  The Plan

contains additional permissive provisions, including, without limitation:  (i) Section 7.1 of the

Plan provides for the assumption of certain executory contracts; (ii) Section 7.3 of the Plan

provides for the assignment of all contracts, agreements and leases entered into or assumed by

the Debtors after the Petition Date to the Reorganized Debtors or to an affiliate of the New

Investor in accordance with the terms of the New Investment Agreement; (iii) Section 8.1 of the

Plan Authorizes the Debtors and the Reorganized Debtors to object to the allowance of any

- 18 -

Claim and empowers them to allow or settle the claims without notice to any party or approval of, or notice to, the Bankruptcy Court; (iv) Sections 10.2(b) and 10.2(c) of the Plan provide for optional releases as of the Effective Date by the Debtors, the Reorganized Debtors and all Holders of Claims or Interests of, among other things, claims, rights and causes of action that the Debtors may have against, among others, the present and former officers and directors of the Debtors, and the attorneys, accountants, investment bankers, restructuring consultants and financial advisors of each of the Debtors; (v) Section 10.2(f) provides that all consideration exchanged under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and Interests of any nature whatsoever against the Debtors or any of their Estates, assets, properties or interest in property; and (vi) Section 10.2(g) of the Plan provides that the Debtors and their Estates shall retain their Causes of Action, and the Reorganized Debtors, as successors in interest to the Debtors and the Estates, may enforce, sue on settle or compromise any or all of the Causes of Action.  The injunctions and stays issued pursuant to Section 10.3 of the Plan preserve and enforce the releases granted by the Plan and are narrowly tailored to achieve that purpose.  Such provisions, and all other provisions of the Plan are consistent with Section 1123(b)(6) of the Bankruptcy Code, and not inconsistent with the applicable provisions of the Bankruptcy Code.

U.   <u>Compliance with Bankruptcy Rule 3016</u>.  The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The filing of the Disclosure Statement with the Court satisfies Bankruptcy Rule 3016(b).  The Plan describes in specific and conspicuous language all acts to be enjoined under the Plan and identifies all entities that are subject to the injunctions set forth in the Plan in accordance with Bankruptcy Rule 3016(c).

- 19 -

V.    <u>Compliance with Bankruptcy Rule 3018</u>. As set forth more fully in Paragraphs D, E, and F above, the solicitation of votes to accept or reject the Plan satisfies Bankruptcy Rule 3018. The Solicitation Materials described in Finding D, above, including the Plan, were transmitted to all creditors entitled to vote on the Plan (*i.e.*, Holders of Impaired Claims, other than those in Classes deemed to reject the Plan pursuant to Section 1126(g) of the Bankruptcy Code), sufficient time was prescribed for the Voting Parties to accept or reject the Plan, and the Solicitation Materials and related solicitation procedures comply with Section 1126 of the Bankruptcy Code, thereby satisfying the requirements of Bankruptcy Rule 3018.

W.    <u>Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Solicitation Order in transmitting the Plan, the Disclosure Statement, and the Solicitation Materials in soliciting and tabulating votes on the Plan and have otherwise complied with the provisions of Title 11, thereby satisfying Section 1129(a)(2) of the Bankruptcy Code.

X.    <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying Section 1129(a)(3) of the Bankruptcy Code. The Plan is designed to allow the Debtors to reorganize on a going concern basis while maximizing recoveries to their creditors. Moreover, the Plan itself, the process leading to its formation, and the support for the Plan received from the Voting Parties provides independent evidence of the Debtors' good faith. The Debtors, the New Investor and their predecessors, successors and assigns (whether by operation of law or otherwise) and their respective present and former affiliates and subsidiaries and each of their respective current and former members, partners, equity holders, officers, directors, employees, managers, shareholders, financial advisors, attorneys, accountants, investment bankers,

- 20 -

consultants, agents, and professionals, or other representatives have acted in "good faith" within the meaning of Section 1125(e) of the Bankruptcy Code, thus satisfying the "good faith" requirement of Section 1129(a)(3). Further, the Plan is the product of extensive, arm's length negotiations among the Debtors, the Committee, the Debtors' investors and partners, the Debtors' customers, the New Investor and each of their respective representatives, and reflects the results of these arm's length negotiations and embodies the best interests of all of the constituencies of the Debtors' Estates. In determining that the Plan has been proposed in good faith, this Court has examined the totality of the circumstances surrounding the formulation of the Plan.

    Y.    <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>. Any payment made or to be made by the Debtors or by any person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the Bankruptcy Cases, or in connection with the Plan and incident to the Bankruptcy Cases, has been disclosed to this Court. Any such payment made on a final basis before confirmation of the Plan is reasonable and any such payment to be fixed or approved on a final basis after confirmation of the Plan is subject to Court approval, as reasonable. The Plan therefore satisfies Section 1129(a)(4) of the Bankruptcy Code.

    Z.    <u>Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5))</u>. Pursuant to Section 1129(a)(5) of the Bankruptcy Code, the Debtors disclosed the identity and affiliations of the proposed directors and officers of the Reorganized Debtors in Exhibit 9, as revised, to the Plan Supplement. The manner in which the directors and officers were chosen was disclosed in Section 5.4(b) of the Plan. The appointment of the proposed directors and officers is consistent with the interests of the Holders of Claims and Interests and with public policy. The provisions

- 21 -

are consistent with the requirements of Section 1129(a)(5) and are in the best interests of Creditors and therefore, the Plan satisfies the requirements of Section 1129(a)(5) of the Bankruptcy Code.

AA.    No Rate Changes (11 U.S.C. § 1129(a)(6)).  The Plan does not provide for the change of any rates subject to the oversight of a governmental regulatory commission.  Thus, Section 1129(a)(6) of the Bankruptcy Code is inapplicable.

BB.    Best Interests Test (11 U.S.C. § 1129(a)(7)).  The Plan satisfies Section 1129(a)(7) of the Bankruptcy Code.  The Voting Declaration and the liquidation analysis attached as Exhibit C to the Disclosure Statement (the "Liquidation Analysis") indicate that each Holder of a Claim or Interest in an Impaired Class has either accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such Holder would receive or retain in a Chapter 7 liquidation.  The Liquidation Analysis, including the methodology used and estimations and assumptions made therein, and the evidence related thereto that was proffered at the Confirmation Hearing, (a) are persuasive and credible as of the dates such evidence was prepared, presented or proffered, (b) either have not been controverted by other persuasive evidence or have not been challenged, (c) are based upon reasonable and sound assumptions, and (d) provide a reasonable estimate of the liquidation value of the Debtors' Estates upon conversion to Chapter 7 proceedings.  Because each Holder of Claims or Interests in each Class has either (i) accepted the Plan, or (ii) will receive at least as much under the Plan as they would under a Chapter 7 liquidation, the Plan satisfies Section 1129(a)(7) of the Bankruptcy Code.

CC.    Acceptance or Rejection by Certain Classes (11 U.S.C. § 1129(a)(8)).  Each of Class 1—Priority Non-Tax Claims, Class 2—Other Secured Claims and Class 9—Subsidiary

- 22 -

Interests are not impaired under the Plan and are conclusively presumed to have accepted the

Plan under Section 1126(f) of the Bankruptcy Code. Each of Class 3—Current Trade Vendor

Unsecured Claims, Class 4—Non-Insider General Unsecured Claims, Class 5—Aker and Boeing

Claims, and Class 6—RSC Energia Claims, and Class 7—Yuzhmash and Yuzhnoye Claims has

voted to accept the Plan in accordance with Section 1126(c) of the Bankruptcy Code. Class 8—

Sea Launch Equity Interests are deemed to have rejected the Plan pursuant to Section 1126(g) of

the Bankruptcy Code because such Holders are not entitled to receive or retain any distribution

or property under the Plan on account of such Interests and, therefore, the Debtors were not

required to solicit votes to accept or reject the Plan from Holders of Class 8 Interests. Although

Section 1129(a)(8) has not been satisfied with respect to Class 8, the Plan may still be confirmed

because the Plan satisfies Section 1129(b) of the Bankruptcy Code with respect to such Class.

As set forth in the Voting Declaration, and as announced by Boeing, Aker and Yuzhmash at the

Confirmation Hearing with regard to their changed votes, the percentages of Holders of Claims

in the Classes entitled to vote on the Plan that voted to accept or reject the Plan are as follows:

| Plan Class of Impaired Creditors | % of Dollar Amount of Claims Voting to Accept the Plan | % of Number of Holders Voting to Accept the Plan | % of Dollar Amount of Claims Voting to Reject the Plan | % of Number of Holders Voting to Reject the Plan |
|---|---|---|---|---|
| Class 3 | $52,813.17 (85.61%) | 17 (94.44%) | $8,873,83 (14.39%) | 1 (5.56%) |
| Class 4 | $258,292,693.20 (94.85%) | 10 (90.91%) | $14,023,500.00 (5.15%) | 1 (9.09%) |
| Class 5 | $57,000,000.00 (100%) | 3 (100%) | $0.00 (0%) | 0 (0%) |
| Class 6 | $79,697,109.00 (100%) | 3 (100%) | $0.00 (0%) | 0 (0%) |
| Class 7 | $76,000,000.00 (100%) | 1 (100%) | $0.00 (0%) | 0 (0%) |

DD.    Treatment of Administrative, Priority and Tax Claims (11 U.S.C. § 1129(a)(9)).

The Plan provides for treatment of Allowed Claims entitled to priority pursuant to Section

- 23 -

507(a)(2)-(8) of the Bankruptcy Code in the manner required by Section 1129(a)(9) of the Bankruptcy Code.

EE.    <u>Acceptance By Impaired Class (11 U.S.C. § 1129(a)(10))</u>.  Class 3—Current Trade Vendor Unsecured Claims, Class 4—Customer or Trade Vendor Unsecured Claims, Class 5—Aker and Boeing Claims, Class 6—RSC Energia Claims and Class 7—Yuzhmash and Yuzhnoye Claims are each impaired and have each voted to accept the Plan in accordance with Sections 1126(c) of the Bankruptcy Code, thereby satisfying the requirements of Section 1129(a)(10) of the Bankruptcy Code.

FF.    <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  The Plan is feasible as the Debtors have demonstrated, through the projected financial information provided as Exhibit B to the Disclosure Statement (the "<u>Projections</u>") and evidence proffered or adduced at the Confirmation Hearing, that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtors, the Reorganized Debtors or any successor to the Reorganized Debtors.  The Plan therefore complies with Section 1129(a)(11) of the Bankruptcy Code.

GG.    <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>.  Section 12.15 of the Plan provides that the Debtors, or Reorganized Debtors as the case may be, will pay any fees due to the United States Trustee as they become due.  Section 12.7 of the Plan further provides that all fees payable pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid on the Effective Date.  Therefore the Plan meets the requirements of Section 1129(a)(12) of the Bankruptcy Code.

HH.    <u>Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>.  The Debtors have no obligation to pay for retiree benefits and therefore Section 1129(a)(13) is not applicable to the Plan.

- 24 -

II.    <u>Payment of Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>.    The Debtors are not required by any judicial or administrative order, or by statute, to pay any domestic support obligation and Section 1129(a)(14) is therefore inapplicable to the Plan.

JJ.    <u>Certain Payments by Individual Debtors (11 U.S.C. § 1129(a)(15))</u>.    The Debtors are not individuals and therefore Section 1129(a)(15) is inapplicable to the Plan.

KK.    <u>Transfers of property of a Debtor that is not a moneyed interest (11 U.S.C. § 1129(a)(16))</u>.    The Debtors are for-profit corporations or partnerships and Section 1129(a)(16) by its terms applies only to corporations and trusts that are *not* "moneyed, business, or commercial." Section 1129(a)(16) is therefore inapplicable to the Plan.

LL.    <u>No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b))</u>.    Holders of Interests in Class 8 are impaired and are deemed to have rejected the Plan.    The Debtors presented uncontroverted evidence at the Confirmation Hearing that the Plan does not discriminate unfairly and is fair and equitable with respect to Class 8 as required by the "cramdown" requirements of Section 1129(b)(1) of the Bankruptcy Code.    Thus, the Court may confirm the Plan notwithstanding the Debtors' failure to satisfy Section 1129(a)(8) of the Bankruptcy Code.    On the Effective Date, the Plan will be binding upon Holders of Interests in Class 8.

MM.    <u>Principal Purpose (11 U.S.C. § 1129(d))</u>.    The avoidance of Section 5 of the Securities Act of 1933 is not the principal purpose of the Plan, nor is the avoidance of taxes or any provision of applicable tax law a principal purpose of the plan, and no governmental unit has objected to the confirmation of the Plan asserting such avoidance.    The Plan, therefore, satisfies the requirements of Section 1129(d) of the Bankruptcy Code.

- 25 -

NN.   <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.   Based on the record in these Bankruptcy Cases, the Debtors and their directors, officers, employees, advisors and attorneys have acted in "good faith" within the meaning of Section 1125(e) of the Bankruptcy Code and Bankruptcy Rules in compliance with all of their respective activities related to the solicitation of acceptances of the Plan and their participation in the activities described in Section 1125 of the Bankruptcy Code and, accordingly, such parties are entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article X of the Plan. Based upon the Court's review of the amendments and modifications embodied in the Plan, no further solicitation or resolicitation is necessary.

OO.   <u>Satisfaction of Confirmation Requirements</u>.   The Plan satisfies the requirements for confirmation set forth in Section 1129 of the Bankruptcy Code.

PP.   <u>Energia Overseas Expense Reimbursement</u>.   The reimbursement of the reasonable fees, costs, and expenses incurred by Energia Overseas in connection with the Exit Financing is reasonable and appropriate and does not violate any provision of the Bankruptcy Code.

QQ.   <u>SLEIP</u>.   The Sea Launch Employee Incentive Plan, as adopted by the Reorganized Debtors by virtue of Section 5.7 of the Plan, is reasonable and justified under the facts and circumstances of these Bankruptcy Cases and is permissible under and does not violate any provision of the Bankruptcy Code including, without limitation, Section 503(c) of the Bankruptcy Code. The only remaining amount owing under the terms of the SLEIP is equal to $857,527.53 in the aggregate, of which $601,764 is owing to management, and no other amounts shall be due and payable thereunder.

RR.   <u>Retention of Jurisdiction</u>.   Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of

- 26 -

the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising out of, and related to, these Bankruptcy Cases and the Plan to the fullest extent permitted by law, including, but not limited to, the matters set forth in Article XI of the Plan.

## ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    <u>Solicitation and Disclosure</u>.    The Disclosure Statement contains adequate information in accordance with Sections 1125 and 1126 of the Bankruptcy Code. Votes for the acceptance or rejection of the Plan were solicited by the Debtors in good faith and in compliance with Sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, all other applicable provisions of the Bankruptcy Code and all other rules, laws and regulations, and the solicitation procedures and solicitation are hereby approved in all respects.

2.    <u>Confirmation of the Plan</u>. The Plan (as deemed amended by this Confirmation Order) is approved and confirmed under Section 1129 of the Bankruptcy Code. The terms of each of the documents in the Plan, including the Plan Supplement and any other exhibits or annexations thereto (subject to further modifications by the Debtors, which modifications shall not be inconsistent with the Plan or this Confirmation Order) , and any documents necessary in the judgment of the Reorganized Debtors or Energia Overseas to implement, effectuate and finalize the Plan, whether or not specifically contemplated in the Plan and the Plan Documents, are approved, are an integral part of the Plan, and are incorporated by reference into the Plan and this Confirmation Order.

- 27 -

3.    <u>Objections Withdrawn or Overruled</u>.  The Objections, and all other objections and responses to the Plan, if any, not heretofore withdrawn or resolved, or otherwise resolved at the Confirmation Hearing as announced on the record, are overruled in their entirety or deemed withdrawn with prejudice.

4.    <u>Plan Classification Controlling</u>.  The classifications of Claims and Interests for purposes of distributions under the Plan shall be governed solely by the terms of the Plan.  The classifications included in the Ballots tendered to or returned by the Holders of Claims for purposes of voting on the Plan (a) were included in the Ballots solely for purposes of voting on the Plan; (b) do not necessarily represent and in no event shall be deemed to modify or otherwise affect the actual classification of such Claims under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classification of such Claims under the Plan for distribution purposes; and (d) shall not be binding on the Debtors or on the Reorganized Debtors.

5.    <u>Provisions of Plan and Order Non-severable and Mutually Dependent</u>.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are non-severable and mutually dependent.

6.    <u>Record Closed</u>.  The record of the Confirmation Hearing is hereby closed.

7.    <u>Notice</u>.  As established by the Solicitation Mailing Affidavit, and as set forth in Paragraph F above, the Debtors provided good and sufficient notice of the Confirmation Hearing and the deadline for filing and serving objections to the Plan and Disclosure Statement, which notice is hereby approved.

8.    <u>Authorization and Direction to Act</u>.  In accordance with Section 1142 of the Bankruptcy Code, Section 213 of the Delaware Limited Liability Company Act, and any other

YCST01:9978930.1          068473.1001

applicable law of any jurisdiction, the Debtors, the Reorganized Debtors and each other appropriate party are hereby authorized and directed to take all steps and perform such acts as may be necessary, desirable or appropriate, to comply with, implement and effectuate the Plan, whether or not such action is specifically contemplated by the Plan, the Plan Documents or this Confirmation Order.

No further approval by the Bankruptcy Court shall be required for any action, transaction or agreement that the management of the Debtors, or the directors of the Reorganized Debtors determines is necessary or appropriate to implement the Investment Agreement and effectuate or consummate the Plan, whether or not such action, transaction or agreement is specifically contemplated in the Plan or the Confirmation Order. This Confirmation Order shall further constitute all approvals, consents and directions required for management of the Debtors or the Directors of the Reorganized Debtors to act consistent with the Plan and the New Investment Agreement, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan including each of the Corporate Transaction Reorganization steps, and any documents, instruments, or agreements, and any other acts and transactions referred to in or contemplated by the Plan and the Plan Supplement.

Unless specifically directed by this Confirmation Order, no further action of the Debtors or the Reorganized Debtors, or their respective members or partners, boards of directors, officers, managers or shareholders, including, but not limited to, the owners of the Sea Launch Equity Interests shall be necessary to perform any act to comply with, implement and effectuate the Plan. The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of any Debtor or Reorganized Debtor or

- 29 -

any officer, director, partner or member thereof as the case may be, and their agents, to take any and all actions necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan, the Plan Documents or this Confirmation Order.

Such actions shall include, without limitation, the transfer of Reorganized Sea Launch to Berne, Canton of Berne, Switzerland, the conversion to a Swiss corporation and the issuance of, the Creditor Trust Equity Interests, the Preferred Stock and the New Common Stock and the related filings and the entry into the New Investment Agreement and the Exit Financing Credit Agreement, and the parties are further authorized and directed to execute and deliver any instrument and perform any other act that is necessary for consummation of the Plan including, without limitation, all steps and acts set forth in Article V of the Plan. The authorized and mandated actions include, but are not limited to, the Corporate Reorganization Transaction Steps. The obligations under such executed and delivered Plan Documents shall constitute legal, valid, binding and authorized obligations of each of the respective parties thereto, enforceable in accordance with their terms without the need for any shareholder or board of directors' approval.

In particular, the Corporation Reorganization Transactions Steps that all parties are authorized and directed to take prior to or on the Effective Date include, but are not limited to:

(a)     with respect to Reorganized Sea Launch:

       (i)     the cancellation of all of the Sea Launch Equity Interests;

      (ii)     Execution of a resolution by RSC Energia as the Preferred Stock shareholder and the Creditor Trust as sole Common Stock shareholder (both as the transition shareholders of the Reorganized Debtors) encompassing each of the matters described in

- 30 -

subparagraphs (iii) – (xiii) below

(iii)     the transfer of Reorganized Sea Launch from Wilmington, Delaware, USA, to Berne, Canton of Berne, Switzerland in accordance with Sec. 18-213 of the Delaware Limited Liability Company Act (without continuance in Delaware, USA) (the "Migration") the domestication of Reorganized Sea Launch in Switzerland as a Swiss corporation (Aktiengesellschaft) under the name of Sea Launch AG and with the corporate purpose stated in the Articles of Incorporation Before Capital Increase;

(iv)     the filing of a Certificate of Transfer, upon the effectiveness of which Sea Launch shall cease to exist as a limited liability company of the State of Delaware;

(v)     the agreement of Reorganized Sea Launch that it may be served with process in the State of Delaware in any action, suit or proceeding for enforcement of any obligation of Sea Launch arising while it was a limited liability company of the State of Delaware except to the extent discharged pursuant to or under the Bankruptcy Code or released under the Plan, and the irrevocable appointment by Reorganized Sea Launch of the Secretary of State of Delaware as its agent to accept service of process in any such action, suit or proceeding;

(vi)     the adoption of the Articles of Incorporation Before Capital Increase of Reorganized Sea Launch as a Swiss corporation at the

- 31 -

time of its first registration with the Commercial Register of the Canton of Berne, Switzerland (the "Commercial Register") in Switzerland, in German and English (with the German version as the governing version) contained in the Plan Supplement which Articles contain, *inter alia,* the following provisions: (i) the new name of Reorganized Sea Launch; (ii) a statement of Reorganized Sea Launch's corporate purpose; and (iii) details of the rights and preferences of the New Common Stock and the Preferred Stock;

(vii)  the issuance, immediately prior to and effective upon registration in the Commercial Register of the new share capital of the Company of the CHF equivalent of USD 18,478,947 as of the time of the registration, divided into the CHF equivalent of USD 14,400,000 of Preferred Stock of CHF 10 par value each, fully paid in, to RSC Energia in exchange for each Allowed Partner Currency Control Claim held by RSC Energia and the CHF Franc Equivalent of up to USD 4,078,947.50 of New Common Stock of CHF 10 par value each, fully paid in, to the Creditors Trust in exchange for Allowed Partner Claims, which amounts shall be converted into CHF using the USD-CHF exchange rate set forth in the Wall Street Journal on the day that is two business days prior to the filing of such Articles of Incorporation Prior to Capital Increase (the "Exchange Rate");

(viii)  the election of the existing Chief Executive Officer of the

- 32 -

Company, Kjell Karlsen, who is residing outside Switzerland, as the transition Chairman of the Board, and Aiaz Bakasov, a Swiss resident, as new Board members; both with sole signatory power (the "Transition Directors");

(ix) the election of KPMG AG, Badenerstrasse 172, 8004 Zurich, Switzerland (responsible: Roger Neininger, Vice Chairman of the Board of Directors and Head of Audit) as statutory auditors for Reorganized Sea Launch, having their registered office in Switzerland (the "Auditors"), provided KPMG AG shall have accepted the mandate, or such other statutory auditor as may be nominated by the Transition Directors;

(x) the registration of the two Transition Directors and the Auditors in the Commercial Register;

(xi) an ordinary share capital increase immediately after registration of Reorganized Sea Launch in the Commercial Register, in the amount of the CHF equivalent of up to USD 81,578,947.50-(the "New Investment Capital Increase") CHF 10 par value (for a total share capital of the CHF equivalent of 95,978,947.50), divided into up to the CHF equivalent of up to USD 81,578,947.50 of New Common Stock (equal to the New Investor Equity Amount) of CHF 10 par value each, fully paid in, to Energia Overseas in exchange for (i) the conversion as required by the New Investor of the principal amount of money borrowed by the Debtors-in-

- 33 -

Possession under the Bankruptcy Court approved DIP Facility Agreement currently in the amount of USD 30,000,000 and (ii) a cash contribution of the equivalent in CHF of the New Investment Amount of USD 125,000,000, all amounts to be converted at the Exchange Rate;

(xii)  the adoption of the Articles of Incorporation After Capital Increase of Reorganized Sea Launch (the Swiss corporation) after such share capital increase encompassing (i) the increased and, thus, "final" issued share capital, (ii) authorized share capital in the total amount of 50% of the then issued share capital, and (iii) conditional share capital in the total amount of 50% of the then issued share capital, all amounts to be completed using the Exchange Rate;

(xiii)  the election of the Directors of Reorganized Sea Launch set forth on Exhibit 9 of the Plan Supplement.

(b)  With respect to Sea Launch L.P.:

(i)  the approval of an Assignment and Assumption Agreement (the "Sea Launch Assignment Agreement") for Sea Launch L.P., the Assignor, by the Reorganized Sea Launch as general partner of Sea Launch L.P. and by the limited partners;

(ii)  the approval of the Sea Launch Assignment Agreement for Reorganized Sea Launch as Assignee;

(iii)  the execution and delivery of the Sea Launch Assignment

- 34 -

Agreement by and among the parties thereto;

(iv)    the execution of new time charter to Reorganized Sea Launch for each of the Sea Launch Commander and the Odyssey and, to the extent necessary, related Deeds of Subrogation;

(v)    the sending of a Notice of Assignment to contract counterparties, and, where required, obtain consent to assignment by counterparties;

(c)    with respect to Platform Limited Partnership and Platform Company LDC:

(i)    the approval of an Assignment and Assumption Agreement (the "Platform Assignment Agreement") for Platform Limited Partnership, the Assignor, by Platform Company LDC as general partner of Platform Limited Partnership and by Sea Launch Limited Partnership as Platform LP's limited partner;

(ii)    the approval of (i) the Platform Assignment Agreement for Platform Company LDC as Assignee and (ii) an amendment to the Articles of Association of Platform Company LDC to make it a single purpose company whose sole object is the ownership and operation of Liberian registered vessels, by Sea Launch Limited Partnership as 100% shareholder of Platform Company LDC (the "Platform LDC Amendment"), and authorization of (iii) the filing and of the Platform LDC Amendment;

(iii)    the execution and delivery of the Platform Assignment Agreement and related required documentation in connection with transfer of

- 35 -

ownership of the vessel named "Odyssey" by and among the parties thereto;

(iv)   the sending of a Notice of Assignment to contract counterparties, and, where required, obtaining consent to assignment by counterparties;

(v)   the registration of Platform Company LDC as the new owner of "Odyssey" with the LISCR;

(d)   with respect to Sea Launch ACS Limited Partnership and Sea Launch ACS Limited

(i)   the approval of an Assignment and Assumption Agreement (the "ACS Assignment Agreement") for Sea Launch ACS Limited Partnership, the Assignor, by Sea Launch Limited Partnership as limited partner of Sea Launch ACS Limited Partnership and by Sea Launch ACS Limited as Sea Launch ACS Limited Partnership's general partner;

(ii)   the execution and delivery of the ACS Assignment Agreement and related required documentation in connection with asset and liability transfer other than ownership of the vessel named "Sea Launch Commander" already held by Sea Launch ACS Limited, by and among the parties thereto; and

(iii)   the sending of a Notice of Assignment to contract counterparties, and, where required, obtaining consent to assignment by counterparties.

- 36 -

9.    <u>Binding Effect</u>.  In accordance with Section 1141 of the Bankruptcy Code, the Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, any person acquiring or receiving property under the Plan, any party to a contract with the Debtors, any lessor or lessee of property to or from the Debtors and any Holder of a Claim against or Interest in the Debtors, whether or not such Claim or Interest is Impaired under the Plan and whether or not such Holder will receive or retain any property or interest in property under the Plan, has filed a Proof of Claim in the Bankruptcy Cases or failed to vote to accept or reject the Plan or affirmatively voted to reject the Plan, and the respective successors and assigns, if any, of the foregoing.  Pursuant to Sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan, and all documents related to the Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.  The rights, benefits, and obligations of any Debtor, Reorganized Debtor, Holder of a Claim or Interest or any other person or entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Debtor, Reorganized Debtor, Holder of a Claim or Interest or any other person or entity.

10.    <u>Vesting of Assets Free and Clear of Claims and Interests</u>.  Upon Confirmation of the Plan, and except as otherwise provided in the Plan, the Plan Documents or the Confirmation Order, all property of the Estates of the Debtors, including all Causes of Action (including Creditor Trust Actions unless expressly assigned to the Creditor Trust) and any property acquired by the Debtors or the Reorganized Debtors under or in connection with this Plan, shall vest in the Reorganized Debtors free and clear of all Claims, Liens, charges, other encumbrances and Interests.  Such vesting does not constitute a voidable transfer under the Bankruptcy Code or

- 37 -

applicable non-bankruptcy law.   On and after the Effective Date, the Debtors and the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property and compromise or settle any Claims without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than restrictions expressly imposed by this Plan or the Confirmation Order.   Without limiting the foregoing, the Reorganized Debtors may pay the charges that they incur on or after the Effective Date for professionals' fees, disbursements, expenses or related support services without application to the Bankruptcy Court.

11.    Cancellation of DIP Facility Claims.   On the Effective Date, except as otherwise provided in the Plan or herein, in full satisfaction, settlement, release, and discharge of and in exchange for each DIP Facility Claim, all Allowed DIP Facility Claims shall, at the election of the DIP Lender, either (a) be paid in full and in Cash from the proceeds of the Exit Financing, or (b) be converted into New Common Stock to the extent requested by the DIP Lender in accordance with the DIP Facility Agreement, and, in each case, all commitments under the DIP Facility Agreement shall be canceled.   Notwithstanding anything to the contrary herein, the liens and security interests securing the DIP Facility Claims shall continue in full force and effect until such time as the Allowed DIP Facility Claims have been paid in full and in Cash or converted into New Common Stock, after which such liens and security interests shall be deemed canceled.

12.    Release of Liens.   Upon satisfaction in full, pursuant to the terms of the Plan, of the DIP Facility Claims, if any, on the Effective Date, any liens securing the DIP Facility Claims shall be deemed irrevocably released and the persons holding such DIP Facility Claims shall release any collateral or other property of the Debtors held by such persons and shall take such actions as may be reasonably requested by the Reorganized Debtors or any lender or prospective

- 38 -

lender of the Reorganized Debtors to evidence the release of such liens, including, without limitation, the execution, delivery, and filing or recording of such releases as may be reasonably requested by the Reorganized Debtors.

13.    Cancellation of Outstanding Interests.    As of the Effective Date, except as otherwise provided for in the Plan or herein, all Sea Launch Equity Interests shall be canceled, and the obligations of the Debtors under any stockholder agreements, registration rights agreements, repurchase agreements and repurchase arrangements, or other instruments or documents evidencing or creating any obligations of the Debtors with respect to such Sea Launch Equity Interests, shall be rejected and discharged; provided, however, that notwithstanding the foregoing or Paragraph 8 of this Confirmation Order to the contrary, such rejection and discharge of the Debtors' obligations pursuant to this subsection shall not affect or impair the existence, validity and enforceability of any such stockholders agreement, registration rights agreement, repurchase agreement and repurchase arrangement, or other such instrument or document, or any rights, claims, or defenses thereunder, with respect to and among non-Debtor entities.  Prior to or as of the Effective Date, all Sea Launch Equity Interests that have been authorized to be issued but that have not been issued, if any, shall be deemed canceled and extinguished without any further action of any party.

14.    Issuance of New Instruments.    All New Common Stock, Preferred Stock, and Creditor Trust Equity Interests issued pursuant to the Plan shall, upon issuance, be duly authorized and validly issued, fully paid and non-assessable, and the conditions precedent to the issuance thereof shall be deemed satisfied.

15.    Articles of Incorporation, Shareholders' Agreement, and Creditor Trust Agreement.  Prior to or on the Effective Date, the Articles of Incorporation (in the form of the

- 39 -

Articles of Incorporation Before Capital Increase and the Articles of Incorporation After Capital Increase), Shareholders' Agreement and Creditor Trust Agreement substantially in the form attached as Exhibits 1(a), 1(b), 3, and 6 to the Plan Supplement shall be made effective. After the Effective Date, the Reorganized Debtors may amend and restate the Articles of Incorporation, Shareholders' Agreement and Creditor Trust Agreement as permitted by the constituent documents of such Reorganized Debtors and as permitted by applicable law.

16.    <u>Corporate Action</u>.  Prior to, on, or after the Effective Date, as appropriate, all matters expressly provided for under the Plan that would otherwise require approval of the partners, shareholders, directors, members or managers of one (1) or more of the Debtors or Reorganized Debtors shall be deemed to have occurred and shall be in effect prior to, on, or after the Effective Date (as appropriate) pursuant to the applicable general corporation or other applicable law of the jurisdictions in which the Debtors or Reorganized Debtors are incorporated without any requirement of further action by such partners, shareholders, directors, members or managers of the Debtors or Reorganized Debtors.  Specifically, and without limitation of the foregoing, Energia Overseas is deemed to have received the requisite approval of the partners, shareholders, directors, members and managers of the Debtors and Reorganized Debtors under the applicable laws of the State of Delaware or the laws of any other applicable jurisdiction, and all corporate and partnership actions and authorizations required to be taken under the laws of the State of Delaware shall be deemed to have occurred.

17.    <u>SLEIP</u>.  The Sea Launch Employee Incentive Plan and the payments thereunder, as contemplated by Section 5.7 of the Plan and determined in accordance with the provisions of the SLEIP, are hereby approved.

- 40 -

18.    <u>New Investment Agreement</u>. The terms of the New Investment Agreement (in substantially the form filed with the Bankruptcy Court) and any related agreements contemplated in connection therewith are hereby approved. Sea Launch and Sea Launch LP are hereby authorized and directed to enter into the New Investment Agreement with Energia Overseas and to execute and deliver, to the satisfaction of Energia Overseas, all agreements, documents, instruments and certificates relating thereto and to perform their obligations thereunder, without the further approval of this Court or the Debtors, the Reorganized or their respective members, partners, boards of directors, officers, managers or shareholders, including, but not limited to, the owners of the Sea Launch Equity Interests, or any other entities or persons. Provided that Energia Overseas deems all conditions, representations, warranties and pre-closing covenants to have been satisfied, the New Investment Agreement, once executed, shall be in full force and effect and valid, binding and enforceable in accordance with its terms. Sea Launch and Sea Launch LLP shall deliver all shares purchased by Energia Overseas free and clear of all Liens other than those Liens created or approved by the New Investor. The guaranties, mortgages, pledges, liens and other security interests granted pursuant to the New Investment Agreement are granted in good faith as an inducement to Energia Overseas to purchase the shares of the Reorganized Company and shall be, and hereby are, deemed not to constitute a fraudulent transfer or conveyance and shall be unavoidable for all purposes.

19.    <u>Exit Financing Credit Agreement</u>. The terms of the Exit Financing Credit Agreement and any related agreements, and the loans and other extensions of credit contemplated in connection therewith, are hereby approved. The Reorganized Debtors are hereby authorized and directed to enter into the Exit Financing Credit Agreement with Energia Overseas and to execute and deliver, to the satisfaction of Energia Overseas, all agreements,

- 41 -

documents, instruments and certificates relating thereto and to perform their obligations thereunder, without the further approval of this Court or the Debtors, the Reorganized or their respective members, partners, boards of directors, officers, managers or shareholders, including, but not limited to, the owners of the Sea Launch Equity Interests, or any other entities or persons. Provided that Energia Overseas deems all conditions, representations, warranties and pre-closing covenants to have been satisfied, the Exit Financing Credit Agreement, once executed, shall be in full force and effect and valid, binding and enforceable in accordance with its terms. The obligations of the Reorganized Debtors under the Exit Financing Credit Agreement shall be secured by valid, binding and enforceable liens on the collateral specified in the relevant security agreements. The guaranties, mortgages, pledges, liens and other security interests granted pursuant to the Exit Financing Credit Agreement are granted in good faith as an inducement to Energia Overseas to provide credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent transfer or conveyance, and shall be unavoidable for all purposes.

20.    <u>Exit Financing Credit Agreement – Effect of Reversal on Appeal</u>.  Any and all credit provided to the Reorganized Debtors under the Exit Financing Credit Facility shall be, and hereby is, deemed to have been provided in good faith and any reversal or appeal of this Confirmation Order or the provisions of this Confirmation Order approving the provision of credit under the Exit Financing Credit Agreement or the granting of liens to Energia Overseas, will not affect the validity of any debt incurred by the Reorganized Debtors pursuant to this Confirmation Order, the Plan and/or the Exit Financing Credit Agreement, unless the authorization and incurring of such debt, or the granting of such priority or lien, has been stayed pending appeal, and written notice thereof has been given to the Debtors and Energia Overseas.

- 42 -

21.    <u>Litigation Claims—Retention of Causes of Action</u>.  Except as otherwise provided expressly in the Plan, in this Confirmation Order, or in any document, instrument, settlement agreement approved by the Court, release or other agreement entered into in connection with the Plan, the Debtors, on behalf of themselves and their Estates, and the Reorganized Debtors have retained and reserved all rights to commence, pursue, settle or compromise, or decline to do any of the foregoing, as appropriate, any and all Causes of Action, which expressly include Chapter 5 Causes of Action and any actions against Space Launch Services, LLC and The Robert A. and Virginia Heinlein Prize Trust, whether arising prior to or after the Petition Date, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in these Bankruptcy Cases.  The failure to specifically list in the Disclosure Statement or in the Plan any potential or existing Causes of Action generally or specifically does not limit the rights of the Debtors or the Reorganized Debtors to pursue such action.  Nothing in this paragraph shall be deemed to affect the validity of any release or waiver by the Debtors set forth in the Plan or any Final Order.

22.    <u>Distributions and Claims Reconciliation</u>.  The provisions of Articles VI and VIII of the Plan governing distributions and the resolution and treatment of disputed Claims and Interests under the Plan are hereby approved in all respect and found to be fair and reasonable. Except as otherwise provided in the Plan, on and after the Effective Date, the Reorganized Debtors shall have sole responsibility and authority for administering, disputing, objecting to, compromising and settling, or otherwise resolving and making distributions (if any) with respect to all Claims, including all Administrative Expense Claims, without notice to any other party or approval of, or notice to the Court.

- 43 -

23.    <u>Assumption and Rejection of Executory Contracts</u>.  Through Section 7.1 of the Plan and this Confirmation Order, except as set forth in the Notice of Assumption or as otherwise provided herein, all of the Debtors executory contracts and unexpired leases are deemed rejected in accordance with Sections 365 and 1123 of the Bankruptcy Code unless such executory contract or unexpired lease (i) was previously assumed or rejected by the Debtors, (ii) previously expired or terminated pursuant to its own terms, (iii) is subject to a pending motion to assume or reject, or (iv) is listed on the Notice of Assumption or any amendment thereto.  The final Notice of Assumption, as has been amended from time to time, is attached hereto as Exhibit A.  Entry of this Confirmation Order shall constitute approval or such rejections and assumptions, as applicable, pursuant to Sections 365(a) and 1123 of the Bankruptcy Code and each executory contract assumed shall revest in and be fully enforceable by the respective Reorganized Debtors in accordance with its terms, except as modified by the provisions of the Plan or any order of the Court authorizing and providing for its assumption or applicable federal law.

24.    <u>Bar Date for Rejection Claims</u>.  Pursuant to the Bar Date Order, Claims arising out of the rejection of executory contracts or unexpired leases rejected as of the Confirmation Date pursuant to the Plan must be filed no later than thirty (30) days after the entry of the Confirmation Order effectuating the rejection.

25.    <u>Cure of Defaults Under Assumed Executory Contracts</u>.  For those contracts or leases identified as being assumed in the New Investment Agreement and listed in the Notice of Assumption, pursuant to Section 7.3 of the Plan, or as may have been previously assumed by the Debtors with such assumption having been approved by a Final Order of this Court, the Debtors shall pay the cure amounts (the "<u>Cure Amount</u>") set forth in the schedule (the "<u>Cure Payment</u>

- 44 -

<u>Schedule</u>") attached to the Notice of Assumption, or in such other Final Order authorizing such assumption, as soon as practicable after the Effective Date or at such other time as the Debtors and the non-Debtor parties to such executory contracts shall agree. With respect to any non-Debtor party to an executory contract or unexpired lease listed in the Notice of Assumption, but who failed to assert an objection to the assumption of their contract or lease or to object to the Cure Amount are hereby deemed to have (i) waived any claim of default such parties may have against the Debtors under the applicable executory contracts or unexpired leases, and (ii) consented to the assumption of the applicable executory contracts or unexpired leases to which they are a party with the Debtors, and the assignment of such executory contracts or unexpired leases to the Reorganized Debtors, or Energia Overseas as the case may be, in accordance with and pursuant to the Plan and this Confirmation Order.

26.     <u>Assumption, Assignment, and Cure of Certain Indemnity Agreements</u>.  With respect to the prepetition and postpetition indemnity agreements with The Standard Steamship Owners' Protection and Indemnity Association (Bermuda) Limited (the "<u>Club</u>") detailed in Paragraph P above, pursuant to Sections 7.1 and 7.2 of the Plan, and conditioned on the receipt by the Club of the $95,000 Cure Amount with respect to the 2008 Policy, the 2008 and 2009 Policies are hereby deemed to be assumed by the Debtors and assigned to Reorganized Sea Launch, or Energia Logistics as the case may be, effective as of the Effective Date.  The final payment due under the 2009 Policy shall be made by Reorganized Sea Launch (or Energia Logistics) pursuant to the terms of the 2009 Policy in November 2010.  Pursuant to Section 7.3 of the Plan, and conditioned on the receipt by the Club of the $95,000 Cure Amount with respect to the 2008 Policy, the 2010 Policy is hereby deemed to be assumed by the Debtors and assigned to Reorganized Sea Launch, or Energia Logistics as the case may be, effective as of the Effective

YCST01:9978930.1          068473.1001

Date.  All terms and conditions of the 2008, 2009 and 2010 Policies, and The P&I Defence Rules and Correspondents from 2004 through 2007 to which Sea Launch LP and the Club are parties, shall remain in full force and effect following the Effective Date.

27.    <u>Section 1145 and Other Securities Law Exemptions</u>.  Pursuant to, and to the fullest extent permitted under, Section 1145 of the Bankruptcy Code, Section 4(2) of the Securities Act of 1933, and any other applicable state or federal securities law, the offer, issuance, distribution, conversion, transfer or exchange of the New Common Stock or the Creditor Trust Equity Interests (to the extent such contingent value rights are a security) shall be exempted from the registration requirements of the Securities Act of 1933 and of any similar state securities or "blue sky" laws to the extent otherwise appropriate

28.    <u>Exemption from Certain Taxes</u>.  Pursuant to Section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer or exchange of debt, notes or equity securities or other interest under or in connection with or in contemplation of the Plan;  (b) the creation, modification, consolidation, or recording of any mortgage, deed of trust, lien, pledge or other security interest, or the securing of additional indebtedness by such other means under or in connection with the Plan; (c) the making or assignment of any lease or sublease under or in connection with the Plan; or (d) the making or delivery of any deed or other instrument of transfer under or in connection with the Plan including, without limitation, merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, and transfers of tangible property, will not be subject to any stamp tax, document recording tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, FERC filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents

- 46 -

shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. The Debtors are hereby authorized to deliver a notice or short form of this Confirmation Order to any state recording officer to the effect that such officer must accept for filing such security interests without charging any stamp tax or other similar tax.

29.    <u>Exculpation</u>. Unless otherwise elected by a holder of a claim or interest under the Plan, from and after the Effective Date, (i) the Debtors, (ii) the Debtors' present and former Board representatives, (iii) the present and former officers and employees of the Debtors who were serving in such capacity on or after the Petition Date, (iv) the Chief Restructuring Officer of the Debtors and his employer, Buccino & Associates, Inc., (v) RSC Energia, (vi) the New Investor, (vii) the Committee and its members (but only in their capacity as members of the Committee), and (viii) any attorneys, financial advisors, investment bankers, accountants, consultants, or other professionals of the parties described in clauses (i) through (vii) hereof; provided, however, that such attorneys and professional advisors shall only include those that provided services related to the Debtors, the Bankruptcy Cases, the Plan, and the transactions contemplated by the Plan (collectively, the "<u>Released Parties</u>") shall neither have nor incur any liability to, or be subject to any right of action by, any Holder of a Claim or Interest, or any other party in interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Bankruptcy Cases, formulating, negotiating or implementing the Plan, the solicitation of acceptances of the Plan, the pursuit of approval of the Disclosure Statement and confirmation of the Plan, the confirmation of the Plan, the Plan Documents, the consummation of the Plan or the administration of the Plan or

- 47 -

the property to be distributed under the Plan, or the restructuring transactions contemplated hereunder; provided, however, that the foregoing provision shall not apply to an act or omission that is determined by a Final Order of the Bankruptcy Court to have constituted willful misconduct or gross negligence. Any of the Released Parties shall be entitled to rely, in all respects, upon the advice of counsel with respect to their duties and responsibilities under the Plan.

30.    <u>Releases by the Debtors</u>. As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the Debtors and Reorganized Debtors in their individual capacities and as debtors-in-possession on behalf of each of the Debtors' Estates will be deemed to release and forever waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise against the Released Parties, that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors, the Bankruptcy Cases, the Plan or the Disclosure Statement, or any document or agreement related thereto; <u>provided</u>, <u>however</u>, that the foregoing provision shall not apply to an act or omission that is determined by a Final Order of the Bankruptcy Court to have constituted willful misconduct or gross negligence.

31.    <u>Releases by Holders of Claims and Interests</u>. As of the Effective Date, to the fullest extent permitted by law, each Holder of a Claim or Interest that did not otherwise elect in accordance with voting on the Plan, shall in consideration for the obligations of the Debtors and the Reorganized Debtors under the Plan and the Cash, the securities, including the Call Option

- 48 -

under the Exit Financing Commitment Letter, the New Investment Agreement and the Reorganized Sea Launch Shareholders Agreement, the Exit Financing Credit Agreement, contracts, instruments, releases and other agreements or documents to be delivered in connection with the Plan, be deemed to have forever released, waived and discharged all claims, demands, debts, rights, causes of action or liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, relating to the Debtors, the Reorganized Debtors, the Bankruptcy Cases, the Plan or the Disclosure Statement, the Plan Documents, or the restructuring transactions contemplated thereby, existing as of the Effective Date or thereafter that are based in whole or part on or connected or related to any act, omission, transaction event, or other occurrence taking place on or prior to the Effective Date, against the Released Parties. With regard to the foregoing releases, no release of the Debtors or Reorganized Debtors shall be deemed to release any third party including, without limitation, the Debtors' or Reorganized Debtors' insurers. Any Holder of a Claim or Interest who does not elect to offer the Releases described in this paragraph, to the extent receiving any securities pursuant to the Plan, shall not be entitled to any direct or indirect benefits from the Call Option under the Exit Financing Commitment Letter and New Investment Agreement.

32.     <u>Injunction Related to Exculpation and Releases</u>. All Persons that have held, hold or may hold any liabilities released or exculpated pursuant to Section 10.2 of the Plan will be permanently enjoined from taking any of the following actions against any Released Party or its property on account of such released liabilities: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, directly or

- 49 -

indirectly, any judgment, award, decree or order; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien; (iv) except as provided herein, asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due a Released Party; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or this Confirmation Order.

33.    Survival of Indemnification Obligations.    The obligations of the Debtors to indemnify individuals who, as of the Petition Date or thereafter, are or were directors, officers, agents, employees and representatives, pursuant to certificates or articles of incorporation, by-laws, contracts and/or applicable statutes, in respect of all actions, suits and proceedings against any of such officers, directors, agents, employees and representatives, based upon any act or omission related to service with or for or on behalf of the Debtors, other than grossly negligent or willful conduct, shall not be discharged or Impaired by, and shall survive, confirmation or consummation of the Plan and shall be assumed by the other Reorganized Debtors.

34.    Discharge of Claims and Termination of Interests.    Except as otherwise provided in the Plan or this Confirmation Order, all consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims and Interests (other than Unimpaired Claims under the Plan) of any nature whatsoever against the Debtors or any of their Estates, assets, properties or interest in property, and regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests. Upon the Effective Date, the Debtors shall be deemed discharged and released under Section 1141(d)(1)(A) of the Bankruptcy Code from any and all Claims and Interests (other than Unimpaired Claims), including, but not limited to, demands and liabilities

YCST01:9978930.1          068473.1001

that arose before the Effective Date, and all debts of the kind specified in Section 502(g), 502(h) or 502(i) of the Bankruptcy Code, and the Sea Launch Equity Interests. With regard to the foregoing discharge and release, no discharge or release of the Debtors or Reorganized Debtors shall be deemed to discharge or release any third party including, without limitation, the Debtors' or Reorganized Debtors' insurers.

35.    <u>Release of Boeing and Aker by Holders of Claims and Interests</u>. In accordance with the Boeing Aker UCC Settlement Agreement, as of the Effective Date, to the fullest extent permitted by law, each Holder of a Claim or Interest that did not otherwise elect in accordance with voting on the Plan, shall, in consideration for Boeing and Aker agreeing to the Boeing Aker UCC Settlement Agreement, the adequacy of which is hereby confirmed, be deemed to have forever released, waived and discharged all claims, demands, debts, rights, causes of action or liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, relating to the Debtors, the Reorganized Debtors, the Bankruptcy Cases, the Plan or the Disclosure Statement, the Plan Documents, or the restructuring transactions contemplated thereby, existing as of the Effective Date or thereafter that are based in whole or part on any act, omission, transaction event, or other occurrence taking place on or prior to the Effective Date, against Boeing and Aker, provided that the releases set forth in this Paragraph shall not contradict Section 10.5 of the Plan.

36.    <u>Injunction</u>. Except as otherwise provided in the Plan or this Confirmation Order, from and after the Effective Date all Persons who have held, hold or may hold Claims (other than Unimpaired Claims under the Plan) against or Interests in the Debtors, are (i) permanently enjoined from taking any of the following actions against the Estate(s), or any of their property,

- 51 -

on account of any such Claims or Interests and (ii) permanently enjoined from taking any of the following actions against any of the Debtors, the Reorganized Debtors, RSC Energia, Energia Overseas or their property on account of such Claims or Interests:    (A) commencing or continuing, in any manner or in any place, any action, or other proceeding; (B) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting or enforcing any lien or encumbrance; (D) asserting any right of setoff, subrogation or recoupment of any kind and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan and this Confirmation Order, including, without limitation, Section 10.5 of the Plan.  By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim will be deemed to have specifically consented to the injunctions set forth in Section 10.3 of the Plan.

37.    Term of Bankruptcy Injunction or Stays.  All injunctions or stays provided for in the Bankruptcy Cases under Section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

38.    Exception to Releases.  Nothing in the Plan, including, but not limited to, Sections 10.2 and 10.3 of the Plan, the Confirmation Order, including, but not limited to, Finding Paragraph N, and Decretal Paragraphs 29-36, and 39-40, or any other document in connection with such documents shall release or discharge the claims, if any, of The Boeing Company, Boeing Commercial Space Company, Kvaerner Sea Launch Limited, Kvaerner Sea Launch U.S., Inc., Aker Maritime Finance AS, Kvaerner AS, Aker ASA, S.P. Korolev Rocket and Space Corporation Energia, KB Yuzhnoye, and PO Yuzhny Mashinostroitelny Zavod Production

- 52 -

Association, against entities other than the Debtors; provided, however, that nothing contained in this paragraph or Section 10.5 of the Plan shall constitute an acknowledgement by any party of any right or fact with respect to any claims; and provided, further, however, that nothing in this paragraph shall affect the releases provided by The Boeing Company, Boeing Commercial Space Company, Kvaerner Sea Launch Limited, Kvaerner Sea Launch U.S., Inc., Aker Maritime Finance AS, and/or Kvaerner AS, Aker ASA pursuant to the Boeing Aker UCC Settlement Agreement.

39.     Injunction Against Certain Acts.  From and after entry of this Confirmation Order, all Persons who have held, hold or may hold Claims against or interests in the Debtors are enjoined from taking any of the following actions against the Debtors, their Estates, the Plan Administrator, the Official Creditors' Committee, and/or the Plan Committee:  (i) commencing or continuing, in any manner or any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; and (iv) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude any Person from exercising their rights pursuant to and consistent with the terms of the Plan and/or this Confirmation Order.  Notwithstanding anything to the contrary set forth in the Plan, Creditors' rights of setoff and recoupment are preserved, and the injunctions referenced herein shall not enjoin the valid exercise of such rights of setoff or recoupment.

40.     Discharge of Debtors.  Pursuant to Section 1141(d) of the Bankruptcy Code, and except as otherwise provided in this Confirmation Order, all distributions and rights afforded under the Plan and the treatment of Claims and Interests under the Plan shall be, and shall be

YCST01:9978930.1          068473.1001

deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, and of all Interests, or other rights of a Holder of an Interest, related to any of the Debtors or the Reorganized Debtors or any of their respective assets, property and Estates, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, or Interests or other rights of a Holder of an Interest, and upon the Effective Date, (i) the Debtors and the Reorganized Debtors shall be deemed discharged under Section 1141(d)(1)(A) and any other applicable section of the Bankruptcy Code and released from any and all Claims or other obligations, suits, judgment, damages, debts, rights, remedies, causes of action or liabilities, or any Interests or other rights of a Holder of an Interest, or any nature whatsoever, including, without limitation, liabilities that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a Proof of Claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is Allowed under Section 502 of the Bankruptcy Code (or is otherwise resolved), or (c) the Holder of a Claim based upon such debt voted to accept or reject the Plan (or failed to vote) and (ii) all Interests (other than Subsidiary Interests) shall be deemed terminated and canceled for all purposes.

As of the Effective Date, except as expressly provided in the Plan or this Confirmation Order, all Persons shall be precluded from asserting against each of the Debtors, the Debtors' respective assets, property and Estates, the Reorganized Debtors and their respective assets or

- 54 -

property any other or further Claims, or any other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities of any nature whatsoever, or Interests or other rights of a Holder of an Interest, relating to any of the Debtors or the Reorganized Debtors or their respective Estates based upon any act, omission, transaction or other activity of any nature that occurred prior to the Effective Date. In accordance with the foregoing, except as expressly provided in the Plan, this Confirmation Order shall be a judicial determination, as of the Effective Date, of the discharge of all such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities, or Interests or other rights of a Holder of an Interest and termination or all rights of any Holder of an Interest in the Debtors and all Interests (except for Subsidiary Interests), pursuant to Sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void and extinguish any judgment obtained against the Debtors or the Reorganized Debtors or any of their respective assets, property and Estates at any time, to the extent such judgment is related to a discharged Claim, debt or liability or terminated right of any Interest Holder in any of the Debtors or a terminated Interest.

41.    <u>Continuing Estimated Claim of the IRS</u>. Notwithstanding the foregoing, to the extent that any Governmental Unit asserts an Allowed Section 1446 Claim, such an Allowed Section 1446 Claim shall be addressed and treated as a Priority Tax Claim and shall be treated as follows:

> a.    pursuant to Section 502(c) of the Bankruptcy Code, the aggregate amount of such claims shall not exceed, and shall be estimated for purposes of distribution, voting and all other purposes under the Plan, the amount of $250,000;

- 55 -

b.    at the option of the Reorganized Debtors, such amount referred to in Section 3.1(c)(ii)(a) of the Plan shall either be held in reserve in the Creditor Trust for and on behalf of such Governmental Unit(s) or shall be paid by the Reorganized Debtors pursuant to the provisions of Section 3.1(c)(i) of the Plan;

c.    any such Governmental Unit asserting a Section 1446 Claim is hereby enjoined from enforcing or making any claim for any penalty, interest or attorney's fees in respect of such withholding liability arising on or before the Effective Date of the Plan and from the collection of such Claim other than against the Reorganized Debtors or the successor to the Estate for this limited purpose, the Creditor Trust, as holder of the reserve. Any such Governmental Unit shall be limited in its rights to seek Bankruptcy Code Section 502(j) relief and shall be required to seek such relief in respect of any such Section 1446 Claim estimated under Bankruptcy Code Section 502(c) no later than 20 days after the entry of the Confirmation Order.

42.    <u>Failure to Timely File Proof of Claim</u>. Any person or entity (including, without limitation, any individual, partnership, joint venture, corporation, limited liability company, estate, trust or governmental unit) that was required to file a timely proof of claim in the form and manner specified by the Bar Date Order and failed to do so on or before the General Bar Date or the Governmental Unit Bar Date, as applicable, shall be forever barred, estopped, and enjoined from asserting such claim against the Debtors or the Reorganized Debtors and shall not receive or be entitled to receive any payment or distribution of property from the Debtors or their successors or assigns with respect to such claim.

YCST01:9978930.1      068473.1001

43.    <u>Committee</u>.  From the date of the entry of this Confirmation Order through and including the Effective Date, the members of the Committee shall continue to serve.  On the Effective Date, the Committee shall be dissolved and the members of the Committee and the professionals retained by the Committee shall be released and discharged from their respective authority, fiduciary obligations, duties, and responsibilities, provided, however, that obligations arising under any confidentiality or non-disclosure agreement executed by the members of, or professionals retained by, the Committee, or obligations imposed by order of the Court, shall remain in effect pursuant to the terms thereof, and, provided further, that the professionals retained by the Committee shall be entitled to be compensated for reasonable fees and reimbursed for reasonable expenses incurred in connection with (i) preparation and prosecution of fee applications for allowance of fees and expenses incurred prior to the Effective Date, (ii) preparation and review of final applications for allowance of fees and expense and attendance at any hearing with respect to the same, (iii) review and objections, if any, to the applications of other professionals retained in these cases for allowance of fees and expenses for services rendered prior to and after the Effective Date, and (iv) successful enforcement of any agreement to which the Committee is a party entered into in connection with the Plan (including the Plan). Nothing contained herein shall impair the Committee's professionals' rights to seek allowance of any claims and payment thereof pursuant to Section 503(b) of the Bankruptcy Code.

44.    <u>Post-Effective Date Retention of Professionals</u>.  From and after the Effective Date, any requirement that professionals employed by the Reorganized Debtors comply with Sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtors shall be

- 57 -

authorized to employ and compensate professionals in the ordinary course of business and without the need for Bankruptcy Court approval.

45. <u>Energia Expense Reimbursement</u>. Consistent with this Court's Order approving the Expense Reimbursement Motion, the Debtors shall pay the reasonable fees, costs and charges incurred by Energia Overseas in connection with the Exit Financing.

46. <u>Effectuation of Boeing Aker UCC Settlement Agreement</u>. This Confirmation Order shall constitute a amendment to the last sentence of Section 12.9 of the Plan, to provide as follows:

> "The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms, and further, that the terms of the Global Settlement Agreement and Release by and between the parties thereto as approved by the Bankruptcy Court on July 27, 2010, are integral to the Plan and may not be deleted or modified without the consent of the parties thereto, and are nonseverable from the Plan and mutually dependent."

47. <u>Class 7 Settlement</u>. The agreement between Yuzhmash, the Debtors and the New Investor (the "<u>Yuzhmash Agreement</u>") will result in (i) the assumption of a modified Yuzhmash BOA pursuant to the terms of that certain settlement letter dated July 26, 2010 the "<u>Settlement Letter</u>") [Docket No. 906], and (ii) the modified treatment of Yuzhmash under the Plan. The Cure Amount dispute in connection with the Debtors' assumption of the Yuzhmash BOAs has been resolved as part of the Yuzhmash Agreement. In accordance with the terms of the Yuzhmash Agreement, the treatment of Class 7 under the Plan shall be deemed amended by amending Section 3.2(g)(ii) as follows:

> On the Effective Date, or as soon as practicable after the Effective Date, in full satisfaction, settlement, release, and discharge of and in exchange for each Partner Claim against the Debtors held by Yuzhmash and Yuzhnoye, (i) Reorganized Sea Launch shall be deemed to have assumed the Yuzhmash BOAs as modified pursuant to the terms of the Yuzhmash Agreement, and the Yuzhnoye BOA as initialed by Energia Logistics Russia on or about July 23, 2010, and (ii) future

- 58 -

incremental payments of equal quarterly payments beginning on November 30, 2010 (assuming the Effective Date occurs by September 30, 2010, otherwise on the last day of the month following the month in which the Effective Date occurs), and continuing at the end of each successive three month period for a period of two years up to a maximum of eleven million dollars ($11,000,000), and Yuzhmash and Yuzhnoye shall be deemed to have waived any Partner Claims against the Debtors held by Yuzhmash and Yuzhnoye that are not resolved by the Yuzhmash Agreement and the Yuzhnoye BOA.

As a result of the Yuzhmash Agreement, on the Effective Date the Committee will withdraw with prejudice its *Second Omnibus Substantive Objection to Claim Nos. 80 and 123 Filed by Yuzhmash* [Docket No. 673], and as of the Effective Date, except as otherwise set forth in the Yuzhmash Agreement, and subject to section 10.5 of the Plan, to the fullest extent permitted by law, the Debtors, the Reorganized Debtors, and the Committee, shall, in consideration for Yuzhmash agreeing to the Yuzhmash Agreement, the adequacy of which is hereby confirmed, be deemed to have forever released, waived and discharged all claims, demands, debts, rights, causes of action or liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, relating to the Debtors, the Reorganized Debtors, the Bankruptcy Cases, the Plan or the Disclosure Statement, the Plan Documents, or the restructuring transactions contemplated thereby, existing as of the Effective Date or thereafter that are based in whole or part on any act, omission, transaction event, or other occurrence taking place on or prior to the Effective Date, against Yuzhmash, except as otherwise provided and to the extent set forth in the Settlement Letter.

48.     <u>Escrow of Unsecured Creditor Payments</u>.  Notwithstanding Section 6.8 of the Plan, on the Effective Date, Reorganized Sea Launch shall cause cash in an amount equal to the total distributions to be made on the Initial Distribution Date to the Holders of Allowed Claims in Class 4 under the Plan to be deposited into a segregated Swiss bank account, which funds shall

- 59 -

not be used for any purpose other than to fund distributions to the Holders of Allowed Claims in Class 4 under the Plan. Furthermore, the first sentence of Section 6.1 of the Plan shall be amended to read "Unless the Holder of a Class 3, 4, 5, 6 or 7 Claim agrees to a different distribution date or except as otherwise provided herein or as ordered by the Bankruptcy Court, all distributions to be made on account of Allowed Claims in Classes 3, 4, 5, 6 and 7 shall be made on the Initial Distribution Date and any additional distributions, if any, with the exception of dividends, shall be made on such subsequent distribution dates as the Distribution Agent determines to be appropriate in its discretion, but no less frequently then bi-annually." The Debtors shall provide the Committee with a detailed, but non-final and non-binding list of all then Allowed Claims in Class 4 not more than ten (10) business days after the entry of this Confirmation Order and on the Effective Date. Further, any objections to claims in Classes 1 through 4 shall be filed no later than one hundred and twenty (120) days after the Effective Date, unless such deadline is extended for cause shown.

49.    Incorporation of Various Settlements and Contracts. Pursuant to the terms of various settlement agreements and contracts, including: the Settlement Agreement dated July 8, 2010 with Asia Satellite Telecommunications Company Limited (as approved by the Bankruptcy Court on July 26, 2010), the Settlement Agreement dated July 9, 2010 with SkyTerra LP n/k/a/ LightSquared (as approved by the Bankruptcy Court on July 26, 2010), the Settlement Agreement with Hughes Network Systems, LLC dated May 27, 2010, the Amendment to the contract and the Confidential Settlement Agreement with O3b USA, LLC, the Amendment to the contract with Eutelsat, the Amendment to the contract with EchoStar Satellite Operating Corporation and DISH Orbital II, L.L.C., and the Amendment to the Contract with Intelsat LLC (collectively, the "Customer Agreements"), the terms and conditions of such Customer

- 60 -

Agreements are integral to, and nonseverable from, the Plan, and are incorporated herein by reference as if fully set forth herein, and, to the extent of any conflict between the Plan or this Confirmation Order or any other order of this Court and such Customer Agreements, the terms and conditions of such Customer Agreements shall control. Further, the Customer Agreements are valid and enforceable pursuant to their terms and conditions, and nothing contained in the Plan, this Confirmation Order or any other order of this Court shall amend, alter or modify such terms and conditions.

50.    <u>Additional Conditions Precedent</u>.   Section 9.2 of the Plan shall be deemed amended by this Confirmation Order to add additional conditions precedent to the Effective Date of the Plan of Reorganization that are incapable of being waived by any party and that require (x) that the Settlement Agreement between Hughes Network Systems, LLC, on the one hand, and Sea Launch Limited Partnership and Sea Launch Company, L.L.C., on the other hand, dated May 27, 2010, be in full force and effect under the terms thereof and (y) that the Global Settlement Agreement and Release between Sea Launch Company, L.L.C. and the various parties thereto dated as of July 27, 2010, be in full force and effect under the terms thereof.

51.    <u>Bar Date for Certain Administrative Expense Claims</u>.   All applications for final allowance of fees and expenses of professional persons employed pursuant to orders entered by the Bankruptcy Court and on account of services rendered prior to the Effective Date, shall be filed with the Bankruptcy Court and served upon counsel for each of the Reorganized Debtors', the Committee, the New Investor and the Fee Auditor at the addresses set forth in Section 12.12 of the Plan no later than forty-five (45) days after the Effective Date. Any such claim that is not filed within this time period shall be discharged and forever barred.   Objections to any application for allowance of Administrative Expense Claims described in herein and in Section

- 61 -

12.3 of the Plan must be filed within thirty (30) days after the filing thereof, as may be extended by the Bankruptcy Court upon request of the Reorganized Debtors. On the Effective Date, the Reorganized Debtors shall pay all amounts then due and payable in accordance with the Interim Compensation Order for fees and expenses of professional persons employed pursuant to orders entered by the Bankruptcy Court, subject to final allowance of such fees and expenses; provided, however, that the Reorganized Debtors shall not be required to pay any amounts designated as "holdbacks" in the Interim Compensation Order until final allowance thereof.

52.    <u>References to Provisions of the Plan</u>.    The failure to specifically include or reference any particular provision of the Plan, including any provision in a document in the Plan Supplement, in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety and such provisions shall have the same binding effect, enforceability or legality as every other provision of the Plan. Each term and provision of the Plan, as it may have been altered or interpreted by this Court, is valid and enforceable pursuant to its terms.

53.    <u>Substantial Consummation</u>. The substantial consummation of the Plan, within the meaning of Section 1101(2) of the Bankruptcy Code, shall be deemed to occur on or as of the Effective Date.

54.    <u>Notice of Entry of Confirmation Order</u>.    Pursuant to Bankruptcy Rules 2002(f)(7)and 3020(c), promptly after entry of this Confirmation Order, the Debtors shall cause a notice of the entry of this Confirmation Order to be served on all Holders of Claims or Interests and any other persons on whom the notice of the Confirmation Hearing was served.

55.    <u>Reversal</u>. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Court of any other court of competent

- 62 -

jurisdiction, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' or other applicable persons' receipt of written notice of such order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the Effective Date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Confirmation Order or any amendments or modifications thereto.

56.     <u>Confirmation Order Controlling</u>.    If there is any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and conditions contained in this Confirmation Order shall govern.  However, any inconsistencies shall be interpreted so as to further the goals of and to facilitate the finalization, effectuation and implementation of the Plan. Furthermore, no ambiguity in this Confirmation Order shall be interpreted to prejudice the rights of RSC Energia, Energia Overseas and Energia Logistics Ltd. under the Plan.

57.     <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to Section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order and the Plan shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

58.     <u>Retention of Jurisdiction</u>.    Pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, this Court, except as otherwise provided in the Plan or herein, shall retain exclusive jurisdiction over all matters arising in, arising out of, and related to, the Bankruptcy Cases and the Plan including, but not limited to, those matters set forth in Article XI of the Plan.

YCST01:9978930.1         068473.1001

59.    <u>Final Order, Effective Date</u>.  This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.  Notwithstanding Bankruptcy Rules 7062 or 3020(e), this Confirmation Order shall be effective and enforceable immediately upon its entry.

Dated: Wilmington, Delaware
　　　July 30 , 2010

HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

- 64 -